# 25-1050-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

CHARLES BRENNAN,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## APPELLANT'S APPENDIX
## Volume 1 of 6 (Pages A-1 to A-232)

RAJIT SINGH DOSANJH,
*Assistant U.S. Attorney*
THOMAS R. SUTCLIFFE,
*Assistant U.S. Attorney*
UNITED STATES ATTORNEY'S OFFICE OF THE NORTHERN DISTRICT OF NEW YORK
100 South Clinton Street
Syracuse, New York 13261
(315) 234-8500

JOSEPH HARTUNIAN
UNITED STATES ATTORNEY'S OFFICE OF THE NORTHERN DISTRICT OF NEW YORK
James T. Foley Courthouse
445 Broadway, Suite 509
Albany, New York 12207
(518) 257-1800

*Attorneys for Appellee*

SARAH KUNSTLER
LAW OFFICE OF SARAH KUNSTLER
315 Flatbush Avenue, Suite 103
Brooklyn, New York 11217
(718) 783-3682

*Attorneys for Defendant-Appellant*

COUNSEL PRESS (800) 4-APPEAL • (391564)

## TABLE OF CONTENTS


| | Page |
|---|---|
| District Court Docket Entries | A-1 |
| Criminal Complaint, dated September 13, 2022 | A-29 |
| Indictment, dated January 11, 2024 | A-35 |
| Affidavit of Charles Brennan, in Support of Defendant's Omnibus Motion, sworn to May 2, 2024 | A-39 |
| Exhibit A to Brennan Affidavit - Declaration of Scott W. Iseman, Esq., dated May 3, 2024 | A-41 |
| Exhibit B to Brennan Affidavit - Application for a Search Warrant, dated October 31, 2022 | A-48 |
| Exhibit C to Brennan Affidavit - ATF Report of Investigation of Interview of Charles Brennan Following September 13, 2022 Search, dated September 20, 2022 | A-138 |
| Memorandum of Law, by Defendant, in Support of Omnibus Motion, dated May 3, 2024 | A-204 |
| Notice of Motion, by Defendant, for an Order Dismissing Counts Three and Five of the Indictment and Suppressing Evidence from Untimely Searches of Electronically Stored Data, or Alternatively for an Evidentiary Hearing, dated May 3, 2024 | A-218 |
| Indictment, dated May 9, 2024 | A-221 |

Page

Supplemental Memorandum of Law, by Defendant, in Support of Motion to Dismiss Counts Three and Five of the Indictment and Suppressing Evidence from Untimely Searches of Electronically Stored Data, or Alternatively for an Evidentiary Hearing, dated May 23, 2024 ........ A-226

Declaration of Scott W. Iseman, for Defendant, in Support of Omnibus Motion and Supplemental Relief, dated May 23, 2024.................................. A-230

Government's Memorandum of Law, by Plaintiff, in Opposition to Defendant's Omnibus Motion, dated June 3, 2024 ............................................... A-233

Reply Memorandum of Law, by Defendant, in Further Support of Omnibus Motion, dated June 10, 2024 ....................................................... A-326

Memorandum Decision and Order of the Honorable Anne M. Nardacci, dated July 10, 2024 ............... A-332

Second Superseding Indictment, dated August 22, 2024.................................................... A-356

Transcript of Proceedings before the Honorable Anne M. Nardacci, dated September 16, 2024...... A-361

Transcript of Proceedings before the Honorable Anne M. Nardacci, dated September 17, 2024 (Day 2) ................................................................ A-527

Transcript of Proceedings before the Honorable Anne M. Nardacci, dated September 18, 2024 (Day 3) ................................................................ A-619

Transcript of Proceedings before the Honorable Anne M. Nardacci, dated September 19, 2024 (Day 4) ................................................................ A-865

Page

Transcript of Proceedings before the Honorable Anne M. Nardacci, dated September 20, 2024 (Day 5) ........ A-1078

Transcript of Proceedings before the Honorable Anne M. Nardacci, dated September 23, 2024 (Day 6) ........ A-1256

Jury Instructions, dated September 23, 2024 ........ A-1275

Jury Verdict Form, dated September 23, 2024 ........ A-1349

Defendant's Sentencing Memorandum, dated March 24, 2025 ........ A-1353

Exhibit A to Memorandum - Photographs of iMessages ........ A-1374

Exhibit B to Memorandum - Photographs of iMessages, dated August 3, 2022 ........ A-1442

Exhibit C to Memorandum - Property Status Summary Report for Case No. 785010-22-0048, dated April 30, 2024 ........ A-1444

Exhibit D to Memorandum - United States Sentencing Commission Report titled 'Methamphetamine Trafficking Offenses in the Federal Criminal Justice System,' dated June 1, 2024 ........ A-1445

Exhibit E to Memorandum - Certificate of Completion for Charles Brennan, for the Rensselaer County Correctional Facility Men's Recovery Group, dated December 11, 2024 ........ A-1511

Government's Sentencing Memorandum, dated March 24, 2024 ........ A-1512

Page

Exhibit 1 to Memorandum - Transcript of Interview of Charles Brennan, by Investigator John Rich, dated September 13, 2022 .............................................. A-1532

Exhibit 2 to Memorandum - New York State Police Incident Report, dated September 5, 2022 ................................................ A-1541

Exhibit 3 to Memorandum - Text Message Thread, dated September 12, 2022 .............................................. A-1545

Exhibit 4 to Memorandum - Media File of Text Message Conversation, dated September 6, 2022 ................................................ A-1551

Exhibit 5 to Memorandum - Media File of Text message Conversation, dated August 3, 2022 ...................................................... A-1558

Exhibit 6 to Memorandum - Correspondence, dated September 5, 2022........... A-1561

Exhibit 7 to Memorandum - Correspondence, dated September 6, 2022........... A-1570

Exhibit 8 to Memorandum - Transcript of Proceedings held before the Honorable Anne M. Nardacci, dated September 19, 2024 .............................................. A-1572

Exhibit 9 to Memorandum - Transcript of Trial Proceedings held before the Honorable Anne M. Nardacci, dated September 20, 2024 .............................................. A-1635

**Page**

Exhibit 10 to Memorandum - Photographs of Bag, labeled Government Exhibit 353B, dated March 24, 2025 ... A-1654

Exhibit 11 to Memorandum - Interview Transcript of Charles Brennan, by Investigator John Rich (with TFO John Casey), dated September 13, 2022 ... A-1656

Government's Supplemental Sentencing Memorandum, dated March 27, 2025 ... A-1661

Letter from Scott Iseman, Esq., to the Honorable Anne M. Nardacci, dated April 9, 2025 ... A-1664

Transcript of Sentencing Proceedings before the Honorable Anne M. Nardacci, dated April 10, 2025 ... A-1666

Judgment Appealed From, dated April 21, 2025 ... A-1701

Defendant's Notice of Appeal, dated April 15, 2025 ... A-1708

Query Reports Utilities Help Log Out

APPEAL,CJA,CLOSED

# U.S. District Court
# Northern District of New York - Main Office (Syracuse) [NextGen CM/ECF Release 1.8 (Revision 1.8.5)] (Albany)
# CRIMINAL DOCKET FOR CASE #: 1:24-cr-00012-AMN-1

| | |
|---|---|
| Case title: USA v. Brennan | Date Filed: 01/11/2024 |
| Magistrate judge case number: 1:22-mj-00518-DJS | Date Terminated: 04/21/2025 |

---

Assigned to: U.S. District Judge Anne M. Nardacci

Appeals court case number: 25-1288 USCA for the Second Circuit

**Defendant (1)**

**Charles Brennan**
*TERMINATED: 04/21/2025*

represented by **Scott W. Iseman**
Iseman PLLC
59 Franklin Street
Saratoga Springs, NY 12866
518-633-1528
Email: scott@scottisemanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Michael P. McGeown-Walker**
Office of the Federal Public Defender - Albany Office
Northern District of New York
54 State Street - Suite 310
Albany, NY 12207
518-436-1850
Email: michael_mcgeown-walker@fd.org
*TERMINATED: 02/14/2024*
*Designation: Public Defender or Community Defender Appointment*

| Pending Counts | Disposition |
|---|---|
| 21:841(b)(1)(C) - Distribution of a Controlled Substance<br>(1-2) | |
| 21:841(a)(1) and (b)(1)(C) - Distribution of a Controlled Substance<br>(1s-2s) | |

| | |
|---|---|
| 21:841(b)(1)(B) Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance<br>(1ss) | Defendant is sentenced on Counts 1, 2, 5, 6 and 7 of the Second Superseding Indictment to a term of imprisonment of 97 months to run concurrently, for a total term of imprisonment of 97 months. A term of Supervised Release of 4 years on Counts 1 and 6 and 3 years on Counts 2, 5 and 7 is imposed to run concurrently, for total term of Supervised Release of 4 years. Standard and special conditions imposed. No fine imposed. Special Assessment in the amount of $500 is imposed and due payable immediately. |
| 21:841(b)(1)(C) Distribution of a Controlled Substance<br>(2ss) | Defendant is sentenced on Counts 1, 2, 5, 6 and 7 of the Second Superseding Indictment to a term of imprisonment of 97 months to run concurrently, for a total term of imprisonment of 97 months. A term of Supervised Release of 4 years on Counts 1 and 6 and 3 years on Counts 2, 5 and 7 is imposed to run concurrently, for total term of Supervised Release of 4 years. Standard and special conditions imposed. No fine imposed. Special Assessment in the amount of $500 is imposed and due payable immediately. |
| 18:924(c)(l )(A) - Use of Firearm During and In Relation to a Drug Trafficking Crime<br>(3) | |
| 18:924(c)(1)(A) - Use of Firearm During and In Relation to and Possession of a Firearm in Furtherance of a Drug Trafficking Crime<br>(3s) | |
| 21:841(b)(1)(C) Distribution of a Controlled Substance<br>(3ss) | Not Guilty |
| 21:841 (b )(I )(C) - Distribution of a Controlled Substance<br>(4) | |
| 21:841(a)(1) and (b)(1)(C) - Distribution of a Controlled Substance<br>(4s) | |
| 18:924(c)(1)(A) Use of a Firearm During and In Relation to and Possession of a Firearm in Furtherance of a Drug Trafficking Crime<br>(4ss) | Not Guilty |
| 21:841(b)(l)(C) - Possession with Intent to Distribute a Controlled Substance<br>(5) | |

21:841(a)(1) and (b)(l)(B) - Possession with Intent to Distribute a Controlled Substance
(5s)

Defendant is sentenced on Counts 1, 2, 5, 6 and 7 of the Second Superseding Indictment to a term of imprisonment of 97 months to run concurrently, for a total term of imprisonment of 97 months. A term of Supervised Release of 4 years on Counts 1 and 6 and 3 years on Counts 2, 5 and 7 is imposed to run concurrently, for total term of Supervised Release of 4 years. Standard and special conditions imposed. No fine imposed. Special Assessment in the amount of $500 is imposed and due payable immediately.

21:841(b)(1)(C) Distribution of a Controlled Substance
(5ss)

18:922(k) - Possession of a Firearm with an Obliterated Serial Number with a Forfeiture Allegation
(6)

18:922(k) - Possession of a Firearm with an Obliterated Serial Number with Forfeiture Allegation
(6s)

Defendant is sentenced on Counts 1, 2, 5, 6 and 7 of the Second Superseding Indictment to a term of imprisonment of 97 months to run concurrently, for a total term of imprisonment of 97 months. A term of Supervised Release of 4 years on Counts 1 and 6 and 3 years on Counts 2, 5 and 7 is imposed to run concurrently, for total term of Supervised Release of 4 years. Standard and special conditions imposed. No fine imposed. Special Assessment in the amount of $500 is imposed and due payable immediately.

21:841(b)(1)(B) Possession with Intent to Distribute of a Controlled Substance
(6ss)

18:924(c)(1)(A) - Possession of Firearms in Furtherance of a Drug Trafficking Crime with Forfeiture Allegation
(7s)

18:922(k) Possession of a Firearm with an Obliterated Serial Number
(7ss)

Defendant is sentenced on Counts 1, 2, 5, 6 and 7 of the Second Superseding Indictment to a term of imprisonment of 97 months to run concurrently, for a total term of imprisonment of 97 months. A term of Supervised Release of 4 years on Counts 1 and 6 and 3 years on Counts 2, 5 and 7 is imposed to run concurrently, for total term of Supervised Release of 4 years. Standard and special conditions imposed. No fine imposed. Special Assessment in the amount

| | |
|---|---|
| | of $500 is imposed and due payable immediately. |
| 19:924(c)(1)(A) Possession of Firearms in Furtherance of a Drug Trafficking Crime AND A FORFEITURE ALLEGATION (8) | Not Guilty |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:922(k): Possession of a Defaced Firearm | |

---

**Plaintiff**

**USA** represented by

**Ashlyn Jessica Miranda**
DOJ-USAO
445 Broadway
Room 218
Albany, NY 12207
518-431-0137
Email: ashlyn.miranda@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Allen J. Vickey**
DOJ-USAO
445 Broadway
Room 218
Albany, NY 12207
518-431-0214
Email: allen.vickey@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Elizabeth A. Conger**
U.S. Attorney's Office, Northern District of New York
100 South Clinton St.
Syracuse, NY 13261-7198
315-448-0672
Fax: 315-448-0689

Email: Elizabeth.Conger@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Joseph Hartunian**
DOJ-USAO
445 Broadway
Albany, NY 12207
518-431-0241
Email: joseph.hartunian@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/13/2022 | 1 | CRIMINAL COMPLAINT as to Charles Brennan (1). (mab) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/13/2022 | | Arrest of Charles Brennan. (mab) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/13/2022 | | Text Minute Entry for proceedings (3:38PM-3:43PM) held before Magistrate Judge Daniel J. Stewart: Initial Appearance as to Charles Brennan held on 9/13/2022. Appearances: AUSA Ashlyn Miranda, AFPD Mike McGeown-Walker and USPO Kristin Bent. Defendant is questioned on the record as to his financial ability to retain counsel. Based upon his responses, the Court finds that he qualifies for counsel and appoints the Office of the Federal Public Defender for representation. Defendant is advised of his rights, charges, maximum penalties and given a copy of the Complaint. Government moves for detention based upon the Defendant being a risk of flight and a danger to the community. A Detention Hearing is set for 9/14/2022 at 12:00 PM in Albany, NY before Magistrate Judge Daniel J. Stewart. The Preliminary Hearing will be addressed at the next scheduled proceeding. Government is advised of their obligation under Brady v. Maryland. Defendant is remanded to the custody of the USMS. (Court Reporter: Lisa Tennyson/CRD: Maria Blunt). (mab) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/13/2022 | 3 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Charles Brennan. Signed by Magistrate Judge Daniel J. Stewart on 9/13/2022. (mab) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/13/2022 | 4 | ORDER as to Charles Brennan: This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, to confirm the Government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations. Signed by Magistrate Judge Daniel J. Stewart on 9/13/2022. (mab) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/14/2022 | | Text Minute Entry for proceedings (12:01PM-12:20PM) held before Magistrate Judge Daniel J. Stewart: Detention Hearing as to Charles Brennan held on 9/14/2022. Appearances: AUSA AJ Vickey o/b/o AUSA Ashlyn Miranda, AFPD Mike McGeown-Walker and USPO Kristin Bent. Defendant is reminded of his rights. Counsel acknowledge receipt of the Pretrial Services report. Government moves for continued detention based upon the Defendant being a danger to the community. Atty McGeown-Walker speaks on behalf of Defendant and requests release on conditions. After hearing from both counsel, the Court has concerns with Defendant's release and is not prepared to do so at this time. The Court reserves on a decision and directs Atty McGeown-Walker to confer with his client and set up a mental health evaluation. Atty McGeown-Walker advised that he understands the Court's position and will do so immediately. The |

| | | |
|---|---|---|
| | | Detention Hearing is adjourned without date and will be rescheduled upon the completion of an evaluation. Atty McGeown-Walker to advise the Court. Defendant waives a Preliminary Hearing at this time, but reserves the right to request such hearing if circumstances change. Defendant is remanded to the custody of the USMS. (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/14/2022 | 5 | ORDER APPROVING WAIVER OF PRELIMINARY HEARING as to Charles Brennan. Signed by Magistrate Judge Daniel J. Stewart on 9/14/2022. (mab) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/15/2022 | 6 | NOTICE OF ATTORNEY APPEARANCE: Michael P. McGeown-Walker appearing for Charles Brennan (McGeown-Walker, Michael) [1:22-mj-00518-DJS] (Entered: 09/15/2022) |
| 09/19/2022 | 7 | STIPULATION by USA to 60 Day Extension (Miranda, Ashlyn) [1:22-mj-00518-DJS] (Entered: 09/19/2022) |
| 09/22/2022 | 8 | STIPULATION and ORDER FOR ENLARGEMENT OF TIME as to Charles Brennan. Time excluded from 9/22/2022 until 11/21/2022. Signed by Magistrate Judge Daniel J. Stewart on 9/22/2022. (mab) [1:22-mj-00518-DJS] (Entered: 09/22/2022) |
| 10/12/2022 | 9 | Letter from Defense Counsel as to Charles Brennan requesting Reopening/Determination of Mr. Brennan's Detention Hearing & Ex-Parte Review (McGeown-Walker, Michael) [1:22-mj-00518-DJS] (Entered: 10/12/2022) |
| 10/14/2022 | 10 | STATUS REPORT by Charles Brennan (McGeown-Walker, Michael) [1:22-mj-00518-DJS] (Entered: 10/14/2022) |
| 10/14/2022 | 11 | TEXT ORDER: On October 12, 2022, counsel for Defendant filed a Letter Request seeking to reopen the Detention Hearing in this matter and an ex parte review of the completed psychological evaluation. Dkt. No. 9 . On October 14, 2022, counsel for Defendant advised the Court that an agreement with the Government has been reached and that the previous request for ex parte review of the evaluation is withdrawn. Dkt. No. 10 . Based upon counsel's Status Report, the request to withdraw is GRANTED. The continuation of the Detention Hearing is set for 10/19/2022 at 2:00 PM in Albany, NY before Magistrate Judge Daniel J. Stewart. SO ORDERED by Magistrate Judge Daniel J. Stewart on 10/14/2022. (mab) [1:22-mj-00518-DJS] (Entered: 10/14/2022) |
| 10/18/2022 | | TEXT NOTICE as to Charles Brennan: The Detention Hearing in this matter is RESCHEDULED as to TIME ONLY and is now set for 10/19/2022 at 1:30 PM before Magistrate Judge Daniel J. Stewart and will be held by Microsoft Teams. The Court will issue a link to join the proceedings. (mab) [1:22-mj-00518-DJS] (Entered: 10/18/2022) |
| 10/19/2022 | | Text Minute Entry for proceedings by Microsoft Teams (1:49PM-2:13PM) held before Magistrate Judge Daniel J. Stewart: Detention Hearing continued as to Charles Brennan held on 10/19/2022. Appearances: AUSA Ashlyn Miranda, AFPD Mike McGeown-Walker and USPO Kristin Bent. Defendant and counsel consent to proceed by video. The Court is advised that since the last appearance, Defendant has completed a psychological assessment. A copy of the assessment was provided to the Court and to the Government. Government moves for detention based upon the Defendant being a risk of flight and a danger to the community. Atty McGeown-Walker speaks on behalf of Defendant and requests release on conditions. After hearing from counsel and upon review of the pretrial services report and the assessment, the Court finds that conditions can be set. Conditions of release are set and acknowledged by Defendant. Defendant is released. (Court Reporter: Hannah Cavanaugh/CRD: Maria Blunt). (mab) [1:22-mj-00518-DJS] (Entered: 10/20/2022) |

| | | |
|---|---|---|
| 10/19/2022 | 12 | ORDER SETTING CONDITIONS OF RELEASE as to Charles Brennan. Signed by Magistrate Judge Daniel J. Stewart on 10/19/2022. (mab) [1:22-mj-00518-DJS] (Entered: 10/20/2022) |
| 10/19/2022 | 13 | ORDER TO RELEASE DETAINED DEFENDANT as to Charles Brennan. Signed by Magistrate Judge Daniel J. Stewart on 10/19/2022. (mab) [1:22-mj-00518-DJS] (Entered: 10/20/2022) |
| 10/19/2022 | 14 | SEALED DOCUMENT - maintained in Clerk's Office and not available for electronic viewing. (mab) [1:22-mj-00518-DJS] (Entered: 10/20/2022) |
| 11/18/2022 | 15 | STIPULATION by USA to 90 Day Extension (Miranda, Ashlyn) [1:22-mj-00518-DJS] (Entered: 11/18/2022) |
| 11/22/2022 | 16 | STIPULATION and ORDER FOR ENLARGEMENT OF TIME as to Charles Brennan. Time excluded from 11/21/2022 until 2/19/2023. Signed by Magistrate Judge Daniel J. Stewart on 11/21/2022. (mab) [1:22-mj-00518-DJS] (Entered: 11/22/2022) |
| 02/17/2023 | 17 | STIPULATION by USA to 60 Day Extension (Miranda, Ashlyn) [1:22-mj-00518-DJS] (Entered: 02/17/2023) |
| 02/21/2023 | 18 | ORDER TO CONTINUE - Ends of Justice as to Charles Brennan. The time within which an Indictment must be filed is enlarged 90 days. Time excluded from 2/17/2023 until 5/18/2023. Signed by Magistrate Judge Daniel J. Stewart on 2/17/2023. (gmd) [1:22-mj-00518-DJS] (Entered: 02/21/2023) |
| 05/17/2023 | 19 | STIPULATION by USA to 90 Day Extension (Miranda, Ashlyn) [1:22-mj-00518-DJS] (Entered: 05/17/2023) |
| 05/19/2023 | 20 | ORDER TO CONTINUE - Ends of Justice as to Charles Brennan.The time within which an Indictment must be filed is enlarged 90 days. Time excluded from 5/17/2023 until 8/17/2023. Signed by Magistrate Judge Daniel J. Stewart on 5/17/2023. (gmd) [1:22-mj-00518-DJS] (Entered: 05/19/2023) |
| 05/23/2023 | 21 | SEALED Petition and Order as to Violation of Supervised Release as to Charles Brennan. Signed by Magistrate Judge Daniel J. Stewart on 5/23/2023. (gmd) [1:22-mj-00518-DJS] (Entered: 05/23/2023) |
| 05/25/2023 | | Text Minute Entry for a Bond Revocation Hearing as to Charles Brennan held on 5/25/2023 before Magistrate Judge Daniel J. Stewart. Defendant advised of their pending violations, potential penalties, constitutional rights and given a copy of the Petition and Warrant. Defense seeks defendant's release. Government moves for detention. Court directs defendant to return in two weeks having sought medical attention, employment, and be willing to submit to drug testing for a Status Conference. Defendant is released pending further proceedings. Appearances: Ashlyn J. Miranda, Esq., AUSA; Michael P. McGeown-Walker, Esq., (FPD) for defendant. [PO: Kaniehtawaks Barnes; Court Reporter: Lisa Tennyson]Time: 1:34 PM - 1:46 PM.(gmd) [1:22-mj-00518-DJS] (Entered: 05/25/2023) |
| 05/25/2023 | 23 | TEXT ORDER as to Charles Brennan: A Status Conference is set for 6/8/2023 02:00 PM in Albany before Magistrate Judge Daniel J. Stewart. So Ordered by Magistrate Judge Daniel J. Stewart on 5/25/2023.(gmd) [1:22-mj-00518-DJS] (Entered: 05/25/2023) |
| 06/08/2023 | 24 | Arrest Warrant # 22 Returned Executed on 5/25/2023, in case as to Charles Brennan (pjh, ) [1:22-mj-00518-DJS] (Entered: 06/08/2023) |
| 06/08/2023 | | Text Minute Entry for a Status Conference re Bond Revocation Hearing as to Charles Brennan held on 6/8/2023 before Magistrate Judge Daniel J. Stewart. Government continues to move for detention based on risk of flight and danger to defendants own self. |

| | | |
|---|---|---|
| | | Defense argues for defendants continued release on conditions. After hearing from both parties, the Court determines that there are no conditions that can be set. Defendant is remanded to the USMS. Appearances: Ashlyn J. Miranda, Esq., AUSA; Michael P. McGeown-Walker, Esq., (FPD) for defendant. [PO: Michael Patnaude; Court Reporter: Jacqueline Stroffolino]. Time: 2:00 PM 2:12 PM. (gmd) [1:22-mj-00518-DJS] (Entered: 06/08/2023) |
| 06/08/2023 | 25 | TEXT ORDER as to Charles Brennan: Based upon the reasons set forth on the record during the Bond Revocation Hearing on 6/8/2023, the conditions of release previously set by the Court are REVOKED and Defendant is ordered detained pending a resolution of this matter. SO ORDERED by Magistrate Judge Daniel J. Stewart on 6/8/2023.(gmd) [1:22-mj-00518-DJS] (Entered: 06/09/2023) |
| 08/17/2023 | 26 | First MOTION for Protective Order *on Discovery* by USA as to Charles Brennan. Motion returnable before Judge Stewart. Response to Motion due by 9/7/2023. Reply to Response to Motion due by 9/14/2023 (Miranda, Ashlyn) [1:22-mj-00518-DJS] (Entered: 08/17/2023) |
| 08/18/2023 | 27 | STIPULATION by USA to 60 Day Extension (Miranda, Ashlyn) [1:22-mj-00518-DJS] (Entered: 08/18/2023) |
| 08/21/2023 | 28 | NOTICE OF ATTORNEY APPEARANCE: Allen J. Vickey appearing for USA as co-counsel with Attorney Ashlyn Miranda (Vickey, Allen) [1:22-mj-00518-DJS] (Entered: 08/21/2023) |
| 08/21/2023 | 29 | ORDER TO CONTINUE - Ends of Justice as to Charles Brennan. The time within which an Indictment must be filed is enlarged 90 days. Time excluded from 8/18/2023 until 11/16/2023. Signed by Magistrate Judge Daniel J. Stewart on 8/18/2023. (gmd) [1:22-mj-00518-DJS] (Entered: 08/21/2023) |
| 08/21/2023 | 30 | RESPONSE to Motion by Charles Brennan re 26 First MOTION for Protective Order *on Discovery* by USA as to Charles Brennan. Motion returnable before Judge Stewart. (McGeown-Walker, Michael) [1:22-mj-00518-DJS] (Entered: 08/21/2023) |
| 08/23/2023 | 31 | DISCOVERY PROTECTIVE ORDER granting 26 Motion for Protective Order as to Charles Brennan (1). Signed by Magistrate Judge Daniel J. Stewart on 8/23/2023.(gmd) [1:22-mj-00518-DJS] (Entered: 08/23/2023) |
| 11/16/2023 | 32 | STIPULATION by USA to 30-Day Continuance (Vickey, Allen) [1:22-mj-00518-DJS] (Entered: 11/16/2023) |
| 11/21/2023 | 33 | ORDER TO CONTINUE - Ends of Justice as to Charles Brennan. The time within which an Indictment must be filed is enlarged 30 days. Time excluded from 11/16/2023 until 12/16/2023. Signed by Magistrate Judge Daniel J. Stewart on 11/16/2023. (gmd) [1:22-mj-00518-DJS] (Entered: 11/21/2023) |
| 01/09/2024 | 34 | Letter from Defense Counsel as to Charles Brennan requesting the Scheduling of a Preliminary Hearing (McGeown-Walker, Michael) [1:22-mj-00518-DJS] (Entered: 01/09/2024) |
| 01/10/2024 | | TEXT NOTICE OF HEARING as to Charles Brennan Preliminary Examination set for 1/16/2024 02:00 PM in Albany before Magistrate Judge Daniel J. Stewart. (gmd) [1:22-mj-00518-DJS] (Entered: 01/10/2024) |
| 01/11/2024 | 35 | INDICTMENT as to Charles Brennan (1) count(s) 1-2, 3, 4, 5, 6. (gmd) (Entered: 01/11/2024) |
| 01/11/2024 | | Text Minute Entry for proceedings held before Magistrate Judge Daniel J. Stewart:GRAND JURY makes a partial report and returns Indictment. Tally Sheet is |

| | | |
|---|---|---|
| | | ordered sealed. (Court Reporter Colleen Gregory-Gettel) (gmd) (Entered: 01/11/2024) |
| 01/11/2024 | 38 | TEXT NOTICE TO COUNSEL FOR DEFENDANT Charles Brennan: An Indictment dated January 11, 2024 regarding your client has been filed with the Court. In the event Defendant wishes to waive appearance at formal arraignment, the attached waiver must be signed by defendant and defendant's counsel, and electronically filed with the Court by 1/18/2024. If the Court does not receive the signed Waiver by that date, the Court will immediately schedule the arraignment of your client with little advance notice due to Speedy Trial issues. (gmd) (Entered: 01/11/2024) |
| 01/16/2024 | | Text Minute Entry for an Arraignment as to Charles Brennan held on 1/16/2024 before Magistrate Judge Daniel J. Stewart. Defendant is advised of their rights. Government states the charges and maximum penalties. Defense waives formal reading of the Indictment and enters a plea of Not Guilty to all Counts. A Criminal Pretrial Scheduling Order will be issued. Defendant remanded to USMS. Appearances: A.J. Vickey, Esq., AUSA; Michael P. McGeown-Walker, Esq., (FPD) for defendant. [Court Reporter: Lisa Tennyson]. Time: 2:01 PM - 2:04 PM. (gmd) (Entered: 01/17/2024) |
| 01/17/2024 | 39 | NOTICE OF ATTORNEY APPEARANCE: Elizabeth A. Conger appearing for USA as co-counsel with Attorney Ashlyn Jessica Miranda and Allen J. Vickey *for the forfeiture aspect of the case* (Conger, Elizabeth) (Entered: 01/17/2024) |
| 01/17/2024 | 40 | CRIMINAL PRETRIAL SCHEDULING ORDER as to Charles Brennan Motions to be filed by 2/13/2024. Jury Trial set for 3/11/2024 09:30 AM in Albany before U.S. District Judge Anne M. Nardacci. Signed by Magistrate Judge Daniel J. Stewart on 1/17/2024. (gmd) (Entered: 01/17/2024) |
| 01/23/2024 | 41 | Letter from Defense Counsel Moving to Reopen Detention Hearing as to Charles Brennan (Attachments: # 1 Exhibit 1)(McGeown-Walker, Michael) (Entered: 01/23/2024) |
| 01/24/2024 | 42 | STIPULATION by USA to 60-Day Continuance (Vickey, Allen) (Entered: 01/24/2024) |
| 01/24/2024 | 43 | TEXT ORDER as to Charles Brennan: On January 23, 2024, defense counsel filed a Letter Request seeking to reopen the issue of detention in this matter based upon newly obtained evidence that was not available at the time Defendant was ordered detained. Dkt. No. 41 . Upon review of the docket, Defendant was ordered detained by Magistrate Judge Daniel J. Stewart on June 8, 2023. Dkt. No. 25 . Defense counsel's request to reopen the issue of detention and the scheduling of any Detention Hearing is referred to Magistrate Judge Stewart for resolution. SO ORDERED by U.S. District Judge Anne M. Nardacci on 1/24/2024. (mab) (Entered: 01/24/2024) |
| 01/25/2024 | | TEXT NOTICE OF HEARING as to Charles Brennan Detention Hearing set for 1/29/2024 02:00 PM in Albany before Magistrate Judge Daniel J. Stewart. (gmd) (Entered: 01/25/2024) |
| 01/26/2024 | 44 | ORDER TO CONTINUE - Ends of Justice as to Charles Brennan. Time excluded from 1/26/2024 until 3/26/2024. Jury Trial is set for 5/20/2024 at 9:30 AM in Albany, NY before U.S. District Judge Anne M. Nardacci. The Final Pretrial Conference is set for 5/14/2024 at 10:00 AM in Albany, NY. Pretrial Submissions due by 5/6/2024. Change of Plea shall be entered on or before 5/2/2024. Motions to be filed by 4/12/2024. Discovery by the United States due by 3/29/2024. Reciprocal Discovery by Defendant due 4/5/2024. Signed by U.S. District Judge Anne M. Nardacci on 1/26/2024. (mab) (Entered: 01/26/2024) |
| 01/29/2024 | 45 | NOTICE OF ATTORNEY APPEARANCE: Allen J. Vickey appearing for USA as substituted counsel for Attorney Ashlyn Miranda (Vickey, Allen) (Entered: 01/29/2024) |

| | | |
|---|---|---|
| 01/29/2024 | | Text Minute Entry for a Hearing on the Motion to Reopen Detention as to Charles Brennan held on 1/29/2024 before Magistrate Judge Daniel J. Stewart. The Defense moves to reopen the matter of detention. The Government argues against. The Government submits to the Court Exhibit 1: case law U.S.A. v. Carroll. The Court questions defendants' mother, Cheryl Brennan. The Court hears from Probation officer Kanni Barnes who appears via telephone. After hearing from Counsel, the Court reserves making a decision at this time. Order to follow. Defendant is remanded to the custody of the USMS. Appearances: Allen J. Vickey, Esq., AUSA; Michael P. McGeown-Walker, Esq., (FPD) for defendant. [PO: Kanni Barnes via Telephone/Daniel Casullo; Court Reporter: Jacqueline Stroffolino]. Time: 2:21 PM - 2:46 PM. (gmd) (Entered: 01/30/2024) |
| 01/30/2024 | 46 | DECISION and ORDER as to Charles Brennan: that for the reasons described above, Defendant's application for release (Dkt. No. 41 ) is Denied.Signed by Magistrate Judge Daniel J. Stewart on 01/30/2024. (hmr) (Entered: 01/30/2024) |
| 02/05/2024 | 47 | NOTE by Charles Brennan. (hmr) (Entered: 02/06/2024) |
| 02/05/2024 | 48 | Letter Request from Charles Brennan requesting new counsel. (hmr) (Entered: 02/06/2024) |
| 02/12/2024 | | TEXT NOTICE OF HEARING as to Charles Brennan Attorney Appointment Hearing set for 2/14/2024 02:00 PM in Albany before Magistrate Judge Daniel J. Stewart. (gmd) (Entered: 02/12/2024) |
| 02/14/2024 | | Text Minute Entry for an Attorney Appointment Hearing as to Charles Brennan held on 2/14/2024 before Magistrate Judge Daniel J. Stewart. Due to the nature of the proceeding, the government is excused, and the transcript and courtroom is sealed. After hearing from Counsel and the defendant the Court finds that there is a breakdown in the attorney client relationship and relieves the OFPD. Counsel has been appointed. Appearances: Allen J. Vickey, Esq., AUSA; Michael P. McGeown-Walker, Esq., (FPD) for defendant. [Court Reporter: Lisa Tennyson]. Time: 2:00 PM - 2:04 PM.(gmd) (Entered: 02/14/2024) |
| 02/14/2024 | 49 | CJA 20 - TEXT ORDER - Appointment of Attorney Scott W. Iseman for Charles Brennan. Refer to the Court's website: http://www.nynd.uscourts.gov/criminal-justice-act for comprehensive information relating to court appointed representation. Attorneys are reminded that CJA vouchers are to be submitted to the court no later than 45 days after the final disposition of the case, unless good cause is shown. Please refer to Appendix II of the CJA Plan (Guidelines for Submitting Claims for Reimbursement Pursuant to the Criminal Justice Act of the Northern District of New York). SO ORDERED by Magistrate Judge Daniel J. Stewart on 2/14/2024.(gmd) (Entered: 02/14/2024) |
| 02/27/2024 | 50 | Letter from United States as to Charles Brennan requesting Joint Request to Modify the August 23, 2023 Discovery Protective Order (Dkt. 31) (Vickey, Allen) (Entered: 02/27/2024) |
| 02/28/2024 | 51 | TEXT ORDER granting the parties' joint 50 Letter Request seeking modification to the Discovery Protective Order in this matter dated August 23, 2023. Specifically, Defendant s permitted to view the discovery materials discussed in paragraph one of the Order. All other terms of the Order remain in effect. SO ORDERED by U.S. District Judge Anne M. Nardacci on 2/28/2024. (mab) (Entered: 02/28/2024) |
| 03/27/2024 | 52 | STIPULATION by USA to 30-Day Continuance (Vickey, Allen) (Entered: 03/27/2024) |
| 03/28/2024 | 53 | ORDER TO CONTINUE - Ends of Justice as to Charles Brennan. Time excluded from 3/28/2024 until 4/27/2024. Jury Trial is set for 6/17/2024 at 9:30 AM in Albany, NY before U.S. District Judge Anne M. Nardacci. The Final Pretrial Conference is set for 6/11/2024 at 10:00 AM in Albany, NY. Pretrial Submissions due by 6/3/2024. Change of |

| | | |
|---|---|---|
| | | Plea shall be entered on or before 5/30/2024. Motions to be filed by 5/3/2024. Discovery by the United States due by 4/19/2024. Reciprocal Discovery by Defendant due 4/26/2024. Signed by U.S. District Judge Anne M. Nardacci on 3/28/2024. (mab) (Entered: 03/28/2024) |
| 05/03/2024 | 54 | First MOTION for Omnibus Relief by Charles Brennan. Motion returnable before Judge Nardacci. Response to Motion due by 5/24/2024. Reply to Response to Motion due by 5/31/2024 (Attachments: # 1 Declaration, # 2 Exhibit(s) Exhibits C - G to Iseman Dec., # 3 Memorandum of Law)(Iseman, Scott) (Entered: 05/03/2024) |
| 05/07/2024 | | TEXT NOTICE OF FILING DEFICIENCY as to Charles Brennan re the 54 First MOTION for Omnibus Relief by Charles Brennan. Motion returnable before Judge Nardacci.. **NOTICE IS HEREBY GIVEN** to correct the following: Other Deficiency - The correction(s) should be made within 3 days of this notice. *****EXHIBIT E is Missing from Attachment 2 - Exhibits C-G to the Declaration - Attorney is to refile the complete Attachment 2 - Exhibits C-G into this case, including the Missing Exhibit E. Please use the Event Notice - Other and Add - Exhibits C-G and link it to the Dkt. No. 54 First Motion for Omnibus Relief. Notice of Filing Deficiency Deadline 5/10/2024 (hmr) (Entered: 05/07/2024) |
| 05/08/2024 | 55 | NOTICE *Exhibits C-G to Iseman Dec.* by Charles Brennan re 54 First MOTION for Omnibus Relief by Charles Brennan. Motion returnable before Judge Nardacci. (Iseman, Scott) (Entered: 05/08/2024) |
| 05/09/2024 | 56 | SUPERSEDING INDICTMENT as to Charles Brennan (1) count(s) 1s-2s, 3s, 4s, 5s, 6s, 7s. (gmd) (Entered: 05/10/2024) |
| 05/10/2024 | 59 | NOTICE OF ATTORNEY APPEARANCE: Ashlyn Jessica Miranda appearing for USA as co-counsel with Attorney Allen Vickey (Miranda, Ashlyn) (Entered: 05/10/2024) |
| 05/10/2024 | 60 | TEXT NOTICE TO COUNSEL FOR DEFENDANT as to Charles Brennan. An Indictment dated May 9, 2024 regarding your client has been filed with the Court. In the event Defendant wishes to waive appearance at formal arraignment, the attached waiver must be signed by defendant and defendant's counsel, and electronically filed with the Court by 5/16/2024. If the Court does not receive the signed Waiver by that date, the Court will immediately schedule the arraignment of your client with little advance notice due to Speedy Trial issues. (gmd) (Entered: 05/10/2024) |
| 05/16/2024 | | TEXT NOTICE OF HEARING as to Charles Brennan: Arraignment on Superseding Indictment set for 5/16/2024 02:00 PM in Albany before Magistrate Judge Daniel J. Stewart.(gmd) (Entered: 05/16/2024) |
| 05/16/2024 | | Text Minute Entry for an Arraignment on Superseding Indictment held on 5/16/2024 before Magistrate Judge Daniel J. Stewart. Defendant is advised of their rights. Government states the charges and maximum penalties. Defense waives formal reading of the Superseding Indictment and enters a plea of not guilty on all counts. Government moves for defendants continued detention. Defendant remanded to the USMS. Appearances: Ashlyn Jessica Miranda, Esq., AUSA, and Allen J. Vickey, Esq., AUSA; Scott W. Iseman, Esq., (CJA) for defendant. [Digitally Recorded]. Time: 2:00 PM - 2:05 PM (gmd) (Entered: 05/16/2024) |
| 05/17/2024 | 61 | Letter from Defendant as to Charles Brennan Letter requesting approval of schedule for motions relating to superseding indictment (Iseman, Scott) (Entered: 05/17/2024) |
| 05/17/2024 | 62 | Letter from USA as to Charles Brennan In Response to the Defendant's May 17 Letter (Dkt. 61) (Vickey, Allen) (Entered: 05/17/2024) |

| | | |
|---|---|---|
| 05/21/2024 | 63 | TEXT ORDER as to Charles Brennan: The Court has reviewed the submissions by counsel filed on May 17, 2024. Dkt. Nos. 61 and 62 . Defendant is permitted to supplement his 54 Motion for Omibus Relief by May 24, 2024. The Government shall file a response to the motion by June 3, 2024. Defendant shall file any reply to the response by June 10, 2024. The Court will issue a separate notice setting forth the date and time for a hearing on the motion. SO ORDERED by U.S. District Judge Anne M. Nardacci on 5/21/2024. (mab) (Entered: 05/21/2024) |
| 05/23/2024 | 64 | MEMORANDUM OF LAW re 54 Motion for Omnibus Relief, *Supplemental Memo of Law* (Iseman, Scott) (Entered: 05/23/2024) |
| 05/23/2024 | 65 | AFFIDAVIT in Support by Charles Brennan re 54 First MOTION for Omnibus Relief by Charles Brennan. Motion returnable before Judge Nardacci. *Declaration in Support of Supplemental Memo of Law* (Iseman, Scott) (Entered: 05/23/2024) |
| 06/03/2024 | 66 | RESPONSE in Opposition by USA as to Charles Brennan re 54 First MOTION for Omnibus Relief by Charles Brennan. Motion returnable before Judge Nardacci. (Miranda, Ashlyn) (Entered: 06/03/2024) |
| 06/10/2024 | 67 | REPLY TO RESPONSE to Motion by Charles Brennan re 54 First MOTION for Omnibus Relief by Charles Brennan. Motion returnable before Judge Nardacci. (Iseman, Scott) (Entered: 06/10/2024) |
| 06/11/2024 | 68 | Letter from Elizabeth A. Conger as to Charles Brennan requesting that the proposed Order for Partial Dismissal of the Forfeiture Allegation be signed and filed; (Attachments: # 1 Proposed Order/Judgment)(Conger, Elizabeth) (Entered: 06/11/2024) |
| 07/02/2024 | 69 | ORDER for Partial Dismissal of the Forfeiture Allegation. Signed by U.S. District Judge Anne M. Nardacci on 7/2/2024. (mab) (Entered: 07/02/2024) |
| 07/10/2024 | 70 | MEMORANDUM-DECISION and ORDER as to Charles Brennan. The Court hereby ORDERS that Defendant's Motion, Dkt. No. 54 is DENIED. The Court further ORDERS that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules. Signed by U.S. District Judge Anne M. Nardacci on 7/10/2024. (mab) (Entered: 07/10/2024) |
| 07/17/2024 | | TEXT NOTICE as to Charles Brennan: Counsel are to appear for a Status Conference on 7/23/2024 at 11:00 AM in Albany, NY before U.S. District Judge Anne M. Nardacci. (mab) (Entered: 07/17/2024) |
| 07/18/2024 | 71 | STIPULATION by USA to 14 day extension (Vickey, Allen) (Entered: 07/18/2024) |
| 07/18/2024 | 72 | Letter from USA as to Charles Brennan requesting Adjournment of the July 23, 2024 Status Conference (Vickey, Allen) (Entered: 07/18/2024) |
| 07/18/2024 | 73 | ORDER TO CONTINUE - Ends of Justice as to Charles Brennan. Time excluded from 7/18/2024 until 8/1/2024. Jury Trial is set for 9/18/2024 at 9:30 AM in Albany, NY before U.S. District Judge Anne M. Nardacci. A Change of Plea shall be entered on or before September 6, 2024. Signed by U.S. District Judge Anne M. Nardacci on 7/18/2024. (mab) (Entered: 07/18/2024) |
| 07/18/2024 | 74 | TEXT ORDER granting the Government's 72 Letter Request, filed on consent, seeking an adjournment of the conference in this matter. The conference set for July 23, 2024 before the undersigned is ADJOURNED without date. SO ORDERED by U.S. District Judge Anne M. Nardacci on 7/18/2024. (mab) (Entered: 07/18/2024) |

| | | |
|---|---|---|
| 08/01/2024 | 75 | Letter from USA as to Charles Brennan requesting a status conference and to exclude Speedy Trial time until such conference is scheduled (Vickey, Allen) (Entered: 08/01/2024) |
| 08/06/2024 | | TEXT NOTICE OF CONFERENCE as to Charles Brennan: Counsel are to appear for a Status Conference on 8/7/20204 at 11:00 AM in Albany, NY before U.S. District Judge Anne M. Nardacci. (mab) (Entered: 08/06/2024) |
| 08/07/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Status Conference as to Charles Brennan held on 8/7/2024. Appearances: AUSA Ashlyn Miranda for the Government and Scott Iseman, Esq. for Defendant. Atty Iseman provides update as to plea discussions. Atty Miranda advised that discovery is complete and has been provided to Atty Iseman. Trial is expected to last 3-4 days. The Court discusses proposed dates in November and December. Atty Iseman advised that his client will not consent to a further extension of the speedy trial clock in this matter. Trial must be scheduled in September. Atty Miranda advised that she has various essential witnesses with limited availability in the month of September. The Court suggests the week of 9/16/2024. Atty Miranda to advise the Court as to the availability of essential witnesses during the week of 9/16/2024. (TIME: 11:02AM-11:18AM). (Court Reporter: Lisa Tennyson/CRD: Maria Blunt). (mab) (Entered: 08/07/2024) |
| 08/08/2024 | 76 | NOTICE OF ATTORNEY APPEARANCE: Joseph Hartunian appearing for USA as co-counsel with Attorney Ashlyn Miranda (Hartunian, Joseph) (Entered: 08/08/2024) |
| 08/09/2024 | 77 | TRIAL ORDER as to Charles Brennan: A Jury Trial in this matter is set to begin on 9/16/2024 at 9:00 AM before the undersigned. This is a FIRM trial date. Counsel are to file their pretrial submissions, including any motions in limine, by 8/21/2024. Any responses to the motions in limine are to be filed by 8/28/2024. A Pretrial Conference is set for 9/5/2024 at 2:00 PM in Chambers. Signed by U.S. District Judge Anne M. Nardacci on 8/9/2024. (mab) (Entered: 08/09/2024) |
| 08/22/2024 | 78 | SECOND SUPERSEDING INDICTMENT as to Charles Brennan (1) count(s) 1ss, 2ss-3ss, 4ss, 5ss, 6ss, 7ss, 8. (tab) (Entered: 08/22/2024) |
| 08/22/2024 | | Text Minute Entry for proceedings held before Magistrate Judge Christian F. Hummel: GRAND JURY makes a partial report and returns Indictment. Tally Sheet is ordered sealed. (Court Reporter Joshua Delauter) (tab) (Entered: 08/22/2024) |
| 08/22/2024 | 80 | MEMORANDUM OF LAW *Government's Pretrial Memorandum on Asset Forfeiture Issues;* (Conger, Elizabeth) (Entered: 08/22/2024) |
| 08/22/2024 | 81 | PROPOSED VERDICT FORM *Government's Proposed Special Verdict Form on Asset Forfeiture;* by USA as to Charles Brennan (Conger, Elizabeth) (Entered: 08/22/2024) |
| 08/22/2024 | 82 | Proposed Jury Instructions *Government's Proposed Jury Instructions on Asset Forfeiture;* by USA as to Charles Brennan (Conger, Elizabeth) (Entered: 08/22/2024) |
| 08/23/2024 | 84 | Proposed Jury Instructions by Charles Brennan (Iseman, Scott) (Entered: 08/23/2024) |
| 08/23/2024 | 85 | Proposed Voir Dire by Charles Brennan (Iseman, Scott) Modified on 8/26/2024 (mab). (Entered: 08/23/2024) |
| 08/23/2024 | 86 | TRIAL BRIEF by USA as to Charles Brennan (Hartunian, Joseph) (Entered: 08/23/2024) |
| 08/23/2024 | 87 | Omnibus MOTION in Limine by USA as to Charles Brennan. Motion returnable before Judge Anne M. Nardacci. (Attachments: # 1 Exhibit(s) 1)(Hartunian, Joseph) (Entered: 08/23/2024) |
| 08/23/2024 | 88 | EXHIBIT LIST by USA as to Charles Brennan (Miranda, Ashlyn) (Entered: 08/23/2024) |

| | | |
|---|---|---|
| 08/23/2024 | 89 | WITNESS LIST by USA as to Charles Brennan (Miranda, Ashlyn) (Entered: 08/23/2024) |
| 08/23/2024 | 90 | Court Ordered Questionnaire as to Charles Brennan (Miranda, Ashlyn) (Entered: 08/23/2024) |
| 08/23/2024 | 91 | Proposed Jury Instructions by USA as to Charles Brennan (Miranda, Ashlyn) (Entered: 08/23/2024) |
| 08/23/2024 | 92 | Proposed Voir Dire by USA as to Charles Brennan (Miranda, Ashlyn) (Entered: 08/23/2024) |
| 08/23/2024 | 93 | Letter from government as to Charles Brennan requesting sealing of accompanying Exhibit 1 (Attachments: # 1 Exhibit(s) 1, # 2 Proposed Order/Judgment)(Hartunian, Joseph) (Entered: 08/23/2024) |
| 08/27/2024 | 94 | TEXT NOTICE TO COUNSEL FOR DEFENDANT: A Second Superseding Indictment dated August 22, 2024 regarding your client has been filed with the Court. In the event Defendant wishes to waive appearance at formal arraignment, the attached waiver must be signed by defendant and defendant's counsel, and electronically filed with the Court by 9/2/2024. If the Court does not receive the signed Waiver by that date, the Court will immediately schedule the arraignment of your client with little advance notice due to Speedy Trial issues.(egr) (Entered: 08/27/2024) |
| 08/28/2024 | 95 | RESPONSE in Opposition by Charles Brennan re 87 Omnibus MOTION in Limine by USA as to Charles Brennan. Motion returnable before Judge Anne M. Nardacci. (Iseman, Scott) (Entered: 08/28/2024) |
| 08/30/2024 | 96 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Charles Brennan (Iseman, Scott) (Entered: 08/30/2024) |
| 09/03/2024 | 97 | Letter from Defendant Charles Brennan as to Charles Brennan requesting Dismissal of S2 Indictment (Iseman, Scott) (Entered: 09/03/2024) |
| 09/03/2024 | 98 | TEXT ORDER as to Charles Brennan: The Court is in receipt of Defendant's Letter Motion seeking dismissal of the Second Superseding Indictment in this matter. Dkt. No. 97 . The Government is directed to file a response to Defendant's Letter Motion by noon on Thursday, September 5, 2024. SO ORDERED by U.S. District Judge Anne M. Nardacci on 9/3/2024. (mab) (Entered: 09/03/2024) |
| 09/04/2024 | 99 | RESPONSE in Opposition by USA as to Charles Brennan re 97 Letter from Defendant Charles Brennan as to Charles Brennan requesting Dismissal of S2 Indictment (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5)(Hartunian, Joseph) (Entered: 09/04/2024) |
| 09/05/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Final Pretrial Conference as to Charles Brennan held on 9/5/2024. Appearances: AUSA Ashlyn Miranda and AUSA Joseph Hartunian; Scott Iseman, Esq. (CJA). Defendant was present. The Court first addresses Defendant's motion to dismiss the second superseding Indictment. The Court has reviewed the submissions and hears additional argument from counsel. Defendant's motion is denied. A written Order will be issued. Government to file an amended Exhibit list. The Court addresses the pending motion in limine and advised that it would be granted in some aspects and reserved on others. A written Order will be issued. Motion to seal is granted. Trial logistics discussed. Trial to begin on Monday, 9/16/24 at 9:00 AM. (TIME: 2:07PM-2:30PM). (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 09/06/2024) |
| 09/11/2024 | 100 | MEMORANDUM-DECISION and ORDER. The Court hereby ORDERS that Defendant's Motion, Dkt. No. 97 , is DENIED. The Court further ORDERS that this |

| | | |
|---|---|---|
| | | Clerk serve a copy of this Order on the parties in accordance with the Local Rules. Signed by U.S. District Judge Anne M. Nardacci on 9/11/2024. (mab) (Entered: 09/11/2024) |
| 09/12/2024 | 101 | MEMORANDUM-DECISION and ORDER. The Court hereby ORDERS that the Government's motion *in limine*, Dkt. Nos. 87 , 102 , is GRANTED in part and RESERVED in part, as set forth in Section III of this Memorandum-Decision and Order. The Court hereby ORDERS that the Government's request to seal, Dkt. No. 93 , is GRANTED. The Court further ORDERS that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules. Signed by U.S. District Judge Anne M. Nardacci on 9/12/2024. (mab) (Entered: 09/12/2024) |
| 09/12/2024 | 102 | SEALED DOCUMENT - maintained in Clerk's Office and not available for electronic viewing. (mab) (Entered: 09/12/2024) |
| 09/12/2024 | 103 | SEALED DOCUMENT - maintained in Clerk's Office and not available for electronic viewing. (mab) (Entered: 09/12/2024) |
| 09/12/2024 | 104 | EXHIBIT LIST by USA as to Charles Brennan (Hartunian, Joseph) (Entered: 09/12/2024) |
| 09/13/2024 | 105 | PROPOSED VERDICT FORM by USA as to Charles Brennan (Miranda, Ashlyn) (Entered: 09/13/2024) |
| 09/15/2024 | 106 | EXHIBIT LIST by Charles Brennan (Iseman, Scott) (Entered: 09/15/2024) |
| 09/16/2024 | 107 | EXHIBIT LIST by USA as to Charles Brennan (Miranda, Ashlyn) (Entered: 09/16/2024) |
| 09/16/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Jury Trial Day 1 as to Charles Brennan held on 9/16/2024. Appearances: AUSA Ashlyn Miranda and AUSA Joseph Hartunian; Scott Iseman, Esq. for Defendant. The Court addresses issues outside of the presence of the Jury. Jurors enter the Courtroom. Opening remarks by the Court. Jurors are sworn. The Court hears from specific Jurors at sidebar. Jurors excused. Voir Dire by the Court, Government and Defendant. Challenges for cause heard. Counsel exercise peremptory challenges. Jurors excused. Rounds 1-3 completed. Jury selection is not complete and will continue on 9/17/2024. Jurors are reminded that they are not to discuss the case and are excused. Court is ADJOURNED until Tuesday, 9/17/2024 at 11:00AM. (TIME: 9:28AM-3:00PM). (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 09/17/2024) |
| 09/17/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Jury Trial Day 2 as to Charles Brennan held on 9/17/2024. Appearances: AUSA Ashlyn Miranda and AUSA Joseph Hartunian; Scott Iseman, Esq. for Defendant. Jury selection continues. Voir Dire by the Court, the Government and Defendant. Jurors excused. 12 Jurors and 1 Alternate Juror are seated. Jurors are sworn. The Court gives Jury a Preliminary Charge. Government and Defendant give opening statements. Government calls 1st Witness, ATF Task Force Officer, Paul Zurlo. Witness is sworn and questioned. Exhibits admitted. Jurors are reminded to not discuss the case and excused for the day. Court is ADJOURNED until Wednesday, 9/18/2024 at 9:00 AM. (TIME: 11:00AM - 4:45PM). (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 09/18/2024) |
| 09/18/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Jury Trial Day 3 as to Charles Brennan held on 9/18/2024. Appearances: AUSA Ashlyn Miranda and AUSA Joseph Hartunian; Scott Iseman, Esq. for Defendant. The Court addresses issues with counsel outside of the presence of the Jury. The questioning of Government's 1st Witness, Paul Zurlo, continues and is completed. Atty Iseman reserves the right to recall Paul Zurlo as a Witness. Government calls their 2nd through 7th Witness - CI, Kevin Lancto, Robin Jasmin, Richard Gardinier, Nathan Spisak and Lauren Viup. Witnesses are sworn, directly questioned and cross-examined. Exhibits received |

| | | |
|---|---|---|
| | | into evidence. Jury is reminded that they are not to discuss the matter and excused for the day. Court is ADJOURNED until Thursday, 9/19/2024 at 9:30AM. (TIME: 9:15AM - 5:00PM). (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 09/19/2024) |
| 09/19/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Jury Trial Day 4 as to Charles Brennan held on 9/19/2024. Appearances: AUSA Ashlyn Miranda and AUSA Joseph Hartunian; Scott Iseman, Esq. for Defendant. The questioning of Government's 7th Witness, Lauren Viup, continues and is completed. Government calls their 8th through 13th Witness - Hendri Chauca, Samantha Whitfield, John Casey, Gregory Mulligan, Brian Leahey and Jason Sherman. Witnesses are sworn, directly questioned and cross-examined. Hendri Chauca is offered and received as an expert in forensic science. Samantha Whitfield is offered and received as an expert in substance analysis. Gregory Mulligan is offered and received as an expert in the practices of controlled substance distributors and users. Jason Sherman is offered and received as an expert in interstate nexus of firearms. Exhibits received into evidence. The Government rests. Jury is excused. Defendant renews his motion pursuant to Rule 29. The Court reserves on a decision. The Court is made aware of an issue with Juror No. 1. The Court questions Juror No. 1 outside of the presence of other Jurors. After hearing from counsel, Juror No. 1 is excused and replaced with Alternate Juror No. 1. Defendant is advised that he has a constitutional right to not testify in this trial. Following the Court's inquiry, Defendant confirms that he understands that right and that he will testify. Jury enters the Courtroom. Defendant Charles Brennan is called as the defense's 1st Witness. Witness is sworn and questioned. Jury is reminded that they are not to discuss the matter and excused for the day. Court is ADJOURNED until Friday, 9/20/2024 at 9:00AM. (TIME: 9:15AM - 5:05PM). (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 09/20/2024) |
| 09/20/2024 | 108 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial - Day 3 - Testimony excerpt of Paul Zurlo held on 9/18/2024 before Judge Anne M. Nardacci, Court Reporter: Jacqueline Stroffolino, Telephone number: 518-257-1894. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/11/2024. Redacted Transcript Deadline set for 10/21/2024. Release of Transcript Restriction set for 12/19/2024. Notice of Intent to Redact due by 9/25/2024 (jxs, ) (Entered: 09/20/2024) |
| 09/20/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Jury Trial Day 5 as to Charles Brennan held on 9/20/2024. Appearances: AUSA Ashlyn Miranda and AUSA Joseph Hartunian; Scott Iseman, Esq. for Defendant. The Court addresses issues outside of the presence of the Jury. Government continues with cross-examination of Defense's 1st Witness, Charles Brennan. Atty Iseman re-directs Witness. Testimony of Charles Brennan concludes. Defendant rests. Government recalls Lauren Viup as rebuttal Witness. Witness is sworn and questioned. Government does not have any further rebuttal Witnesses. Jury is excused. Defendant renews his motion pursuant to Rule 29. Defendant also moves to dismiss Counts 1, 2-4 and 8 of the Superseding Indictment. After hearing from counsel, Defendants motions are denied. Charge |

| | | |
|---|---|---|
| | | conference held. Jury enters the Courtroom. Jury charge is given. Closing statements by the Government and Defendant. Jury is excused to begin deliberations. Court receives Jury Note No. 1. Counsel are advised that the Jurors submitted a note stating that they have picked their foreperson and would like to be excused until Monday. Jury enters the Courtroom. Jury is reminded that they are not to discuss the matter and excused for the day and directed to report on Monday morning to the deliberation room to continue with deliberations. Court is ADJOURNED until Monday, 9/23/2024 at 9:00AM. (TIME: 9:05AM - 5:25PM). (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 09/23/2024) |
| 09/22/2024 | 109 | Proposed Jury Instructions *Supplemental* by Charles Brennan (Attachments: # 1 Defense Theory of the Case Requested Instruction)(Iseman, Scott) (Entered: 09/22/2024) |
| 09/23/2024 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Jury Trial Day 6 as to Charles Brennan held on 9/23/2024. Appearances: AUSA Ashlyn Miranda and AUSA Joseph Hartunian; Scott Iseman, Esq. for Defendant. Jury continues with deliberations. The Court receives Jury Note No. 2. Counsel advised that the Jury has requested to review evidence and for a playback of video. Jury enters the Courtroom to review evidence and the video and returns to deliberations. The Court receives Jury Note No. 3. Counsel advised that the Jury has a question with regard to an exhibit. Jury enters the Courtroom. Court addresses the question and the Jury returns to deliberations. The Court receives Jury Note. No. 4. Counsel advised that the Jury has reached a verdict. Jury enters the Courtroom and returns a unanimous verdict - Guilty on Counts 1, 2, 5, 6 and 7; Not Guilty on Counts 3, 4 and 8. Jury is polled at the request of the Government. Jury is excused. Counsel informed of motions and appeal deadlines. Probation is directed to prepare a Presentence Investigation Report. Sentencing is set for 1/22/2025 at 11:00 AM in Albany, NY. Defendant is remanded to the custody of the USMS pending sentencing. Court is ADJOURNED. (TIME: 9:00AM - 2:30PM). (Court Reporter: Jacqueline Stroffolino/CRD: Maria Blunt). (mab) (Entered: 09/24/2024) |
| 09/23/2024 | 110 | JURY INSTRUCTIONS - Court Exhibit No. 1. (mab) (Entered: 09/24/2024) |
| 09/23/2024 | 111 | Jury Note No. 1 as to Charles Brennan - Court Exhibit No. 2. (mab) (Entered: 09/24/2024) |
| 09/23/2024 | 112 | Jury Note No. 2 as to Charles Brennan - Court Exhibit No. 3. (mab) (Entered: 09/24/2024) |
| 09/23/2024 | 113 | Jury Note No. 3 as to Charles Brennan - Court Exhibit No. 4. (mab) (Entered: 09/24/2024) |
| 09/23/2024 | 114 | Jury Note No. 4 as to Charles Brennan - Court Exhibit No. 5. (mab) (Entered: 09/24/2024) |
| 09/23/2024 | 115 | TRIAL EXHIBIT (Attachments: # 1 Defendant Exhbit List) # 2 Court Exhibits) (mab). (Entered: 09/24/2024) |
| 09/23/2024 | 116 | JURY VERDICT as to Charles Brennan (1) - Guilty on Counts 1ss, 2ss, 5ss, 6ss, and 7ss; Not Guilty on Count 3ss, 4ss, and 8. (mab) (Entered: 09/24/2024) |
| 09/24/2024 | 117 | GUIDELINE ORDER: The sentencing as to Charles Brennan is set for 1/22/2025 at 11:00 AM in Albany, NY before the undersigned. Government Sentencing Memo Deadline is 1/2/2025. Defendant Sentencing Memo Deadline is 1/2/2025. Signed by U.S. District Judge Anne M. Nardacci on 9/24/2024. (mab) (Entered: 09/24/2024) |
| 10/03/2024 | 118 | TRANSCRIPT REQUEST by USA as to Charles Brennan for proceedings held on 09/19/2024 and 09/20/2024 before Judge Anne M. Nardacci. (Hartunian, Joseph) (Entered: 10/03/2024) |

| | | |
|---|---|---|
| 11/12/2024 | 119 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial - Day 4 - Testimony of Charles Brennan, Part 1 held on 9/19/2024 before Judge Anne M. Nardacci, Court Reporter: Jacqueline Stroffolino, Telephone number: 518-257-1894. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/3/2024. Redacted Transcript Deadline set for 12/13/2024. Release of Transcript Restriction set for 2/10/2025. Notice of Intent to Redact due by 11/18/2024 (jxs, ) (Entered: 11/12/2024) |
| 11/12/2024 | 120 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial - Day 5 - Testimony of Charles Brennan, Part 2 held on 9/20/2024 before Judge Anne M. Nardacci, Court Reporter: Jacqueline Stroffolino, Telephone number: 518-257-1894. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/3/2024. Redacted Transcript Deadline set for 12/13/2024. Release of Transcript Restriction set for 2/10/2025. Notice of Intent to Redact due by 11/18/2024 (jxs, ) (Entered: 11/12/2024) |
| 12/05/2024 | 121 | PRESENTENCE INVESTIGATION REPORT - INITIAL DISCLOSURE [LODGED] as to Charles Brennan. The Presentence Investigation Report in this matter is now available for review. Any objections to the report shall be served on the Probation Office within 14 days of this notice, by mailing a hard copy to the Probation Officer. Please contact the probation officer who prepared the report if you have any questions.**[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (anp, ) (Entered: 12/05/2024) |
| 01/02/2025 | 122 | Letter from Defendant Charles Brennan as to Charles Brennan requesting Adjourn Sentencing (Iseman, Scott) (Entered: 01/02/2025) |
| 01/06/2025 | 123 | TEXT ORDER granting defense counsel's 122 Letter Request, filed on consent, seeking an adjournment of the sentencing in this matter. The sentencing as to Charles Brennan is RESCHEDULED for 4/10/2025 at 11:00 AM in Albany, NY before the undersigned. The Government and Defendant shall file a Sentencing Memo by 3/24/2025. SO ORDERED by U.S. District Judge Anne M. Nardacci on 1/6/2025. (mab) (Entered: 01/06/2025) |

| | | |
|---|---|---|
| 01/10/2025 | 124 | Letter from Government as to Charles Brennan requesting to seal accompanying exhibits (Attachments: # 1 Exhibit(s), # 2 Exhibit(s))(Hartunian, Joseph) Modified on 2/24/2025 (mab). (Entered: 01/10/2025) |
| 01/14/2025 | 125 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial Excerpt (testimony of Lauren Viup) held on 9/18/2024 before Judge Anne M. Nardacci, Court Reporter: Jacqueline Stroffolino. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/4/2025. Redacted Transcript Deadline set for 2/14/2025. Release of Transcript Restriction set for 4/14/2025. Notice of Intent to Redact due by 1/21/2025 (jlh, ) (Entered: 01/14/2025) |
| 01/14/2025 | 126 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial Excerpt (continued testimony of Lauren Viup) held on 9/19/2024 before Judge Anne M. Nardacci, Court Reporter: Jacqueline Stroffolino. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/4/2025. Redacted Transcript Deadline set for 2/14/2025. Release of Transcript Restriction set for 4/14/2025. Notice of Intent to Redact due by 1/21/2025 (jlh, ) (Entered: 01/14/2025) |
| 01/24/2025 | 129 | SEALED DOCUMENT - maintained in Clerk's Office and not available for electronic viewing. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C). (mab) (Entered: 02/24/2025) |
| 02/14/2025 | 127 | Letter from government as to Charles Brennan requesting sealing of accompanying Exhibit 1 and Exhibit A (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) A, # 3 Exhibit(s) B, # 4 Exhibit(s) C)(Hartunian, Joseph) Modified on 2/24/2025 (mab). (Entered: 02/14/2025) |
| 02/20/2025 | 128 | Letter from Defendant Charles Brennan as to Charles Brennan Request to Seal Reply (Attachments: # 1 Exhibit(s))(Iseman, Scott) Modified on 2/24/2025 (mab). (Entered: 02/20/2025) |
| 02/24/2025 | 130 | TEXT ORDER: The Court has reviewed the parties' submissions in connection with Defendant's potential motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Dkt. No. 122 . As portions of these submissions relate to issues the Court previously ordered sealed, *see, e.g.*, Dkt. No. 127-2, the parties' requests to seal are GRANTED. The Clerk is directed to seal Dkt. Nos. 124-1, 124-2, 127-1, 127-2, 128-1 and to docket and seal Defendant's January 24, 2025 submission. Defendant's request for a conference or hearing is DENIED. Such a proceeding is unwarranted by the material |

| | | |
|---|---|---|
| | | contained within Dkt. No. 124-2, largely for the reasons proffered by the Government. *See* Dkt. No. 127-1, Sec. II.2.a. Moreover, Defendant's arguments regarding any alleged disclosure violation are unpersuasive. *See, e.g., United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) ("To establish a *Brady* or *Giglio,* violation, 'a defendant must show that: (1) the government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice.'") (quoting *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001)). For similar reasons, and in the absence of a pending motion, Defendant's request for the Court to review certain materials *ex parte* is DENIED. SO ORDERED by U.S. District Judge Anne M. Nardacci on 2/24/2025. (mab) (Entered: 02/24/2025) |
| 02/27/2025 | 131 | PRESENTENCE INVESTIGATION REPORT - FINAL DISCLOSURE [LODGED] as to Charles Brennan. The final version of the Presentence Investigation Report, including all revisions and the most recent Addendum is now available for review. This version of the report will be used by the Court at the time of sentencing. **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. Any further distribution or dissemination is prohibited.]** (baa, ) (Entered: 02/27/2025) |
| 03/21/2025 | 132 | Letter from Government as to Charles Brennan requesting authorization to file oversized sentencing memoranda (Hartunian, Joseph) (Entered: 03/21/2025) |
| 03/21/2025 | 133 | TEXT ORDER granting the parties' joint 132 Letter Request seeking permission to file an oversized Sentencing Memo in this matter. The Government and Defendant are permitted to file an oversized Sentencing Memo not to exceed twenty (20) pages in length. SO ORDERED by U.S. District Judge Anne M. Nardacci on 3/21/2025. (mab) (Entered: 03/21/2025) |
| 03/24/2025 | 134 | SENTENCING MEMORANDUM by Charles Brennan (Attachments: # 1 Law Enforcement Texts with CI, # 2 Law enforcement planning text messages, # 3 ATF firearm valuation, # 4 Sentencing Commission Report, # 5 Treatment Certificate)(Iseman, Scott) (Entered: 03/24/2025) |
| 03/24/2025 | 135 | CHARACTER LETTER(S) RE: SENTENCING submitted as to Defendant Charles Brennan (Iseman, Scott) (Entered: 03/24/2025) |
| 03/24/2025 | 136 | SENTENCING MEMORANDUM by USA as to Charles Brennan (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6, # 7 Exhibit(s) 7, # 8 Exhibit(s) 8, # 9 Exhibit(s) 9, # 10 Exhibit(s) 10, # 11 Exhibit(s) 11)(Hartunian, Joseph) (Entered: 03/24/2025) |
| 03/28/2025 | | TEXT NOTICE OF HEARING: The sentencing as to Charles Brennan is RESCHEDULED as to TIME ONLY and is now set for 4/10/2025 at 1:30 PM in Albany, NY before U.S. District Judge Anne M. Nardacci. (mab) (Entered: 03/28/2025) |
| 03/28/2025 | 137 | Supplemental SENTENCING MEMORANDUM by USA as to Charles Brennan (Miranda, Ashlyn) (Entered: 03/28/2025) |
| 04/09/2025 | 138 | Letter as to Charles Brennan (Iseman, Scott) (Entered: 04/09/2025) |
| 04/09/2025 | 139 | Letter from Scott Iseman as to Charles Brennan Response to Government 's Supplemental Sentencing Memo (Iseman, Scott) (Entered: 04/09/2025) |
| 04/10/2025 | | Text Minute Entry for proceedings held before U.S. District Judge Anne M. Nardacci: Sentencing as to Charles Brennan held on 4/10/2025. Appearances: AUSA Joseph Hartunian, Scott Iseman, Esq. (CJA), USPO Melyssa Inman and USPO Ed Cox. Counsel acknowledge receipt of the Presentence Investigation Report. Defendant objects to the guideline calculations contained in the report. The Court hears from Atty Iseman and the |

| | | |
|---|---|---|
| | | Government as to the objections. After hearing from counsel, the Court makes various rulings on the record as to the objections. No further objections by either counsel as to the factual information contained in the report. The Court adopts the factual information set forth in the report. The Court hears from the Government and Atty Iseman prior to imposing sentence. Defendant speaks on his own behalf. Upon a guilty verdict at trial, Defendant is sentenced to a term of imprisonment of 97 months on each of Counts 1,2,5,6 and 7 to run concurrently for a total term of imprisonment of 97 months. A term of Supervised Release of 4 years on Counts 1 and 6 and 3 years on Counts 2, 5 and 7 is imposed to run concurrently for a total term of 4 years. Standard and special conditions imposed. Defendant acknowledges that he has reviewed the special conditions with his counsel and waives a formal reading. No fine imposed. Special Assessment in the amount of $500 is imposed and due payable immediately. At the request of Atty Iseman, the Court recommends to the BOP that Defendant be placed in a facility as close to his family as possible. Parties advised of their appeal rights. Defendant is remanded to the custody of the USMS in accordance with the terms of this sentence. (TIME: 1:36PM-2:45PM). (Court Reporter: Jacquelyn Gecewicz/CRD: Maria Blunt). (mab) (Entered: 04/11/2025) |
| 04/15/2025 | 140 | TRANSCRIPT REQUEST by USA as to Charles Brennan for proceedings held on 04/10/2025 before Judge Anne M. Nardacci. (Hartunian, Joseph) (Entered: 04/15/2025) |
| 04/18/2025 | 141 | NOTICE OF APPEAL by Charles Brennan No fee paid. (Iseman, Scott) (Entered: 04/18/2025) |
| 04/18/2025 | 143 | NOTICE OF APPEAL by Charles Brennan re 142 Judgment. [Filed Stamped Copy of this document was mailed to Defendant at Rensselear County Jail on 4/21/2025.] (hmr) (Entered: 04/21/2025) |
| 04/21/2025 | 142 | JUDGMENT as to Charles Brennan. Defendant is sentenced on Counts 1, 2, 5, 6 and 7 of the Second Superseding Indictment to a term of imprisonment of 97 months to run concurrently, for a total term of imprisonment of 97 months. A term of Supervised Release of 4 years on Counts 1 and 6 and 3 years on Counts 2, 5 and 7 is imposed to run concurrently, for a total term of Supervised Release of 4 years. Standard and special conditions imposed. No fine imposed. Special Assessment in the amount of $500 is imposed and due payable immediately. Defendant acquitted on Counts 3, 4 and 8 of the Second Superseding Indictment following a Jury Trial. Signed by U.S. District Judge Anne M. Nardacci on 4/21/2025. (mab) (Entered: 04/21/2025) |
| 04/21/2025 | | TEXT NOTICE as to Charles Brennan - Attorneys appointed pursuant to the Criminal Justice Act are reminded that CJA Vouchers are to be submitted no later than 45 days after the final disposition of the case, unless good cause is shown. Refer to the Court's website: http://www.nynd.uscourts.gov/criminal-justice-act for comprehensive information relating to court appointed representation. (mab) (Entered: 04/21/2025) |
| 04/21/2025 | 144 | STATEMENT OF REASONS [LODGED] as to Charles Brennan **[This document has been electronically lodged with the Court and is viewable by ONLY the attorney for the government, the attorney for the defendant, and the presiding judge. It is not a filed document, therefore is not available for public inspection. Any further distribution or dissemination is prohibited.]** (amt) (Entered: 04/21/2025) |
| 04/21/2025 | 145 | ELECTRONIC NOTICE AND CERTIFICATION as to Charles Brennan sent to US Court of Appeals re 141 Notice of Appeal - Final Judgment, 143 Notice of Appeal - Final Judgment. [Copy mailed to defendant via regular mail to Rensselear County Jail on 4/21/2025.] hmr) (Entered: 04/21/2025) |
| 04/23/2025 | 146 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Sentencing held on 04/10/2025 before Judge Anne M. Nardacci, Court Reporter/Transcriber: Jacquelyn B. Gecewicz,Telephone number: (518) 257-1894. |

| | | |
|---|---|---|
| | | **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/14/2025. Redacted Transcript Deadline set for 5/27/2025. Release of Transcript Restriction set for 7/22/2025. Notice of Intent to Redact due by 4/28/2025 (jbg, ) (Entered: 04/23/2025) |
| 05/07/2025 | 147 | MOTION for Release on Bail Pending Appeal by Charles Brennan. (Attachments: # 1 Envelope)(hmr) (Entered: 05/08/2025) |
| 05/08/2025 | 148 | Letter from Government as to Charles Brennan requesting Court to strike as improper or deny Dkt. No. 147 (Hartunian, Joseph) (Entered: 05/08/2025) |
| 05/19/2025 | 149 | NOTICE OF APPEAL by USA as to Charles Brennan No fee paid. (Hartunian, Joseph) (Entered: 05/19/2025) |
| 05/19/2025 | 150 | ELECTRONIC NOTICE AND CERTIFICATION as to Charles Brennan sent to US Court of Appeals re 149 Notice of Appeal - Final Judgment. (hmr) (Entered: 05/19/2025) |
| 05/19/2025 | 151 | TEXT ORDER: The Court is in receipt of Defendant's motion for release pending appeal, Dkt. No. 147 ("Motion"), and the Government's opposition, Dkt. No. 148 . Defendant's detention pending appeal is required under 18 U.S.C. § 3143(b)(2). *See, e.g., United States v. Bryant*, No. 06-cr-17, 2020 WL 2476184, at *1 (S.D.N.Y. May 13, 2020) ("Due to his conviction for a drug offense carrying a maximum sentence of ten years or more, [defendant] is subject to mandatory detention pursuant to 18 U.S.C. 3143(b)(2)."); *see also* 18 U.S.C. § 3142(f)(1)(C); Dkt. No. 131 at 105; Dkt. No. 142 at 1. In addition, Defendant has not demonstrated "exceptional reasons" that could nonetheless warrant release under 18 U.S.C. § 3145(c). *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991). Accordingly, Defendant's Motion is DENIED. SO ORDERED by U.S. District Judge Anne M. Nardacci on 5/19/2025. (Copy served upon Defendant by regular mail). (mab) (Entered: 05/19/2025) |
| 06/02/2025 | 152 | Mail Returned as Undeliverable - Return to Sender - Not Deliverable as Addressed - Unable to Forward - No Longer at this Address - re 151 Text Order, sent to Charles Brennan Address sent to Rensselaer County Jail, 1501 6th Avenue, Troy, NY 12180. (hmr) (Entered: 06/03/2025) |
| 06/12/2025 | 153 | MANDATE of USCA as to Charles Brennan re 149 Notice of Appeal - Final Judgment filed by USA: The Government moves to withdraw its cross-appeal docketed under 25-1288. It is hereby Ordered that the motion is Granted. The cross-appeal is deemed withdrawn. (hmr) (Entered: 06/12/2025) |
| 06/12/2025 | | USCA Case Number as to Charles Brennan 25-1288 for 149 Notice of Appeal - Final Judgment filed by USA. (hmr) (Entered: 06/12/2025) |
| 07/03/2025 | 154 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Initial Appearance held on September 13, 2022, before Judge Daniel J. Stewart, Court Reporter: Lisa L. Tennyson,Telephone number: 518.257.1823. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy |

| | | |
|---|---|---|
| | | governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. Notice of Intent to Redact due by 7/8/2025 (lt, ) (Entered: 07/03/2025) |
| 07/03/2025 | 155 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Bond Revocation Hearing held on May 25, 2023, before Judge Daniel J. Stewart, Court Reporter: Lisa L. Tennyson,Telephone number: 518.257.1823. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. Notice of Intent to Redact due by 7/8/2025 (lt, ) (Entered: 07/03/2025) |
| 07/03/2025 | 156 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Arraignment held on January 6, 2024, before Judge Daniel J. Stewart, Court Reporter: Lisa L. Tennyson,Telephone number: 518.257.1823. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. Notice of Intent to Redact due by 7/8/2025 (lt, ) (Entered: 07/03/2025) |
| 07/03/2025 | 157 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Attorney Representation Hearing (Sealed) held on February 14, 2024, before Judge Daniel J. Stewart, Court Reporter: Lisa L. Tennyson,Telephone number: 518.257.1823. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript |

| | | |
|---|---|---|
| | | Restriction. After that date it may be obtained through PACER.( Redaction Request due 7/24/2025., Redacted Transcript Deadline set for 8/4/2025., Release of Transcript Restriction set for 10/1/2025., Notice of Intent to Redact due by 7/8/2025), SEALED DOCUMENT - maintained in Clerk's Office and not available for electronic viewing (lt, ) (Entered: 07/03/2025) |
| 07/03/2025 | 158 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Status Conference held on August 7, 2024, before Judge Anne M. Nardacci, Court Reporter: Lisa L. Tennyson,Telephone number: 518.257.1823. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. Notice of Intent to Redact due by 7/8/2025 (lt, ) (Entered: 07/03/2025) |
| 07/15/2025 | 159 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Video Detention Hearing held on 10/19/2022 before Judge Daniel J. Stewart, Court Reporter: Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/5/2025. Redacted Transcript Deadline set for 8/15/2025. Release of Transcript Restriction set for 10/14/2025. Notice of Intent to Redact due by 7/21/2025 (hfc, ) (Entered: 07/15/2025) |
| 08/04/2025 | 160 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Detention Hearing held on 9/14/2022 before Judge Daniel J. Stewart, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/25/2025. Redacted Transcript Deadline set for 9/4/2025. Release of Transcript Restriction set for 11/3/2025. Notice of Intent to Redact due by 8/11/2025 (hfc, ) (Entered: 08/04/2025) |

| | | |
|---|---|---|
| 08/04/2025 | 161 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Status Conference held on 6/8/2023 before Judge Daniel J. Stewart, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/25/2025. Redacted Transcript Deadline set for 9/4/2025. Release of Transcript Restriction set for 11/3/2025. Notice of Intent to Redact due by 8/11/2025 (hfc, ) (Entered: 08/04/2025) |
| 08/04/2025 | 162 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Detention Hearing held on 1/29/2024 before Judge Daniel J. Stewart, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/25/2025. Redacted Transcript Deadline set for 9/4/2025. Release of Transcript Restriction set for 11/3/2025. Notice of Intent to Redact due by 8/11/2025 (hfc, ) (Entered: 08/04/2025) |
| 08/04/2025 | 163 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Final Pretrial Conference held on 9/5/2024 before Judge Anne M. Nardacci, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/25/2025. Redacted Transcript Deadline set for 9/4/2025. Release of Transcript Restriction set for 11/3/2025. Notice of Intent to Redact due by 8/11/2025 (hfc, ) (Entered: 08/04/2025) |
| 08/07/2025 | 164 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Digitally Recorded Arraignment held on 05/16/2024 before Judge Daniel J. Stewart, Court Reporter/Transcriber: Lisa M. Mazzei,Telephone number: (315) 266-1176. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove |

| | | |
|---|---|---|
| | | personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/28/2025. Redacted Transcript Deadline set for 9/8/2025. Release of Transcript Restriction set for 11/5/2025. Notice of Intent to Redact due by 8/12/2025 (lmm, ) (Entered: 08/07/2025) |
| 09/16/2025 | 165 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial held on 9/16/2024 before Judge Anne M. Nardacci, Court Reporter: Jacqueline Stroffolino. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/7/2025. Redacted Transcript Deadline set for 10/17/2025. Release of Transcript Restriction set for 12/15/2025. Notice of Intent to Redact due by 9/22/2025 (jlh, ) (Entered: 09/16/2025) |
| 12/23/2025 | 166 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial (Day 2) held on 9/17/2024 before Judge Anne M. Nardacci, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/13/2026. Redacted Transcript Deadline set for 1/23/2026. Release of Transcript Restriction set for 3/23/2026. Notice of Intent to Redact due by 12/29/2025 (hfc, ) (Entered: 12/23/2025) |
| 12/23/2025 | 167 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial (Day 3) held on 9/18/2024 before Judge Anne M. Nardacci, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of |

| | | |
|---|---|---|
| | | personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/13/2026. Redacted Transcript Deadline set for 1/23/2026. Release of Transcript Restriction set for 3/23/2026. Notice of Intent to Redact due by 12/29/2025 (hfc, ) (Entered: 12/23/2025) |
| 01/06/2026 | 168 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial (Day 4) held on 9/19/2024 before Judge Anne M. Nardacci, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/27/2026. Redacted Transcript Deadline set for 2/6/2026. Release of Transcript Restriction set for 4/6/2026. Notice of Intent to Redact due by 1/12/2026 (hfc, ) (Entered: 01/06/2026) |
| 01/15/2026 | 169 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial (Day 5) held on 9/20/2024 before Judge Anne M. Nardacci, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/5/2026. Redacted Transcript Deadline set for 2/17/2026. Release of Transcript Restriction set for 4/15/2026. Notice of Intent to Redact due by 1/20/2026 (hfc, ) (Entered: 01/15/2026) |
| 01/15/2026 | 170 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Charles Brennan: Jury Trial (Day 6) held on 9/23/2024 before Judge Anne M. Nardacci, Court Reporter/Transcriber: Jacqueline Stroffolino/Hannah Cavanaugh,Telephone number: 315-234-8545. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** In order to remove personal identifier data from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within 5 business days of this date. The policy governing the redaction of personal information is located on the court website at www.nynd.uscourts.gov. Read this policy carefully. If no Notice of Intent to Redact is filed within 5 business days of this date, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available on the web 90 days from today's date. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction |

| | | |
|---|---|---|
| | | Request due 2/5/2026. Redacted Transcript Deadline set for 2/17/2026. Release of Transcript Restriction set for 4/15/2026. Notice of Intent to Redact due by 1/20/2026 (hfc, ) (Entered: 01/15/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/30/2026 19:21:02 | | | |
| **PACER Login:** | cpwashington16 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cr-00012-AMN |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

AO 91 (Rev 11 11) Criminal Complaint

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
SEP 13 2022
AT ___ O'CLOCK
John M. Domurad, Clerk - Albany

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

**UNITED STATES OF AMERICA**
v.
**CHARLES BRENNAN,**
**Defendant**

Case No. 1:22-MJ-518-DJS

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of September 13, 2022 in the county of Saratoga in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 922(k) | Possession of a Defaced Firearm |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

[signature]
*Complainant's signature*
Lauren Viup, ATF Special Agent
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: 9/13/2022

[signature]
*Judge's signature*

City and State: Albany, New York

Hon. Daniel J. Stewart, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Lauren Viup, being duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been since January 2016. I am currently assigned to the New York Field Division (NYFD) and have participated in numerous investigations that fall under the investigative jurisdiction of ATF, including, but not limited to, violations involving violent crimes in aid of racketeering, including murder; racketeering conspiracy; the unlawful possession and use of firearms; and the distribution and manufacture of controlled substances.

2. I have completed the ATF Basic Agent Training. The curriculum for the course included federal law regarding violent crime and firearm-related offenses, drug-related offenses, drug identification, physical surveillance, undercover negotiations, electronic surveillance, and interviewing techniques. I also have experience in the identification and collection of firearms, explosives, ammunition, drug and non-drug evidence, and the analysis and interpretation of recorded conversations. Specifically, I have particular knowledge in the use and utility of undercover agents, confidential informants, physical surveillance, electronic surveillance, consensual recordings, investigative interviews, garbage searches, global positioning system (GPS) tracking devices, the service of grand jury subpoenas, and the execution of federal and state search and arrest warrants. I have personally conducted and/or assisted in numerous investigations of criminal acts involving violations of Title 18, United States Code, Sections 922 and 924.

3. This affidavit is intended to show merely that there is probable cause for a complaint, and consequently it does not set forth all of my knowledge about the matters under investigation. Where statements of others are related in this affidavit, they are related in substance and in part. I

submit this affidavit in support of a criminal complaint charging CHARLES BRENNAN ("BRENNAN") with a violation of Title 18, United States Code, Section 922(k) and 924(a)(1)(B) [Possession of a Firearm With an Obliterated or Defaced Serial Number]. Section 922(k) provides, in pertinent part, that "[i]t shall be unlawful for any person knowingly ... to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce."

**BASIS FOR PROBABLE CAUSE**

4. On September 13, 2022, Saratoga County Sheriff's Office (SCSO) executed a state search warrant at BRENNAN's residence in Malta, New York. During the execution of the search warrant, law enforcement observed BRENNAN coming down the stairs from the second level of the residence, and one other individual on the first level of the residence. Law enforcement recovered the following items during the execution of the search warrant, including but not limited to: seven firearms, one of which was a Beretta, model 96D, .40 caliber, semiautomatic pistol with an obliterated serial number (the "pistol"); ammunition (including a loaded .40 caliber magazine in the same gun box as the pistol); approximately 11 grams of methamphetamine (which field tested positive); and 26 tabs of LSD (which field tested positive). The pistol was located in BRENNAN's bedroom, in a compartment at the foot of his bed.

5. BRENNAN was transported to SCSO where he was read his Miranda Warnings, which he waived and agreed to talk to law enforcement. During his post-Miranda interview, BRENNAN made the following statements, in sum and substance: everything on the upstairs level of the residence belonged to him (this area includes BRENNAN's bedroom where the pistol was located); the upstairs of the residence consisted of three rooms, all of which were utilized by BRENNAN; that the side of the pistol looked like someone sanded it; that BRENNAN did not

personally sand the serial number down, and that pistol has always been defaced, BRENNAN "assumed that someone sanded off-tried to sand off the serial numbers on it or something. But there's still serial numbers in it. I mean I took it apart and looked, there's some inside and stuff…;" BRENNAN recently fired the pistol in his backyard; BRENNAN said, "Well I'm not going to go to a shooting range without a pistol permit;" and "It's [the pistol] not good for hunting; I don't hunt anyways."

6. Below are images of the pistol recovered from BRENNAN's bedroom taken by law enforcement after the execution of the search warrant:



7.





8. On September 13, 2022, SA Viup received a verbal interstate nexus opinion from SA Jason Sherman that the aforementioned pistol recovered from BRENNAN's bedroom, was manufactured outside the state of New York, therefore having traveled in/or effecting interstate commerce.

9. Based on the foregoing, your affiant submits that there is probable cause to conclude that BRENNAN has violated Title 18, United States Code, Section 922(k) and 924(a)(1)(B) (Possession of a Firearm With an Obliterated Serial Number).

**Attested to by the affiant.**

Lauren Viup
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on September 13, 2022 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No. 1:24-cr-00012 (AMN) |
| **v.** | **Indictment** |
| **CHARLES BRENNAN,** | Violations: 21 U.S.C. § 841(a)(1) and (b)(1)(C) [Distribution of a Controlled Substance] |
| **Defendant.** | 18 U.S.C. § 924(c)(1)(A) [Use of Firearm During and In Relation to a Drug Trafficking Crime] |
| | 21 U.S.C. § 841(a)(1) and (b)(1)(C) [Possession with Intent to Distribute a Controlled Substance] |
| | 18 U.S.C. § 922(k) [Possession of a Firearm with an Obliterated Serial Number] |
| | 6 Counts and Forfeiture Allegation |
| | County of Offense: Saratoga |

U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
Jan 11 - 2024
John M. Domurad, Clerk

**THE GRAND JURY CHARGES:**

**COUNT 1**
**[Distribution of a Controlled Substance]**

On or about July 25, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally distributed a controlled substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

**COUNT 2**
**[Distribution of a Controlled Substance]**

On or about August 2, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally distributed a controlled substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

**COUNT 3**
**[Use of Firearm During and In Relation to a Drug Trafficking Crime]**

On or about August 2, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is Distribution of a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), knowingly used and carried a firearm, that is a 7.62 caliber Riley Defense RAK 47 rifle bearing serial number B27875, in violation of Title 18, United States Code, Section 924(c)(1)(A).

**COUNT 4**
**[Distribution of a Controlled Substance]**

On or about September 7, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally distributed a controlled substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

**COUNT 5**
**[Possession with Intent to Distribute a Controlled Substance]**

On or about September 13, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally possessed with the intent to

distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

**COUNT 6**
**[Possession of a Firearm with an Obliterated Serial Number]**

On or about September 13, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly possessed a firearm that had been shipped and transported in interstate commerce, that is a .40 caliber Beretta semiautomatic pistol, model 96D, which had the manufacturer's serial number removed, obliterated, and altered, knowing that the serial number had been removed, obliterated, and altered, in violation of 18 U.S.C. § 922(k).

**FORFEITURE ALLEGATION**

The allegations contained in Count 6 of this indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense in violation of Title 18, United States Code, Section 922(k), set forth in Count 6 of this indictment, the defendant, **CHARLES BRENNAN**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), any firearm and ammunition involved in and used in any knowing violation of the offense of conviction. The property to be forfeited includes, but is not limited to, the following:

1). one .40 caliber Beretta semiautomatic pistol, model 96D, which had the manufacturer's serial number removed, obliterated, and altered.

Dated: January 11, 2024

A TRUE BILL,

[redacted]

Grand Jury Foreperson ***Redacted Foreperson

CARLA B. FREEDMAN
United States Attorney

By: ______________________
Allen J. Vickey
Assistant United States Attorney
Bar Roll No. 513696

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>CHARLES BRENNAN<br>Defendant. | **AFFIDIAVIT IN SUPPORT OF DEFENDANT's OMNIBUS MOTION**<br><br>Case No: 1:24-cr-00012-AMN |

**State of New York**
**County of Rensselaer**

**CHARLES BRENNAN,** swears under penalty of perjury the following:

1. I am the Defendant in the above captioned matter and make this affidavit in support of my omnibus motion and for that limited purpose alone.
2. On or about September 13, 2022 I lived at 153 Knapp Road, Malta, New York.
3. On that same day, law enforcement forcibly entered my home, forcibly restrained me and my family members and searched my entire home including my bedroom, work area and other areas of the home while holding me at gunpoint.
4. I did not give law enforcement permission to enter my home. I know that no one in my family gave permission for law enforcement to enter my home. This is evidenced by law enforcement battering down my door, using flash bang grenades, and entering with guns drawn.
5. Neither I nor any member of my family consented to law enforcement searing my home or seizing any property.
6. I have reviewed the inventory that law enforcement created of the items seized during the execution of the search warrant at my home. I have also reviewed the search warrants law

enforcement applied for and obtained to search through 17 electronic devices law enforcement seized from me during the September 13, 2022 search. The electronic devices described in that warrant are mine.

7. I enjoyed an expectation of privacy in my home, my room, workspace and in the various electronic items seized by law enforcement. I never consented to law enforcement searching or seizing any of my property.

Charles Brennan

Sworn before me this
2nd day of May, 2024

Notary Public

SCOTT W. ISEMAN
Notary Public, State of New York
Qualified in Saratoga County No. 02IS6350742
Commission Expires November 21, 2024

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>CHARLES BRENNAN<br>Defendant. | **ATTORNEY DECLARATION**<br><br>Case No:<br>1:24-cr-00012-AMN |

**Scott W. Iseman**, pursuant to 28 U.S.C. § 1746, declares the following to be true and correct under penalties of perjury:

1. I am the attorney for the Defendant, Charles Brennan, in the above captioned matter and make this Declaration in support of the Defendant's omnibus motion.
2. The facts described below are based on my review of the case file and the cited sources.
3. The Defendant is charged by way of a six-count indictment charging three counts of Distribution of a Controlled Substance in violation of 21 U.S.C. § 841(b)(1)(C), one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1), one count of Use of a Firearm During and in Relation to a Drug Trafficking Crime in violation of 21 U.S.C 841(a) and 18 U.S.C. § 924(c)(1)(A), and one count of Possession of a Firearm with an Obliterated Serial Number in violation of 18 U.S.C. § 922(k). *See* ECF Doc. No. 35.
4. The Defendant was arraigned on the indictment on January 16, 2024 and pled not guilty. ECF. Text Minute Entry dated entered 1/17/2024.
5. Trial is scheduled to begin on June 17, 2024. *See* ECF. Doc. No. 53.
6. Defendant's omnibus motion seeks the dismissal of Counts Three and Six for the constitutional arguments advanced in the accompanying memorandum of law.

7. Defendant's omnibus motion also seeks the suppression of any evidence obtained from certain electronic devices seized from the Defendant's home since, based on the timeline and information referenced below, the "search" or forensic extraction of those devices was done well after the timeframe permitted by the warrant or FRCP 41.
8. In support of this motion is an affidavit from the Defendant establishing a reasonable expectation of privacy in the electronic devices at issue. A true and accurate copy of this affidavit is attached as Exhibit "A".

Facts Relevant to the Argument that 18 U.S.C. § 922(k) and 924(c) are Unconstitutional

9. The following facts are based on the government's statements in the cited reports and communications and are not admissions of fact by the defendant.
10. In July 2025 local law enforcement arrested an individual who quickly offered to become a confidential informant ("CI") for the Saratoga County Sheriff's Office. *See* Exhibit "B", October 31, 2022 Search Warrant Application at ¶ 9.
11. The CI offered to obtain methamphetamine from the Defendant and began working with law enforcement to conduct controlled purchases from the Defendant. Id.
12. The CI made several controlled purchases of methamphetamine from the Defendant from July 25, 2022 to September 13, 2022. At the same time, the CI offered to purchase a RAK 47 style rifle from the Defendant for $2,500.00. That purchase is alleged to have occurred on August 2, 2022. While no controlled substances accompanied the exchange of the RAK 47 sale, the CI followed up with the Defendant and later obtained a magazine for the RAK 47, methamphetamine and marijuana the same day. *Id.* at ¶ 11-12.
13. The government's position is that this firearm sale was in connection with drug trafficking and thus the subject of Count Three.

14. On or about September 13, 2022, law enforcement executed a search warrant on the Defendant's home at 153 Knapp Road in Malta, New York. *See* ECF Doc. No. 1 at ¶ 4.

15. As relevant to this Defendant's instant motion, in the execution of that warrant, law enforcement seized, among other things, 17 electronic devices and a several firearms. Among the firearms was a Beretta, Model 96D, .40 caliber pistol with a magazine and ammunition. Upon examination of the Beretta, the government agents concluded the Beretta's serial number had been obliterated.

16. During a post-search interrogation, the Defendant stated that he found the "shitty old-fucking Beretta" in his barn, observed that it lacked a hammer and was rusted. He believed that the Beretta belonged to an old friend named David Frost who had left it there approximately 10 years ago and had passed away. *See* ROI, Summary of Interview attached as Exhibit "C".

17. According to law enforcement, the Defendant acknowledged the serial number had been "sanded". *See* ECF Doc. No. 1 at ¶ 5.

18. These facts generally form the basis of Count Six, which charges the Defendant with possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

19. Upon information and belief, there is no evidence or suggestion that the Defendant was the person who obliterated the serial number, nor is that the government's theory. Rather, it is expected the government's theory is the Defendant knowingly possessed a firearm with an obliterated serial number as alleged in Count Six.

<u>Facts Relevant to the Expired Search Warrant Motion</u>

20. Following the seizure of the 17 electronic devices, law enforcement applied to a U.S. District Court Magistrate for a warrant to forensically search those devices. A warrant

was issued on October 18, 2022. A true and accurate copy of the warrant is attached at Exhibit "D".

21. After a preliminary review of certain devices, law enforcement identified a suspected image of child pornography, ceased their review of the devices, applied for an additional warrant to search for evidence relevant to a potential child pornography offense, and obtained that warrant on October 31, 2022. Per the Magistrate's Order, that search authority expired on November 14, 2022. A true and accurate copy of the warrant is attached at Exhibit "E".

22. Based on my review of materials provided by the government and my conversations with AUSA A.J. Vickey, potentially only two of the 17 seized electronic devices were subjected to a forensic extraction *prior* to the search authority in the warrants expiring.

23. The devices that may have been timely extracted are described as Item #18, Samsung, model SM-A2056 IMEI: 255370104188279 and Item #39 Motorola, model #XT2117-1 moto G Play 2021 IMEI: 356892110865912. *See* Exhibit "F".

24. The remaining devices (which is no less than 15) were not subjected to a forensic extraction until March 2024. *See* Exhibit "G".

25. On May 3, 2024, I spoke with AUSA Vickey about these facts and confirmed the above timing and that the government, as of the date of this motion, intends to offer evidence at trial from the 17 devices listed in Exhibits "D" and "E" including those that were not forensically extracted until March 2024, approximately 16 months after the authority do search the devices expired.

26. Based on my review of Exhibits "D", "E", "F" and "G", I am not able to determine which Samsung device among the multiple Samsung devices listed in Exhibits "D" and "E" was subjected to the forensic extraction referenced in Exhibit "F".

27. Likewise, none of the devices listed in Exhibits "D", "E", or their supporting applications are described as a Motorola or Moto G device. As a result, it is unclear whether the Motorola device described in Exhibit "F" was sufficiently described in the search authority granted under Exhibits "D" and "E".

28. Upon information and belief and my review of the discovery, I have not identified any other warrant which permits the forensic extraction of a Motorola device identified or described as Item #39 in Exhibit "F".

29. As of the date of this motion, the Government has not disclosed any forensic extraction of the 17 seized items or made any completed forensic extractions available to review.

30. Since trial is scheduled to begin on June 17, 2024, the delayed search and any subsequent production caused by the search, and the use of the fruits of that search affirmatively against the defendant will cause clear prejudice.

31. The Defendant is detained pretrial, has agreed to eight Speedy Trial Stipulations to facilitate discovery. ECF Doc. No. 8, 16, 18, 20, 29, 33, 44, and 53. The government has not taken advantage of that time.

32. The Defendant has not caused any delay in the Government timely conducting a forensic extraction or other search of the devices seized on September 13, 2022.

33. The use of evidence that was not timely searched in accordance with the search warrant is prejudicial since it will likely delay the Defendant's trial while he remains detained.

34. The Government should therefore be precluded from using the fruits of forensic searches that occurred long after the date to conduct said searches was authorized or without said authorization.

DATED: May 3, 2024

ISEMAN PLLC

By: ______________________

Scott Iseman
*Attorney for Defendant*
125 High Rock Ave. Suite 215-H
Saratoga Springs, NY 12866
scott@scottisemanlaw.com
(518) 416-2158

# Exhibit B

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

UNITED STATES DISTRICT COURT
for the
Northern District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

(1) One black Samsung smartphone (A1)
(2) One silver Android smartphone (A2)
(3) One black Samsung smartphone (A3)
(4) One black 4GB thumb drive (A4)
(5) One black Android smartphone (A5)
(6) One black Dell hard drive (A6)
(7) One black digipower multi-card reader (A7)
(8) One black and silver HP laptop (A8)
(9) One silver Gateway laptop (A9)
(10) One silver HP laptop (A10)
(11) One black and purple KOCASO tablet (A11)
(12) One silver LG smartphone (A12)
(13) One black Maxell hard drive (A13)
(14) One black My Passport Ultra hard drive (A14)
(15) One black Samsung tablet (A15)
(16) One black tablet (A16)
(17) One silver Android smartphone (A17)

CURRENTLY LOCATED AT THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES ALBANY AND SYRACUSE FIELD OFFICES WITHIN THE NORTHERN DISTRICT OF NEW YORK

Case No. 1:22-MJ-620 (DJS)

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
OCT 31 2022
AT ___ O'CLOCK
John M. Domurad, Clerk - Albany

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

See Attachment A.

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252A (a)(2) | Transportation of Child Pornography |

The application is based on these facts:

See Attached Affidavit.

☒ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days): Click here to enter a date. is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]

*Applicant's signature*

HSI Special Agent James C. Hamilton

*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: Oct 31, 2022

[signature]

*Judge's signature*

City and State: Albany, NY

Hon. Daniel J. Stewart, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF:

(1) One black Samsung smartphone (A1)
(2) One silver Android smartphone (A2)
(3) One black Samsung smartphone (A3)
(4) One black 4GB thumb drive (A4)
(5) One black Android smartphone (A5)
(6) One black Dell hard drive (A6)
(7) One black Digi power multi-card reader (A7)
(8) One black and silver HP laptop (A8)
(9) One silver Gateway laptop (A9)
(10) One silver HP laptop (A10)
(11) One black and purple KOCASO tablet (A11)
(12) One silver LG smartphone (A12)
(13) One black Maxell hard drive (A13)
(14) One black My Passport Ultra hard drive (A14)
(15) One black Samsung tablet (A15)
(16) One black tablet (A16)
(17) One silver Android smartphone (A17)

CURRENTLY LOCATED AT THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES ALBANY AND SYRACUSE FIELD OFFICES WITHIN THE NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
OCT 31 2022
AT ___ O'CLOCK
John M. Domurad, Clerk - Albany

Case No. 1:22-MJ-620 (DJS)

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41**
**FOR A WARRANT TO SEARCH AND SEIZE**

I, James C. Hamilton, being duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for the issuance of a search warrant authorizing the examination of property, specifically, six cellular phones, two thumb drives, three hard drives, three laptops, three tablets

and one removable digital media device, which are more particularly described in Attachment A (A1-A17) (collectively, the "**Subject Devices**"), which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. Located within the **Subject Devices** to be searched, I seek to seize evidence, fruits, and instrumentalities relating to violations of 18 U.S.C. § 2252A (a)(2) [Transporting and Possessing Child Pornography] and 18 U.S.C. §2252A(a)(5)(B) [Possession of Child Pornography] as described in Attachment B.

2. I am a Special Agent with the US Immigration and Customs Enforcement Office of Homeland Security Investigations ("HSI") and have been since June 2002. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a law enforcement officer for 25 years. I was a police officer for approximately 5 years and have been a Special Agent for 20 years. My career as a Special Agent began in June 2002 with the U.S. Customs Service, which is now known as U.S. Immigration and Customs Enforcement Homeland Security Investigations (HSI). Prior to my employment as a Special Agent, I was a police officer in the state of Tennessee from September 1997 until June 2002.

3. As an HSI Special Agent, I am authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, including offenses related to the sexual exploitation of minors, specifically those involving the transportation, possession, distribution, and receipt of child pornography, in violation of Title 18, United States Code, Sections 2252 and 2252A. I have a Bachelor of Science Criminal Justice degree and a Master of Public Management degree. I have

completed the Criminal Investigator Training Program and Customs Basic Enforcement School at the Federal Law Enforcement Training Center in Glynco, GA. During both basic training, and subsequent training, I received instruction on conducting online child pornography investigations. I have also been the affiant for and participated in the execution of numerous Federal search warrants in child pornography and child exploitation investigations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, including ATF Special Agent Lauren Viup. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2252A (a)(2) [Transporting and Possessing Child Pornography] and 18 U.S.C. § 2252A(a)(5)(B) [Possession of Child Pornography] have been committed by CHARLES BRENNAN and that evidence, instrumentalities, fruits, and contraband of these crimes as described in Attachment B, exist on the **Subject Devices** listed in Attachment A, which are currently in the custody of Alcohol Tobacco, and Firearms special agents at 11A Clinton Avenue, Suite 911, Albany, New York 12207 and at 100 S Clinton Street, Syracuse, NY 13260, of which both locations are located within the Northern District of New York.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

6. The property to be searched are six cellular phones, two thumb drives, three hard drives, three laptops, three tablets and one removable digital media device, as more fully described in Attachment A, all seized from the residence of Charles BRENNAN ("BRENNAN"), as further described below and referred to collectively as the **"Subject Devices."**

a. (A1) One black Samsung smart phone, with an unknown IMEI number, with two cameras on the back.

b. (A2) One silver Android smart phone, with one camera on the back, and an unknown IMEI number. The back of the phone has two stickers, a dripping green mouth with rotten teeth and a blue tongue, and a person holding a ball with one hand. The back of the phone also has a white hand grip in the shape of a T.

c. (A3) One black Samsung smart phone, with an unknown IMEI number. One camera on the back, with a missing back cover. There is damage to the front screen as well as the uncovered, back of the phone.

d. (A4) One black 4GB thumb drive, with a shoelace tie and pink tape.

e. (A5) One black Android smart phone, with an unknown IMEI number. Three cameras on the back, with three stickers, including: two stickers of exposed women, and a Wu-tang Clan sticker.

f. (A6) One black Dell hard drive, model K16A, bearing MAC address 8C-EC-4B-30-AA-4E, with a Dell laptop charger with an AC/DC adapter.

g. (A7) One black Digi power, multi card reader, model number DP-MCR4, with an inserted SanDisk memory card.

h. (A8) One black and silver HP laptop, with "hp" a different shade of grey on the front cover, model 2000-363NR, bearing serial number 5CB13961ZB. The front has a Spy+ sticker and a sticker of monkeys. There is also a black laptop charger.

i. (A9) One silver Gateway laptop, model GWTN-156-11BK, bearing serial

number 1GWTN15611BK0B21I001180. The outside shell is intact and covered with scratches. The back of the laptop is missing the battery cover. There is a blue and a yellow wire protruding from the side of the laptop.

j. (A10) One silver HP laptop, model 14-DK1025WM, bearing serial number with "Dell" shiny silver in color, bearing serial number 5CGO472N24. The front cover is covered with multiple stickers. There is also a black laptop charger.

k. (A11) One black and purple KOCASO tablet, model MX1037, with a cracked front screen, and one camera on the back.

l. (A12) One silver LG smartphone, with a white and tan marble back, that has one camera and a protruding black skull.

m. (A13) One black Maxell hard drive, Genpro PRO-500, with two sticker barcodes separately bearing the following numbers: 4470011045 and ATQ1009017690.

n. (A14) One black My Passport Ultra hard drive, bearing serial number WX31A74A32P9. The front of the hard drive has a blue Breaking Bad sticker on it. The back of the hard drive has minimal damage.

o. (A15) One black Samsung tablet, with multiple stickers on the back, and one camera.

p. (A16) One black tablet, with a cracked front screen. The back of the tablet has one camera and multiple stickers on it.

q. (A17) One patterned, silver Android smartphone, with damage to the front. On the back there are three cameras, a DEADNET sticker, and a multi-color hand

grip in the shape of a T.

The **Subject Devices** labeled in Attachment A as A4, A6, A7, A13, and A14 are currently located at the Albany ATF field office, located at 11A Clinton Avenue, Albany, NY 12207. The **Subject Devices** labeled A1, A2, A3, A5, A8, A9, A10, A11, A12, A15, A16, and A17 are located at the Syracuse ATF Field Office, located at 100 S Clinton Street, Syracuse, NY 13260. Both offices are located in the Northern District of New York.

7. The applied-for warrant would authorize the forensic examination of the **Subject Devices** for the purpose of identifying and extracting electronically stored data, as further described in Attachment B.

## PROBABLE CAUSE

### Initiation of Investigation

8. On or about July 25, 2022, law enforcement received information from CI who identified BRENNAN as a methamphetamine distributor, selling methamphetamine from 153 Knapp Road, Mechanicville, New York, 12118. As discussed in more detail below, the CI has provided credible information to law enforcement and conducted controlled purchases of suspected methamphetamine and a firearm from BRENNAN. Law enforcement has corroborated information provided by the CI through physical surveillance, and the review of recorded telephone calls with BRENNAN and recorded controlled purchases from BRENNAN.

### July 25, 2022 - Controlled Purchase

9. On or about July 25, 2022, members of the Saratoga County Sheriff's Office (SCSO) Narcotics Unit met the CI at a predetermined location in the Town of Malta, for the purposes of conducting a controlled purchase of methamphetamine from BRENNAN. The CI and CI's vehicle were searched with negative results. The CI was equipped with recording devices to

monitor and record the transaction, as well as $160.00 U.S. currency. of pre-recorded funds, controlled by the SCSO Narcotics Unit. The CI placed recorded text messages and phone calls to BRENNAN, who confirmed the drug transaction would occur at 153 Knapp Road ("BRENNAN's residence"). With surveillance units in place, the CI drove to BRENNAN's residence and parked CI's vehicle. A short time later, BRENNAN came to the door of his residence and handed the CI what was determined to be 3.66 grams of suspected methamphetamine in exchange for $160.00 U.S. currency. BRENNAN then walked back to his residence and returned inside. With surveillance units in place, the CI left the location and returned to a pre-determined location where CI turned over the items purchased to law enforcement. The CI and vehicle were again searched, with negative findings of contraband. The suspected narcotics purchased, field tested positive for methamphetamine and were secured into evidence.

<u>July 29, 2022 - Controlled Purchase</u>

10. On July 29, 2022, members of the SCSO Narcotics Unit met the CI at a predetermined location in the Town of Malta, for the purposes of conducting a second controlled purchase of methamphetamine from BRENNAN. The CI and vehicle were searched prior to the operation, with negative findings of contraband. The CI was equipped with recording devices to monitor and record the transaction, as well as $200.00 U.S. currency of pre-recorded funds, controlled by the SCSO Narcotics Unit. The CI placed recorded text messages and phone calls to BRENNAN, who confirmed the drug transaction would occur at BRENNAN's residence. With surveillance units in place, the CI drove to BRENNAN's residence and parked CI's vehicle. A short time later, [redacted], who is known to the CI and law enforcement as BRENNAN's girlfriend, came to the door of BRENNAN's residence and walked over to the CI vehicle. [redacted] handed the CI what was later determined to be 4 grams of suspected

methamphetamine in exchange for $200.00 U.S currency. [redacted] then walked back to BRENNAN's residence and returned inside. With surveillance units in place, the CI left the location and returned to a pre-determined location where CI turned the items purchased over to law enforcement. The CI and vehicle were again searched, with negative findings of contraband. The suspected narcotics purchased, field tested positive for methamphetamine and were secured into evidence.

August 2, 2022 - Controlled Purchase

11. On July 31, 2022, BRENNAN sent text messages to the CI, which were recorded, arranging to sell the CI a Riley Defense Inc. rifle, that had been modified from its original factory format and was not NYS Safe Act Compliant. BRENNAN advised that he would like to sell the rifle for $2,500.00 U.S. currency.

12. On August 2, 2022, members of SCSO Narcotics Unit and the ATF, met with the CI at a predetermined location in the Town of Malta, for the purposes of conducting a third controlled purchase of methamphetamine and the rifle referenced above, along with a magazine, from BRENNAN. The CI and vehicle were searched prior to the operation, with negative findings of contraband. The CI was equipped with recording devices to monitor and record the transaction, as well as $2,500.00 U.S. currency. of pre-recorded funds, controlled by the ATF. The CI placed recorded text messages and phone calls to BRENNAN, who confirmed the drug and firearm transaction would occur at 51 Luther Forest Boulevard, Mechanicville, NY 12118. With surveillance units in place, the CI drove to the location of 51 Luther Forest Boulevard. The CI parked the vehicle next to BRENNAN, who was operating a blue 2007 Chevy Aveo, bearing NY license plate JSD3862. The CI walked over to the BRENNAN's vehicle and a brief interaction between the CI and BRENNAN took place during which BRENNAN provided the CI a Riley

Defense Inc., model RAK 47, caliber 7.62 x 39, bearing serial number B2787 in exchange for $2,500.00 U.S. currency. The CI then left the location, while surveillance units were still in place. Following the transaction, the CI was taken back to the predetermined location where the item purchased was turned over immediately to LEOs. The CI and vehicle were again searched, with negative findings of contraband.

13. At this time, it was found that BRENNAN did not provide the magazine, nor methamphetamine, as previously arranged. The CI placed recorded telephone calls and text messages to BRENNAN. BRENNAN stated, in sum and substance, that he forgot them and would place them inside the mailbox at his residence. With surveillance units in place, the CI drove to BRENNAN's residence. The CI retrieved a 7.62 caliber ten-round magazine, 7.62 caliber ammunition, approximately .85 grams of suspected methamphetamine, and approximately 16 grams of suspected marijuana from the mailbox. The CI returned to the predetermined location, where the items purchased were turned over immediately to LEOs. The CI and vehicle were again searched, with negative findings of contraband. The suspected methamphetamine was field tested, tested positive for methamphetamine and was secured into evidence.

<u>September 7, 2022 - Controlled Purchase</u>

14. On September 7, 2022, members of the SCSO Narcotics Unit and ATF met with the CI at a predetermined location in the Town of Malta for the purposes of conducting a fourth controlled purchase from BRENNAN of methamphetamine. The CI and CI's vehicle were searched prior to the operation, with negative findings of contraband. The CI was equipped with recording devices to monitor and record the transaction, as well as $130.00 U.S. currency. of pre-recorded funds, controlled by the SCSO Narcotics Unit. The CI placed recorded text messages and phone calls to BRENNAN, who confirmed the drug transaction would take place at BRENNAN's

residence. With surveillance units in place, the CI drove to BRENNAN's residence. The CI exited the vehicle, and moments later BRENNAN came to the door of his residence. BRENNAN walked over to the CI and a brief interaction between them took place. BRENNAN handed the CI what was later determined to be approximately 4.29 grams of suspected methamphetamine in exchange for $130.00 U.S. currency. BRENNAN then walked down his driveway. The CI got into his/her vehicle and left, while surveillance units were still in place. Following the transaction, the CI returned to law enforcement at a predetermined location where the items purchased were turned over immediately to LEOs. The CI and vehicle were again searched, with negative findings of contraband. The suspected narcotics purchased were field tested, tested positive for methamphetamine and secured into evidence.

<u>September 13, 2022 - Search Warrant Execution</u>

15. On September 13, 2022, SCSO executed a state search warrant at BRENNAN's residence. BRENNAN's mother was also present during the execution of the search warrant. BRENNAN was encountered by LEOs, coming down the stairs from the second floor of the household to the first floor. BRENNAN was detained and transported to SCSO.

16. The upstairs of the house consisted of three rooms, all of which were utilized by BRENNAN. During the search of the residence, the following items were recovered from BRENNAN's rooms, including but not limited to:

a. Izhmash, model Saiga, caliber 7.62x39, SN: H09125607

b. MOSIN-Nagant, model: M91-30, caliber 7.62x54R, SN: 016600

c. AKKAR SILHA SANAYI TIC, Model 301, caliber 12 gauge, SN: 20CH-01057

d. Winchester, Model 3T (Ted Williams Sears and Roebuck), .22LR caliber, SN: 12682

e. Savage, Model 311, caliber 12 gauge, SN: D058635

f. Marlin, Model 336RC, caliber 30-30, SN: F36316

g. Khan, Model Cobra, caliber 12 gauge, SN: 21HP1201984

h. Beretta, Model 96D, .40 caliber, SN: obliterated

i. 5.56 caliber 100 round drum magazine

j. Metal 80% AR-15 style lowers and metal jigs

k. 5 metal tubes for .22 ammunition

l. One black box with red clips

m. 2263 rounds of multi-caliber ammunition (including a loaded .40 caliber magazine in the same firearm box as the Beretta pistol)

n. Approximately 11 grams of methamphetamine (which field tested positive)

o. 26 tabs of LSD (which field tested positive).

p. Multiple electronic devices, to include: six cellular phones, two thumb drives, three hard drives, three laptops, three tablets and one removable digital media device

17. In addition to other items, U.S. currency was taken into evidence. Upon review of the serial numbers of the recovered U.S. currency, it was determined that four of the $100 bills and one of the $20 bills obtained had the same serial number as the pre-recorded money provided to BRENNAN during the August 2, 2022 controlled purchase discussed above.

<u>September 13, 2022 – Interview of BRENNAN</u>

18. On September 13, 2022, BRENNAN was interviewed at SCSO by SA Lauren Viup, Task Force Officer (TFO) John Casey and SCSO (Det.) John Rich. BRENNAN was read his Miranda Warnings, which he waived and agreed to talk to LEOs. The following is a summary of the interview providing the sum and substance of BRENNAN's statements to law enforcement:

i. BRENNAN said he is not getting any meth and has been using the same meth from California for 5 years. BRENNAN said, "I'm not selling anything big…I've been working on that pack for three years now." BRENNAN said the meth from 5 years ago might have been more than ounce, "probably closer to two ounces."

ii. BRENNAN said he does not have a pistol permit and admitted there was a pistol in house but stated "it's not mine." BRENNAN said someone left the pistol there and it's been sitting there "for a minute." BRENNAN described the firearm as "a shitty old-fucking Beretta, think 96-something, maybe. I don't know, it's the one with no hammer." BRENNAN said a friend of his, who is now dead, left it there approximately 10 years ago. BRENNAN said the Beretta was in the barn, and he forgot about it; recently, found it and went to shoot it and it malfunctioned. BRENNAN then took it apart, cleaned it and replaced the spring. BRENNAN said he "shot it recently, just to make sure the spring worked." BRENNAN shot the Beretta on his property, and it functioned as designed. BRENNAN said he shot it as recently as two months ago. BRENNAN said he usually keeps it in the garage but acknowledged it was in his bedroom when it was recovered by LEOs.

iii. BRENNAN said, "The side of it [the Beretta referenced above] was like-uh looked like someone sanded it." BRENNAN said he did not do that, "it was always been like that. I assumed that someone sanded off-tried to sand off the serial numbers on it or

something. But there's still serial numbers in it. I mean I took it apart and looked, there's some inside and stuff..." BRENNAN said, "Well I'm not going to go to a shooting range without a pistol permit." BRENNAN also said, "It's not good for hunting; I don't hunt anyways."

iv. BRENNAN acknowledged possession of additional firearms, specifically the MOSIN-Nagant and the Izhmash. BRENNAN said the "Saiga" firearm was "a deal;" he purchased it for $500.00 U.S. currency. Det. Rich asked BRENNAN, "Other than your bedroom, with the-the guns, little bit of meth, where else would you keep stuff, over the last couple weeks/couple months?" BRENNAN replied, "That'd be it." BRENNAN said he usually keeps "it" (the Beretta) in the garage but its "damp as shit out there now," so he brought it into the house. BRENNAN said he purchased the MOSIN-Nagant from "Zack's." BRENNAN said the "two shotguns" were purchased from private sales "pre-safe act." BRENNAN said found "them" because he was shooting "at a friend's house" and there was a friend of his friend's there with three shotguns. BRENNAN said the SCSO had another shotgun of his that he had to surrender due to unrelated accusations.

v. BRENNAN said, "just the other day," he had another incident at his house. BRENNAN had a prolonged disagreement with a person he sold shoes to, over text messages. The person came to BRENNAN's house where the dispute continued, during which BRENNAN possessed a shotgun. BRENNAN said he "laterally" held the shotgun with one hand on the barrel and one hand on the "butt;" BRENNAN never pointed it at him or had a finger on the trigger.

vi. BRENNAN said on his phones/computers there "maybe there's some talk about kids

coming over to get a bag, but there's no like fucking grand scheming on there-no."

19. After the interview was concluded, BRENNAN was transported to Federal Courthouse by SA Brian Leahey and TFO Brian Lawler. While transporting BRENNAN, he made statements to following effect:

20. BRENNAN admitted knowledge of possessing a defaced Berretta handgun. BRENNAN claimed to not have defaced the firearm himself, but stated that a friend of BRENNAN's, left the firearm at his house several years earlier. BRENNAN also mentioned involvement in the sale of an AK style firearm, approximately four weeks earlier. BRENNAN claimed to have acted as an intermediary between two friends, in which an AK style rifle was sold for approximately $2,600.00 U.S. currency. BRENNAN further claimed that conversations and pictures of the AK style firearm could be found in his phone that is currently in law enforcement custody.

Review of Firearm Trace Data

21. On or about September 13, 2022, SA Viup reviewed the Firearm Trace Summary from the Riley Defense Inc. rifle, model RAK 47, caliber 7.62 x 39, bearing serial number B27875; which was purchased by the CI from BRENNAN on August 2, 2022. The firearm trace identified Marc NELSON ("NELSON") as the first purchaser of the firearm, on March 26, 2021.

22. After the state search warrant at BRENNAN's residence (which occurred on September 13, 2022), firearm traces were initiated for the seven firearms recovered during the search warrant referenced above. Upon review of the trace data, it was determined that NELSON purchased two additional firearms that were recovered during the search warrant at BRENNAN's residence. NELSON purchased the Kahn shotgun, Model Cobra, caliber 12 gauge, bearing serial number 21HP1201984, on August 21, 2021. NELSON also purchased the AKKAR SILHA

SANAYI TIC shotgun, Model 301, caliber 12 gauge, bearing serial number 20CH-01057, on October 4, 2020.

23. The firearm trace data for the Savage shotgun, model 311, caliber 12 gauge, bearing serial number D058635, identified "Pavle Simunovic" as the first purchaser of the firearm on May 5, 1980. However, after obtaining a copy of the ATF Form 4473 documenting NELSON's purchase of the same firearm on December 11, 2021, SA Viup determined the most recent purchaser of the firearm to be NELSON.

24. Based on the information detailed above, a search warrant was issued by this Court on October 18, 2022 to search the **Subject Devices** for evidence of violations of Title 18, United States Code Section 922(k) (Possession of a Firearm with an Obliterated Serial Number), 18 United States Code Section 922(g) (Possession of a Firearm by a Prohibited Person); 18 United States Code Section 922(a)(6) (False Statement During the Purchase of a Firearm); 18 United States Code Section 924(c)(1)(A) (Possession of a Firearm in Furtherance of Drug Trafficking); and 21 United States Code, Section 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance). The October 18 Search Warrant is attached hereto as Exhibit A.

**PROBABLE CAUSE TO EXPAND THE SEARCH SCOPE OF THE SUBJECT DEVICES**

25. Pursuant to the warrant issued by the Court on October 18, 2022 to search the Subject Devices, ATF Special Agent Lauren Viup transferred **Subject Devices** labeled in Attachment A as A1, A2, A3, A5, A8, A9, A10, A11, A12, A15, A16, and A17 to the Syracuse ATF Field Office for forensic processing. Special Agent Viup retained the **Subject Devices** labeled in Attachment A as A4, A6, A7, A13, and A14 at the Albany ATF field office and she began to examine the devices herself in no particular order.

26. On October 26, 2022, Special Agent Viup was examining **Subject Device A14** at the ATF Albany office pursuant to the previously issued warrant. The device is further identified as a black "My Passport Ultra" external hard drive, bearing serial number WX31A74A32P9. The front of the hard drive has a blue "Breaking Bad" sticker on it. The device label states that it is a "Product of Malaysia". During the examination of **Subject Device A14**, Special Agent Viup discovered an image of child pornography, and she stopped the examination of the device as it exceeded the scope of the previously issued search warrant.

27. On October 27, 2022, at the ATF Albany office, Special Agent Viup showed me the child pornography image that she discovered during the examination of **Subject Device A14**. Based on my training and experience in investigating child exploitation crimes, I identified this image file as child pornography material. The image was discovered on the external hard drive in the following file path: Backups Old HP 2-3-21\Combat\Court\facebook-518carlitoshighway\messages\archived threads\fshlwqmhly_Hg4UwOZ55g\videos\thumbnails. The file is described as follows:

a. Filename: 16911135_385703841790207_2928054363039465472_n. This image file depicts a prepubescent female, approximate age of 4-6 years old, who is naked and laying on her stomach. The female's head is turned and facing down towards her right shoulder and the right side of her body. The hand of an adult subject is depicted holding the right buttock of the prepubescent female. The adult hand is pulling the right buttock away from the body, exposing the anal region and the vagina of the prepubescent female to the camera.

Special Agent Viup and I discussed this finding, and the forensic processing of all devices that were previously authorized by the Court to be searched as part of this investigation has been halted

as an abundance of caution pending the application of a new search warrant to this Court for the purpose of searching the **Subject Devices** for evidence of violations of 18 U.S.C. § 2252A (a)(2) [Transporting and Possessing Child Pornography] and 2252A(a)(5)(B) [Possession of Child Pornography], in addition to the previously authorized searches for federal firearms and drug offenses. The image file described in this paragraph will be made available to the Court for review if requested.

**USE OF THE INTERNET, COMPUTERS AND ELECTRONIC DEVICES TO TRANSPORT, DISTRIBUTE, RECEIVE, AND POSSESS CHILD PORNOGRAPHY**

28. Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

a. Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

b. Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "Wi-Fi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos.

c. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile

devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

d. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person. Your Affiant therefore also requests permission to search the person of PETER BRATIS for such evidence.

e. The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f. Individuals also use online resources to retrieve and store child pornography.

Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone or external media in most cases.

g. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (*i.e.*, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

h. In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, social media, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to,

the use of personal devices.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

29. As described above and in Attachment B, this application seeks permission to search for records, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

30. *Probable cause.* I submit that when a computer or storage medium is found during the course of the search warrant execution, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a

record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

31. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any seized storage medium because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were

recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer

or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password

protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to possess, receive, or distribute child pornography, the individual's computer or device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an

instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

32. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage

media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

33. *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

**CHARACTERISTICS OF CHILD PORNOGRAPHY COLLECTORS**

34. I respectfully submit that the information set forth in this affidavit establishes probable cause to believe that an individual using **Subject Device A14** has received, transported and possessed child pornography, or has attempted to commit said crimes, and that these crimes are continuing. The file path on the device that the image was saved in indicates the image file was contained in an old computer backup file. This means that the image was most likely received via the Internet, was saved on a device, transferred to **Subject Device A14,** and since been

possessed on **Subject Device A14.** Based on training, experience, and numerous interviews of subjects who admitted to having a sexual interest in children, I am aware that the following characteristics are common to individuals involved in child pornography offenses:

35. Individuals who possess, receive, and/or distribute child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity, sexually suggestive poses, or from literature describing such activity;

36. Individuals who possess, receive and/or distribute child pornography may collect sexually explicit or sexually suggestive material depicting children, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. These individuals often maintain this material for sexual arousal and gratification. Furthermore, they may use this material to lower the inhibitions of children they are attempting to seduce, to arouse a child partner, or to demonstrate the desired sexual acts;

37. Individuals who possess, and/or distribute child pornography often possess and maintain copies of child pornographic material, including but not limited to pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, and tape recordings, in the privacy and security of their home. Prior investigations into these offenses have shown that child pornography offenders typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years;

38. Individuals who possess, receive and/or distribute child pornography often begin their child pornography collections by obtaining child abuse material through various free avenues afforded by the Internet, like P2P file sharing or social media platforms and chat groups.

Thereafter, these individuals may escalate their activities by producing and/or distributing child pornography, for the purpose of trading this material to add to their own child pornography collection;

39. Individuals who possess, and/or distribute child pornography often maintain their digital or electronic collections in a safe, secure and private environment, such as a computer, cell phone, electronic storage devices (hard drives, thumb drives, etc.) or surrounding area. These collections are often maintained for several years and are maintained at the individual's residence or place of employment, to afford immediate access to view the material;

40. Individuals who possess, receive and/or distribute child pornography may correspond with others to share information and material, and rarely destroy this correspondence. These individuals often maintain lists of names, email addresses and telephone numbers of others with whom they have been in contact regarding their shared interests in child pornography.

**TECHNICAL TERMS**

41. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing

names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to

store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer

software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

42. Based on my training, experience, and research, I know the **Subject Devices** have capabilities that allow them to serve as wireless telephone, digital camera, portable media player, GPS, PDA, IP Address and the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

43. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

44. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months

or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

45. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Devices** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

46. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

47. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

48. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Devices A1-A17** specifically described as six cellular phones, two thumb drives, three hard drives, three laptops, three tablets and one removable digital media device, which are more particularly described in Attachment A (A1-A17) and are currently in ATF custody within the Northern District of New York. Located within the Subject Devices to be searched, I seek to seize evidence, fruits, and instrumentalities relating to violations of 18 U.S.C. § 2252A (a)(2) [Transporting and Possessing Child Pornography] and18 U.S.C. § 2252A(a)(5)(B) [Possession of Child Pornography] as described in Attachment B.

Attested to by the affiant,

James C. Hamilton
HSI Special Agent

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on October 31, 2022, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure:

Hon. Daniel J. Stewart
United States Magistrate Judge

**ATTACHMENT A**
**A1**

One black Samsung smart phone, with an unknown IMEI number, with two cameras on the back.



**A2**

One silver Android smart phone, with one camera on the back, and an unknown IMEI number. The back of the phone has two stickers, a dripping green mouth with rotten teeth and a blue tongue, and a person holding a ball with one hand. The back of the phone also has a white hand grip in the shape of a T.



**A3**

One black Samsung smart phone, with an unknown IMEI number. One camera on the back, with a missing back cover. There is damage to the front screen as well as the uncovered, back of the phone.



**A4**

One black 4GB thumb drive, with a shoelace tie and pink tape.



A5

One black Android smart phone, with an unknown IMEI number. Three cameras on the back, with three stickers, including: two stickers of exposed women, and a Wu-tang Clan sticker.



**A6**

One black Dell hard drive, model K16A, bearing MAC address 8C-EC-4B-30-AA-4E, with a Dell laptop charger with an AC/DC adapter.





**A7**

One black Digi power, multi card reader, model number DP-MCR4, with an inserted SanDisk memory card.



**A8**

One black and silver HP laptop, with "hp" a different shade of grey on the front cover, model 2000-363NR, bearing serial number 5CB13961ZB. The front has a Spy+ sticker and a sticker of monkeys. There is also a black laptop charger.









**A9**

One silver Gateway laptop, model GWTN-156-11BK,bearing serial number 1GWTN15611BK0B21I001180. The outside shell is intact and covered with scratches. The back of the laptop is missing the battery cover. There is a blue and a yellow wire protruding from the side of the laptop.



**A10**

One silver HP laptop, model 14-DK1025WM, bearing serial number with "Dell" shiny silver in color, bearing serial number 5CGO472N24. The front cover is covered with multiple stickers. There is also a black laptop charger.





**A11**

One black and purple KOCASO tablet, model MX1037, with a cracked front screen, and one camera on the back.








**A12**

One silver LG smartphone, with a white and tan marble back, that has one camera and a protruding black skull.



**A13**

One black Maxell hard drive, Genpro PRO-500, with two sticker barcodes separately bearing the following numbers: 4470011045 and ATQ1009017690.



**A14**

One black My Passport Ultra hard drive, bearing serial number WX31A74A32P9. The front of the hard drive has a blue Breaking Bad sticker on it. The back of the hard drive has minimal damage.





**A15**

One black Samsung tablet, with multiple stickers on the back, and one camera.



**A16**

One black tablet, with a cracked front screen. The back of the tablet has one camera and multiple stickers on it.





**A17**

One patterned, silver Android smartphone, with damage to the front. On the back there are three cameras, a DEADNET sticker, and a multi-color hand grip in the shape of a T.





# ATTACHMENT B

## *Items To Be Seized And Searched*

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing violations of 18 U.S.C. § § 2252A (a)(2) [Transporting and Possessing Child Pornography] and 2252A(a)(5)(B) [Possession of Child Pornography] by Charles BRENNAN:

## *Computers and Electronic Media*

1. Computers or storage media used as a means to commit the violations described above. The seizure and search of computers and computer media (including cellular phones, hard drives and electronic storage media) will be conducted in accordance with the affidavit submitted in support of this warrant.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. Deleted data, remnant data and slack space.

b. Computer and electronic hardware, meaning any and all computer equipment, including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer and electronic hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, secure digital (SD) cards, optical and compact disk storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); digital cameras; related communications devices (such as routers, modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

c. Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by

a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

d. Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

e. Computer passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

f. Any computer or electronic records, documents, and materials referencing relating to the above-described offenses. Such records, documents, or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing, or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as CD-ROMs, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

g. Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), of any computer or computer system. The form that such information might take includes, but is not limited to fixed hard disks, removable hard disks and drives, tapes, laser disks, CD-ROM disks, video cassettes, and other media capable of storing magnetic or optical coding.

h. Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data obtained through computer or Internet-based communications, including data in the form of electronic records,

documents, and materials, including those used to facilitate interstate communications, including but not limited to telephone (including mobile telephone) and ISPs. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer- related equipment, such as fixed disks, external hard disks, removable hard disk cartridges, USB drives, secure digital ("SD") cards, or other memory storage devices.

i. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

j. Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

k. Evidence of the lack of such malicious software;

l. Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crimes under investigation and to the computer user;

m. Evidence indicating the computer user's knowledge and/or intent as it relates to the crimes under investigation;

n. Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

o. Evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

p. Evidence of the times the COMPUTER was used;

q. Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

r. Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

s. Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

t. Contextual information necessary to understand the evidence described in this attachment.

***Documents, Computer, and Internet Records***

3. Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored, or maintained), books, notes, and reference materials.

4. Any records or documents pertaining to accounts held with Internet Service Providers including with Frontier, ATT, Verizon, or Charter/Spectrum), or of Internet use, including use and control of email addresses that are discovered during the analysis of the **Subject Devices**.

5. Records of address or identifying information for the target(s) of the investigation, and any usernames (a.k.a., "Nics"), user IDs, eIDs (electronic ID numbers), and passwords.

6. Documents and records, including, for example, receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or possession of the searched items located therein.

7. *Attribution Evidence.* Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any computer or computer media.

***Materials Relating to Child Pornography, Child Erotica, and Depictions of Minors***

8. Any and all child pornography, and any and all visual depictions of minors, including, but not limited to, sexually explicit images of minors, as those terms are defined in Title 18, United States Code, Section 2256.

9. Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

10. Any and all notebooks and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

11. Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, and notes.

***Photographs of Search***

During the course of the search, photographs of the searched device may also be taken to record the condition thereof and/or the location of items therein.

***Law Enforcement Agencies Participating in the Search of the Seized Device***

Homeland Security Investigations (HSI) and Alcohol, Tobacco, and Firearms (ATF) will execute this search warrant on the Subject Devices (A1 – A17) and the seized devices will be examined at HSI and/or ATF computer forensic laboratories by HSI and/or ATF special agents and computer forensic agents.

# EXHIBIT A

UNITED STATES DISTRICT COURT
for the
Northern District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

(1) One black Samsung smartphone (A1)
(2) One silver Android smartphone (A2)
(3) One black Samsung smartphone (A3)
(4) One black 4GB thumb drive (A4)
(5) One black Android smartphone (A5)
(6) One black Dell hard drive (A6)
(7) One black digipower multi-card reader (A7)
(8) One black and silver HP laptop (A8)
(9) One silver Gateway laptop (A9)
(10) One silver HP laptop (A10)
(11) One black and purple KOCASO tablet (A11)
(12) One silver LG smartphone (A12)
(13) One black Maxell hard drive (A13)
(14) One black My Passport Ultra hard drive (A14)
(15) One black Samsung tablet (A15)
(16) One black tablet (A16)
(17) One silver Android smartphone (A17)

CURRENTLY LOCATED AT THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES ALBANY FIELD OFFICE AT 11A CLINTON AVE., SUITE 911, ALBANY, N.Y.

Case No. 1:22-MJ-620-DJS

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of New York *(identify the person or describe the property to be searched and its given location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

AO 93 (Rev. 11/13) Search and Seizure Warrant *(Page 2)*

**YOU ARE COMMANDED** to execute this warrant on or before November 1, 2022
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Daniel J. Stewart.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of Click here to enter a date..

Date issued: Oct 18, 2022

Time issued: 3:03 pm

*Judge's signature*

City and State: Albany, NY

Hon. Daniel J. Stewart, U.S. Magistrate Judge

*Printed name and title*

| ***Return*** | | |
|---|---|---|
| *Case No.:* 1:22-MJ- ( ) | *Date & time warrant executed:* | *Copy of warrant & inventory left with:* |
| *Inventory made in the presence of :* | | |
| *Inventory of the property taken and name of any person(s) seized:* | | |

| ***Certification*** |
|---|
| *I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.* |
| *Date:* ____________________ ____________________ *Executing officer's signature* |
| ____________________ *Printed name and title* |

**ATTACHMENT A**
**A1**

One black Samsung smart phone, with an unknown IMEI number, with two cameras on the back.



**A2**

One silver Android smart phone, with one camera on the back, and an unknown IMEI number. The back of the phone has two stickers, a dripping green mouth with rotten teeth and a blue tongue, and a person holding a ball with one hand. The back of the phone also has a white hand grip in the shape of a T.



**A3**

One black Samsung smart phone, with an unknown IMEI number. One camera on the back, with a missing back cover. There is damage to the front screen as well as the uncovered, back of the phone.



<u>**A4**</u>

One black 4GB thumb drive, with a shoelace tie and pink tape.



**A5**

One black Android smart phone, with an unknown IMEI number. Three cameras on the back, with three stickers, including: two stickers of exposed women, and a Wu-tang Clan sticker.



**A6**

One black Dell hard drive, model K16A, bearing MAC address 8C-EC-4B-30-AA-4E, with a Dell laptop charger with an AC/DC adapter.



**A7**

One black digipower, multi card reader, model number DP-MCR4, with an inserted Sandisk memory card.



**A8**

One black and silver HP laptop, with "hp" a different shade of grey on the front cover, model 2000-363NR, bearing serial number 5CB13961ZB. The front has a Spy+ sticker and a sticker of monkeys. There is also a black laptop charger.









**A9**

One silver Gateway laptop, model GWTN-156-11BK,bearing serial number 1GWTN15611BK0B21I001180. The outside shell is intact and covered with scratches. The back of the laptop is missing the battery cover. There is a blue and a yellow wire protruding from the side of the laptop.



**A10**

One silver HP laptop, model 14-DK1025WM, bearing serial number with "Dell" shiny silver in color, bearing serial number 5CGO472N24. The front cover is covered with multiple stickers. There is also a black laptop charger.





**A11**

One black and purple KOCASO tablet, model MX1037, with a cracked front screen, and one camera on the back.








**A12**

One silver LG smartphone, with a white and tan marble back, that has one camera and a protruding black skull.



**A13**

One black Maxell hard drive, Genpro PRO-500, with two sticker barcodes separately bearing the following numbers: 4470011045 and ATQ1009017690.



**A14**

One black My Passport Ultra hard drive, bearing serial number WX31A74A32P9. The front of the hard drive has a blue Breaking Bad sticker on it. The back of the hard drive has minimal damage.





**A15**

One black Samsung tablet, with multiple stickers on the back, and one camera.



**A16**

One black tablet, with a cracked front screen. The back of the tablet has one camera and multiple stickers on it.





**A17**

One patterned, silver Android smartphone, with damage to the front. On the back there are three cameras, a DEADNET sticker, and a multi-color hand grip in the shape of a T.





## ATTACHMENT B

Items to be Seized

All records on the **Subject Devices** described in Attachment A (A1-A17) that relate to violations of Title 18, United States Code, Section 922(k) (Possession of a Firearm with an Obliterated Serial Number), 18, United States Code, Section 922(g) (Possession of a Firearm by a Prohibited Person); 18, United States Code, Section 922(a)(6) (False Statement During the Purchase of a Firearm); 18, United States Code, Section 924(c)(1)(A) (Possession of a Firearm in Furtherance of a Crime of Violence); and 21 United States Code, Section 841(a)(1) (Distribution/Possession of a Controlled Substance); committed by BRENNAN, NELSON, and others, known and unknown, including:

***Computers and Electronic Media***

1. The authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and electronic media will be conducted in accordance with the affidavit submitted in support of this warrant.

2. Computer hardware, meaning any and all computer equipment, including any electronic storing devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical and compact storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing, or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3. Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems, software, application software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4. Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5. Computer passwords and data security devices, meaning any devices, programs, or data, whether themselves in the nature of hardware or software, that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data, or to otherwise render programs or data into usable form.

6. Any computer or electronic records, documents and materials referencing or relating to the above described offenses. Such records, documents or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, video tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as thumb drives, flash drives, sd (secure digital) cards, floppy diskettes, hard disks, CD-ROMs, DVDs, optical disks, printer buffers, soft cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7. Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), or any computer or computer system. The form that such information might take includes, but is not limited to, thumb drives, flash drives, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, DVDs, video cassettes, and other media capable of storing magnetic or optical coding.

8. Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data, obtained through computer or Internet-based communications, including data in the form of electronic records, documents and materials, including those used to facilitate interstate communications, included but not limited to telephone (including mobile telephone) and Internet Service Providers. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding, on computer media, or on media capable of being read by a computer or computer-related equipment, such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external hard disks, removable hard disk cartridges, CDs, DVDs, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, or other memory storage devices.

***Documents, Records and Evidence***

9. Records of personal and business activities relating to the operation and ownership of the **Subject Devices**.

10. Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

11. Records of address or identifying information for the target of the investigation and any personal or business contacts or associates of his, (however and wherever written, stored or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user ID's, eID's (electronic ID numbers) and passwords.

13. Documents and records regarding the ownership and/or possession of the **Subject Devices**.

15. Evidence of software that would allow others to control the **Subject Devices**, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software, and evidence of the lack of such malicious software.

16. Evidence indicating how and when the **Subject Devices** was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user.

17. Evidence of the attachment to an item of electronic media of other storage devices or similar containers of electronic evidence.

19. Evidence of the times any item of electronic media was used.

20. Passwords, encryption keys, and other access devices that may be necessary to access any electronic media.

21. Documentation and manuals that may be necessary to access seized electronic media or to conduct a forensic examination of the media.

22. Records of or information about Internet Protocol addresses used by seized electronic media, as well as records of or information about the media's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

23. Contextual information necessary to understand the evidence described in this attachment.

***Materials Relating to Narcotics/Firearms Trafficking and Unlawful Possession of Firearms***

24. All evidence of illegal firearm and narcotic possession and distribution, the procurement of illegal firearms and narcotics, conspiring to further drug trafficking crimes, to include but not limited to contact phone numbers, calendars, photographs, video content, audio files, internet history and IP addresses accessed, incoming and outgoing call history, incoming and outgoing text message history, inbox text messages, outbox text messages, email addresses, email inbox/outbox contents, applications, recordings, GPS history, location information, and all other phone content, in violation of the aforementioned

statutes.

# Exhibit C

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| BRENNAN, Charles | Redacted | 4 |

**SUMMARY OF EVENT:**

INTERVIEW OF CHARLES BRENNAN: On September 13, 2022, Law Enforcement Officers (LEOs) interviewed Charles BRENNAN after the execution of a state search warrant as his residence.

**NARRATIVE:**

1. On September 13, 2022, Saratoga County Sheriff's Office (SCSO) executed a state search warrant at the residence of Charles BRENNAN (W/M, DOB: [redacted], located at 153 Knapp Road, Mechanicville, NY 12118. Redacted BRENNAN's mother, was also present at the execution of the search warrant. BRENNAN was detained and transported to SCSO. Law Enforcement Officers (LEOs) from ATF, Mechanicville Police Department, and the Drug Enforcement Administration (DEA) were also present.

2. During the search of the residence, the following items were recovered, including but not limited to:

   a. Izhmash, model Saiga, caliber 7.62x39, SN: H09125607
   b. MOSIN-Nagant, model: M91-30, caliber 7.62x54R, SN: 016600
   c. AKKAR SILHA SANAYI TIC, Model 301, caliber 12 gauge, SN: 20CH-01057
   d. Winchester, Model 3T (Ted Williams Sears and Roebuck), .22LR caliber, SN: 12682
   e. Savage, Model 311, caliber 12 gauge, SN: D058635
   f. Marlin, Model 336RC, caliber 30-30, SN: F36316
   g. Khan, Model Cobra, caliber 12 gauge, SN: 21HP1201984
   h. Beretta, Model 96D, .40 caliber, SN: obliterated
   i. 5.56 caliber 100 round drum magazine
   j. Metal 80% AR-15 style lowers and metal jigs
   k. 5 metal tubes for .22 ammunition
   l. One black box with red clips
   m. 2263 rounds of multi-caliber ammunition (including a loaded .40 caliber magazine in the same firearm box as the Beretta pistol)
   n. Approximately 11 grams of methamphetamine (which field tested positive)

| Prepared by: | Title: | Signature: | Date: |
|---|---|---|---|
| Lauren N. Viup | Special Agent, Albany Field Office | [signature] | 09/20/2022 |
| Authorized by: Mark P. Meeks | Title: Resident Agent in Charge, Albany Field Office | Signature: [signature] | Date: 9/20/22 |
| Second level reviewer (optional): John B. DeVito | Title: Special Agent in Charge, New York Field Division | Signature: | Date: |



ATF EF 3120.2 (10-2004)
For Official Use Only

o. 26 tabs of LSD (which field tested positive).

3. BRENNAN was read his Miranda Warnings, which he waived and agreed to talk to LEOs. Present for the interview was Special Agent (SA) Lauren Viup, Task Force Officer (TFO) John Casey and Saratoga County Sheriff's Office (SCSO) Detective (Det.) John Rich. Below is a summation of the interview, refer to the recording for complete details.

4. BRENNAN admitted to being a daily user of marijuana. BRENNAN said he used methamphetamine (meth), but not regularly. BRENNAN stated that he ate meth whenever he would have stomach issues, because it helped with his irritable bowel syndrome (IBS). BRENNAN said the last time he used meth was approximately one and half to two weeks ago; the first time he used meth was approximately five years ago. BRENNAN advised his girlfriend [redacted] is a constant meth user and he kept meth in the house for her.

5. BRENNAN previously lived in California. BRENNAN worked at a marijuana grow facility and was paid for his work in methamphetamine. BRENNAN said he had had about an ounce or less of meth for five years. BRENNAN said he is not getting any meth and has been using the same meth from California for 5 years. BRENNAN said, "I'm not selling anything big…I've been working on that pack for three years now."

6. BRENNAN said occasionally other people from California would send him marijuana. He does not need to get marijuana from California because it is legal in New York now and "everywhere." The last time BRENNAN received a package from California in the mail was approximately two months ago, and it contained "fancy weed." BRENNAN said the meth from 5 years ago might have been more than ounce, "probably closer to two ounces."

7. BRENNAN said he does not have a pistol permit and admitted there was a pistol in house but "it's not mine." BRENNAN said someone left the pistol there and it's been sitting there "for a minute." BRENNAN described the firearm as "a shitty old-fucking Beretta, think 96-something, maybe. I don't know, it's the one with no hammer." BRENNAN said a friend of his, David Frost, who is now dead, left it there approximately 10 years ago. BRENNAN said he had not talked to Frost for seven years before he died in Altana, which was three years ago. BRENNAN said the Beretta was in the barn, and he forgot about it; recently, found it and went to shoot it and it malfunctioned. BRENNAN then took it apart, cleaned it and replaced the spring. BRENNAN said he "shot it recently, just to make sure the spring worked." BRENNAN shot the Beretta on his property, and it functioned as designed. BRENNAN said he shot it as recently as two months ago. BRENNAN said he usually keeps it in the garage but acknowledged it was in his bedroom when it was recovered by LEOs.

8. Frost left a bag of his belongings at BRENNAN's house, which contained the Beretta. BRENNAN found the firearm in pieces in the bag and put it together. BRENNAN said Frost never came back and he lost touch with him. BRENNAN stored it in the barn and forgot about it until recently. BRENNAN said it was black Beretta, with leather grips that he put on it. BRENNAN said, "The side of it was like-uh looked like someone sanded it." BRENNAN said he did not do that, "it was always been like that. I assumed that someone sanded off-tried to sand off the serial numbers on it or something. But there's still serial numbers in it. I mean I took it apart and looked, there's some inside and stuff…" BRENNAN said, "Well I'm not going to go to a shooting range without a pistol permit." BRENNAN also said, "It's not good for hunting; I don't hunt anyways."

9. BRENNAN acknowledged possession of additional firearms, specifically the MOSIN-Nagant and the Izhmash. BRENNAN said the "Saiga" firearm was "a deal;" he purchased it for $500.00. Det. Rich asked BRENNAN, "Other than your bedroom, with the-the guns, little bit of meth, where else would you keep stuff, over the last couple weeks/couple months?" BRENNAN replied, "That'd be it." BRENNAN said he usually keeps "it" (the Beretta) in the garage but its "damp as shit out there now," so he brought it into the house. BRENNAN said he purchased the MOSIN-Nagant from "Zack's." BRENNAN said the "two shotguns" were purchased from private sales "pre-safe act." BRENNAN said found "them" because he was shooting "at a friend's house" and there was a friend of his friend's there with three shotguns. BRENNAN said the SCSO has another shotgun of his that he had to surrender due to unrelated accusations.

10. BRENNAN said the ammunition came from a purchase of storage unit that him and a friend bid on when the owner could not pay. BRENNAN said he kept all the ammunition. BRENNAN purchased the handgun ammunition from "Zack's," approximately two to three months ago when he "found" the firearm.

11. BRENNAN said he is buying an ounce or two of marijuana every other week, or he had someone go to a dispensary for him. BRENNAN said he "sell(s) a couple bags (of marijuana) here and there but I didn't think there was anything wrong with that." BRENNAN said he sells the marijuana out of his house.

12. BRENNAN gave conflicting statements regarding being mailed meth, the quantity, and how often. BRENNAN said "these guys in the cartel" mailed him the meth, however, he later admitted that he did not know if they were actually in a cartel. BRENNAN discussed his girlfriend's use of illicit narcotics. BRENNAN said he gave his girlfriend some of his meth when she needed it. BRENNAN said people would "probably" learn that he was dealing meth through his girlfriend, and occasionally from an online forum. BRENNAN acknowledged that he would have conversations with people, that he had meth and people could "come through and get it." BRENNAN said this was because he "didn't know what to do with it." BRENNAN said he was selling a gram of meth for $40.00-$50.00; the most he ever sold was an "8 ball" for $180.00.

13. BRENNAN said he did inquire about trying to find meth locally because if he ran out, he was going to "need to get some…for her." BRENNAN said he's probably sold meth about 20 times, approximately a half a gram or "20 bags." BRENNAN said he asked people he was "selling to" about getting more meth.

14. BRENNAN said he is not a "drug dealer." Det. Rich said "…You have dealt drugs." BRENNAN replied, "Yeah, I know. But I don't consider that drug dealing, compared to someone that's moving fucking weight."

15. BRENNAN said he had pieces that looked like an "AR frame, but they weren't cut-finished all the way." BRENNAN said he got these from the same aforementioned storage unit, purchased from Pennsylvania.

16. BRENNAN said "just the other day," he had another incident at his house. BRENNAN had a prolonged disagreement with a person he sold shoes to, over text messages. The person came to BRENNAN's house where the dispute continued, during which BRENNAN possessed a shotgun. BRENNAN said he "laterally" held the shotgun with one hand on the barrel and one hand on the "butt;" BRENNAN never pointed it at him or had a finger on the trigger.

17. BRENNAN spoke about providing meth to Taylor. BRENNAN said on his phones/computers there "maybe there's some talk about kids coming over to get a bag, but there's no like fucking grand scheming on there-no." BRENNAN continued to discuss selling narcotics.

Attachments:

- One copy of recorded interview
- One copy of signed Miranda Warning

# Exhibit D

AO 93 (Rev. 11/13) Search and Seizure Warrant *(Page 1)*

UNITED STATES DISTRICT COURT
for the
Northern District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
(1) One black Samsung smartphone (A1)
(2) One silver Android smartphone (A2)
(3) One black Samsung smartphone (A3)
(4) One black 4GB thumb drive (A4)
(5) One black Android smartphone (A5)
(6) One black Dell hard drive (A6)
(7) One black digipower multi-card reader (A7)
(8) One black and silver HP laptop (A8)
(9) One silver Gateway laptop (A9)
(10) One silver HP laptop (A10)
(11) One black and purple KOCASO tablet (A11)
(12) One silver LG smartphone (A12)
(13) One black Maxell hard drive (A13)
(14) One black My Passport Ultra hard drive (A14)
(15) One black Samsung tablet (A15)
(16) One black tablet (A16)
(17) One silver Android smartphone (A17)

CURRENTLY LOCATED AT THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES ALBANY FIELD OFFICE AT 11A CLINTON AVE., SUITE 911, ALBANY, N.Y.

Case No. 1:22-MJ-620-DJS

**SEARCH AND SEIZURE WARRANT**

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of New York *(identify the person or describe the property to be searched and its given location)*:
See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B.

AO 93 (Rev. 11/13) Search and Seizure Warrant *(Page 2)*

**YOU ARE COMMANDED** to execute this warrant on or before November 1, 2022
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Daniel J. Stewart.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of Click here to enter a date..

Date issued: Oct 18, 2022

Time issued: 3:03pm

*Judge's signature*

City and State: Albany, NY

Hon. Daniel J. Stewart, U.S. Magistrate Judge

*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant *(Page 3)*

| ***Return*** | | |
|---|---|---|
| *Case No.:*<br>1:22-MJ- ( ) | *Date & time warrant executed:* | *Copy of warrant & inventory left with:* |

*Inventory made in the presence of :*

*Inventory of the property taken and name of any person(s) seized:*

***Certification***

*I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

*Date:* ______________________

______________________
*Executing officer's signature*

______________________
*Printed name and title*

**ATTACHMENT A**
**A1**

One black Samsung smart phone, with an unknown IMEI number, with two cameras on the back.



**A2**

One silver Android smart phone, with one camera on the back, and an unknown IMEI number. The back of the phone has two stickers, a dripping green mouth with rotten teeth and a blue tongue, and a person holding a ball with one hand. The back of the phone also has a white hand grip in the shape of a T.



**A3**

One black Samsung smart phone, with an unknown IMEI number. One camera on the back, with a missing back cover. There is damage to the front screen as well as the uncovered, back of the phone.



A4

One black 4GB thumb drive, with a shoelace tie and pink tape.



**A5**

One black Android smart phone, with an unknown IMEI number. Three cameras on the back, with three stickers, including: two stickers of exposed women, and a Wu-tang Clan sticker.



**A6**

One black Dell hard drive, model K16A, bearing MAC address 8C-EC-4B-30-AA-4E, with a Dell laptop charger with an AC/DC adapter.



**A7**

One black digipower, multi card reader, model number DP-MCR4, with an inserted Sandisk memory card.



**A8**

One black and silver HP laptop, with "hp" a different shade of grey on the front cover, model 2000-363NR, bearing serial number 5CB13961ZB. The front has a Spy+ sticker and a sticker of monkeys. There is also a black laptop charger.







**A9**

One silver Gateway laptop, model GWTN-156-11BK,bearing serial number 1GWTN15611BK0B21I001180. The outside shell is intact and covered with scratches. The back of the laptop is missing the battery cover. There is a blue and a yellow wire protruding from the side of the laptop.



**A10**

One silver HP laptop, model 14-DK1025WM, bearing serial number with "Dell" shiny silver in color, bearing serial number 5CGO472N24. The front cover is covered with multiple stickers. There is also a black laptop charger.





**A11**

One black and purple KOCASO tablet, model MX1037, with a cracked front screen, and one camera on the back.








**A12**

One silver LG smartphone, with a white and tan marble back, that has one camera and a protruding black skull.



**A13**

One black Maxell hard drive, Genpro PRO-500, with two sticker barcodes separately bearing the following numbers: 4470011045 and ATQ1009017690.



**A14**

One black My Passport Ultra hard drive, bearing serial number WX31A74A32P9. The front of the hard drive has a blue Breaking Bad sticker on it. The back of the hard drive has minimal damage.





**A15**

One black Samsung tablet, with multiple stickers on the back, and one camera.



**<u>A16</u>**

One black tablet, with a cracked front screen. The back of the tablet has one camera and multiple stickers on it.





**A17**

One patterned, silver Android smartphone, with damage to the front. On the back there are three cameras, a DEADNET sticker, and a multi-color hand grip in the shape of a T.





## ATTACHMENT B

Items to be Seized

All records on the **Subject Devices** described in Attachment A (A1-A17) that relate to violations of Title 18, United States Code, Section 922(k) (Possession of a Firearm with an Obliterated Serial Number), 18, United States Code, Section 922(g) (Possession of a Firearm by a Prohibited Person); 18, United States Code, Section 922(a)(6) (False Statement During the Purchase of a Firearm); 18, United States Code, Section 924(c)(1)(A) (Possession of a Firearm in Furtherance of a Crime of Violence); and 21 United States Code, Section 841(a)(1) (Distribution/Possession of a Controlled Substance); committed by BRENNAN, NELSON, and others, known and unknown, including:

***Computers and Electronic Media***

1. The authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and electronic media will be conducted in accordance with the affidavit submitted in support of this warrant.

2. Computer hardware, meaning any and all computer equipment, including any electronic storing devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical and compact storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing, or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3. Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems, software, application software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4. Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5. Computer passwords and data security devices, meaning any devices, programs, or data, whether themselves in the nature of hardware or software, that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data, or to otherwise render programs or data into usable form.

6. Any computer or electronic records, documents and materials referencing or relating to the above described offenses. Such records, documents or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, video tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storagc device (such as thumb drives, flash drives, sd (secure digital) cards, floppy diskettes, hard disks, CD-ROMs, DVDs, optical disks, printer buffers, soft cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7. Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), or any computer or computer system. The form that such information might take includes, but is not limited to, thumb drives, flash drives, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, DVDs, video cassettes, and other media capable of storing magnetic or optical coding.

8. Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data, obtained through computer or Internet-based communications, including data in the form of electronic records, documents and materials, including those used to facilitate interstate communications, included but not limited to telephone (including mobile telephone) and Internet Service Providers. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding, on computer media, or on media capable of being read by a computer or computer-related equipment, such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external hard disks, removable hard disk cartridges, CDs, DVDs, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, or other memory storage devices.

***Documents, Records and Evidence***

9. Records of personal and business activities relating to the operation and ownership of the **Subject Devices.**

10. Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

11. Records of address or identifying information for the target of the investigation and any personal or business contacts or associates of his, (however and wherever written, stored or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user ID's, eID's (electronic ID numbers) and passwords.

13. Documents and records regarding the ownership and/or possession of the **Subject Devices**.

15. Evidence of software that would allow others to control the **Subject Devices**, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software, and evidence of the lack of such malicious software.

16. Evidence indicating how and when the **Subject Devices** was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user.

17. Evidence of the attachment to an item of electronic media of other storage devices or similar containers of electronic evidence.

19. Evidence of the times any item of electronic media was used.

20. Passwords, encryption keys, and other access devices that may be necessary to access any electronic media.

21. Documentation and manuals that may be necessary to access seized electronic media or to conduct a forensic examination of the media.

22. Records of or information about Internet Protocol addresses used by seized electronic media, as well as records of or information about the media's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

23. Contextual information necessary to understand the evidence described in this attachment.

***Materials Relating to Narcotics/Firearms Trafficking and Unlawful Possession of Firearms***

24. All evidence of illegal firearm and narcotic possession and distribution, the procurement of illegal firearms and narcotics, conspiring to further drug trafficking crimes, to include but not limited to contact phone numbers, calendars, photographs, video content, audio files, internet history and IP addresses accessed, incoming and outgoing call history, incoming and outgoing text message history, inbox text messages, outbox text messages, email addresses, email inbox/outbox contents, applications, recordings, GPS history, location information, and all other phone content, in violation of the aforementioned

statutes.

AO 91 (Rev. 11/11) Criminal Complaint

U.S. DISTRICT COURT - N.D. OF N.Y. FILED SEP 13 2022 AT ___ O'CLOCK John M. Domurad, Clerk - Albany

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | |
| | ) | Case No. 1:22-MJ-518-DJS |
| **CHARLES BRENNAN,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of September 13, 2022 in the county of Saratoga in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 922(k) | Possession of a Defaced Firearm |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

[signature]
*Complainant's signature*

Lauren Viup, ATF Special Agent
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: 9/13/2022

[signature]
*Judge's signature*

City and State: Albany, New York

Hon. Daniel J. Stewart, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Lauren Viup, being duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been since January 2016. I am currently assigned to the New York Field Division (NYFD) and have participated in numerous investigations that fall under the investigative jurisdiction of ATF, including, but not limited to, violations involving violent crimes in aid of racketeering, including murder; racketeering conspiracy; the unlawful possession and use of firearms; and the distribution and manufacture of controlled substances.

2. I have completed the ATF Basic Agent Training. The curriculum for the course included federal law regarding violent crime and firearm-related offenses, drug-related offenses, drug identification, physical surveillance, undercover negotiations, electronic surveillance, and interviewing techniques. I also have experience in the identification and collection of firearms, explosives, ammunition, drug and non-drug evidence, and the analysis and interpretation of recorded conversations. Specifically, I have particular knowledge in the use and utility of undercover agents, confidential informants, physical surveillance, electronic surveillance, consensual recordings, investigative interviews, garbage searches, global positioning system (GPS) tracking devices, the service of grand jury subpoenas, and the execution of federal and state search and arrest warrants. I have personally conducted and/or assisted in numerous investigations of criminal acts involving violations of Title 18, United States Code, Sections 922 and 924.

3. This affidavit is intended to show merely that there is probable cause for a complaint, and consequently it does not set forth all of my knowledge about the matters under investigation. Where statements of others are related in this affidavit, they are related in substance and in part. I

submit this affidavit in support of a criminal complaint charging CHARLES BRENNAN ("BRENNAN") with a violation of Title 18, United States Code, Section 922(k) and 924(a)(1)(B) [Possession of a Firearm With an Obliterated or Defaced Serial Number]. Section 922(k) provides, in pertinent part, that "[i]t shall be unlawful for any person knowingly … to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce."

**BASIS FOR PROBABLE CAUSE**

4. On September 13, 2022, Saratoga County Sheriff's Office (SCSO) executed a state search warrant at BRENNAN's residence in Malta, New York. During the execution of the search warrant, law enforcement observed BRENNAN coming down the stairs from the second level of the residence, and one other individual on the first level of the residence. Law enforcement recovered the following items during the execution of the search warrant, including but not limited to: seven firearms, one of which was a Beretta, model 96D, .40 caliber, semiautomatic pistol with an obliterated serial number (the "pistol"); ammunition (including a loaded .40 caliber magazine in the same gun box as the pistol); approximately 11 grams of methamphetamine (which field tested positive); and 26 tabs of LSD (which field tested positive). The pistol was located in BRENNAN's bedroom, in a compartment at the foot of his bed.

5. BRENNAN was transported to SCSO where he was read his Miranda Warnings, which he waived and agreed to talk to law enforcement. During his post-Miranda interview, BRENNAN made the following statements, in sum and substance: everything on the upstairs level of the residence belonged to him (this area includes BRENNAN's bedroom where the pistol was located); the upstairs of the residence consisted of three rooms, all of which were utilized by BRENNAN; that the side of the pistol looked like someone sanded it; that BRENNAN did not

personally sand the serial number down, and that pistol has always been defaced, BRENNAN "assumed that someone sanded off-tried to sand off the serial numbers on it or something. But there's still serial numbers in it. I mean I took it apart and looked, there's some inside and stuff…;" BRENNAN recently fired the pistol in his backyard; BRENNAN said, "Well I'm not going to go to a shooting range without a pistol permit;" and "It's [the pistol] not good for hunting; I don't hunt anyways."

6. Below are images of the pistol recovered from BRENNAN's bedroom taken by law enforcement after the execution of the search warrant:

7. 





8. On September 13, 2022, SA Viup received a verbal interstate nexus opinion from SA Jason Sherman that the aforementioned pistol recovered from BRENNAN's bedroom, was manufactured outside the state of New York, therefore having traveled in/or effecting interstate commerce.

9. Based on the foregoing, your affiant submits that there is probable cause to conclude that BRENNAN has violated Title 18, United States Code, Section 922(k) and 924(a)(1)(B) (Possession of a Firearm With an Obliterated Serial Number).

**Attested to by the affiant.**

Lauren Viup
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on September __, 2022 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

# Exhibit E

# Exhibit F

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| BRENNAN, Charles | 765010-22-0048 | 10 |

**SUMMARY OF EVENT:**

DEVICE FORENSIC EXAMINATION: On October 24, 2022, Special Agent/Mobile Extraction Technician (SA/MET) Richard Gardinier, ATF Syracuse Field Office, conducted a forensic extraction of the mobile devices listed below. The request was pursuant to a federal Search Warrant.

**NARRATIVE:**

1. On October 24, 2022, Special Agent/Mobile Extraction Technician (SA/MET) Richard Gardinier, ATF Syracuse Field Office, conducted a forensic extraction of the mobile devices listed below. The request was pursuant to a federal Search Warrant.

2. The mobile devices are identified as:

| Non-ATF Item # | DESCRIPTION |
|---|---|
| 18 | Samsung, model SM-A2056<br>IMEI: 255370104188279 |
| 39 | Motorola, model XT2117-1 moto G Play 2021<br>IMEI: 356892110865912 |

Mobile Device Extraction Process & Results

3. On October 24, 2022 SA/MET Gardinier began the extractions of the listed devices. The mobile devices, and any contained removable media (SIM card, microSD card), were extracted utilizing Cellebrite Universal Forensic Extraction Device (UFED) 4PC or Cellebrite Physical Analyzer. The mobile devices were isolated from the network as able, and any removable media was removed and extracted separately. The extraction program supports different extraction types (Logical, File System, and /or Physical), depending upon the mobile device make and model.

| Prepared by: | Title: | Signature: | Date: |
|---|---|---|---|
| Richard R. Gardinier | Special Agent, Syracuse Field Office | [signature] | 10/26/2022 |
| **Authorized by:** | **Title:** | **Signature:** | **Date:** |
| Mark P. Meeks | Resident Agent in Charge, Albany Field Office | [signature] | 11/4/22 |
| **Second level reviewer (optional):** | **Title:** | **Signature:** | **Date:** |
| John B. DeVito | Special Agent in Charge, New York Field Division | | |

4. Cellebrite Physical Analyzer software was used to decode, parse, and categorize the extracted data. Reports were then generated of the extracted data into html, pdf and ufdr formats.

5. The mobile device extraction results are shown below. For full results see provided UFED reports.

    a. ATF Item 18: Phone was able to be extracted utilizing Advanced Logical and File System Acquisitions.
    b. ATF Item 39: Phone was able to be extracted utilizing Advanced Logical and File System Acquisition.

6. The extracted mobile device's data and reports were placed onto sterilized storage media. The sterilized storage media was entered into ATF property and was given to SA Viup.

<u>Terms Used</u>

7. The following terms are used in this report and the extraction reports:
    a. SIM: Subscriber Identity Module.
    b. (Term is also used for Universal Integrated Circuit Card - current generation SIM card)
    c. ICCID: Integrated Circuit Card Identifier (SIM Card #).
    d. MEID: Mobile Equipment Identifier
    e. IMEI: International Mobile Equipment Identity
    f. IMSI: International Mobile Subscriber Identity
    g. MDN: Mobile Directory Number. Telephone number to a device.
    h. MSISDN: Mobile Station International Subscriber Directory Number. Telephone number to a SIM card.

# ATF DIGITAL FORENSICS BRANCH
# MOBILE EXTRACTION FORM (DFB FORM-2)

EXAMINER: S/A Gardinier ATF Case #: 766010-22-0048 Item#: 18

RECEIVED FROM: ~~ERT TL Michael Fernald~~ DATE RECEIVED: 10/20/2022 DATE ACQUIRED: 10/25/2022

LOCATION: ☐ ON SITE ■ ATF OFFICE:

SITE INFORMATION (OWNER/ADDRESS/ROOM/LOCATION): SITE_____ Evid. Control Log#_____

SITE_____ ROOM_____ DEVICE_____

SEARCH AUTHORIZATION: ■ S/W ☐ CONSENT ☐ OTHER SW #

MOBILE SOFTWARE TOOL USED (VERSION):

| | Y | N |
|---|---|---|
| Is Device locked/PIN Protected | | |
| Was Power Maintained | | X |
| Photographed | X | |

| | Y | N |
|---|---|---|
| Does Device contain SIM Card | | |
| Does Device contain Storage Media | | |
| Does Device have any Visible Damage | | |

Lock Type (Ex: 4 digit/password): _____ Known/Recovered PIN/Swipe Pattern _____

If damaged, explain:

STEP 1 NETWORK ISOLATION & SIM CARD ACQUISITION (Airplane mode, SIM Removal or Faraday Bag)

SIM NAME: SIM ID (ICCID):

IMSI: MSISDN:

STEP 2 REMOVABLE MEDIA DESCRIPTION

MAKE: MODEL: SN:

SIZE: MD5:

STEP 3 MOBILE DEVICE INFORMATION

MAKE: Samsung MODEL: Galaxy A20 SM-A205U S/N:

CARRIER: DEVICE DATE/TIME: PHONE #

MEID: FCCID ANDROID/APPLE VERSION

IMEI: 355370104188279

EVIDENCE COPY DRIVE (Extractions & Reports) ITEM # TYPE: ☐ HDD ☐ Flash Drive Size:

MAKE: MODEL: SERIAL #:

REVIEW COPY DRIVE (Reports) TYPE: ☐ HDD ☐ Flash Drive Size:

MAKE: MODEL: SERIAL #:

# DFB MOBILE EXTRACTION FORM - Page 2

CASE NUMBER: 765010-20-0012 ITEM #: 18

**ACTION TAKEN & RESULTS**

| | | | |
|---|---|---|---|
| Network Isolation: | ☑ YES | ☐ NO | ☐ NA |
| SIM Card Acquisition: | ☐ YES | ☐ NO | ☐ NA |
| Micro SD Card Acquisition (Physical): | ☐ YES | ☐ NO | ☐ NA |
| Device Physical Extraction: | ☑ YES | ☐ NO | ☐ NA |
| Device File System Extraction: | ☑ YES | ☐ NO | ☐ NA |
| Device Logical Extraction | ☑ YES | ☐ NO | ☐ NA |

If Device needs to be submitted to DFB Advanced Mobile Services, obtain info

| | | | |
|---|---|---|---|
| Android FRP Enabled? | ☐ YES | ☐ NO | ☐ NA |
| Android Secure Download Enabled? | ☐ YES | ☐ NO | ☐ NA |
| Android Secure Boot Enabled? | ☐ YES | ☐ NO | ☐ NA |
| Completed Reports (UFDR, PDF, XLSX, XML) | ☐ YES | ☐ NO | ☐ NA |

**VERIFICATION METHOD:** (Detail which artifact was selected in the extraction and the comparison result from the device.)

| DATE | NOTES & COMMENTS: (document actions performed and success or failure of extractions. if not supported/unable to extract, explain) |
|---|---|
| 10/25 | file system |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# ATF DIGITAL FORENSICS BRANCH
## MOBILE EXTRACTION FORM (DFB FORM-2)

EXAMINER: S/A Gardinier ATF Case #: 765010-22-0048 Item#: 39

RECEIVED FROM: BERT TL Michael [illegible] DATE RECEIVED: 10/20/2022 DATE ACQUIRED: 10/24/2022

LOCATION: ☐ ON SITE ■ ATF OFFICE:

SITE INFORMATION (OWNER/ADDRESS/ROOM/LOCATION): ATF Syracuse FO

SITE____ Evid. Control Log#____

SITE____ ROOM____ DEVICE____

SEARCH AUTHORIZATION: ■ S/W ☐ CONSENT ☐ OTHER SW # 1:22 MJ-620-DJS

MOBILE SOFTWARE TOOL USED (VERSION):

| | Y | N |
|---|---|---|
| Is Device locked/PIN Protected | ✓ | |
| Was Power Maintained | | ✓ |
| Photographed | ✓ | |

| | Y | N |
|---|---|---|
| Does Device contain SIM Card | | |
| Does Device contain Storage Media | | |
| Does Device have any Visible Damage | ✓ | |

Lock Type (Ex: 4 digit/password): 1122 Known/Recovered PIN/Swipe Pattern Scratches

If damaged, explain:

**STEP 1 NETWORK ISOLATION & SIM CARD ACQUISITION (Airplane mode, SIM Removal or Faraday Bag)**

| | |
|---|---|
| SIM NAME: | SIM ID (ICCID): |
| IMSI: | MSISDN: |

**STEP 2 REMOVABLE MEDIA DESCRIPTION**

| | | |
|---|---|---|
| MAKE: | MODEL: | SN: |
| SIZE: | MD5: | |

**STEP 3 MOBILE DEVICE INFORMATION**

| | | |
|---|---|---|
| MAKE: Motorola | MODEL: XT2118-1 | S/N: |
| CARRIER: | DEVICE DATE/TIME: | PHONE # 518-879-4139 |
| MEID: IMEI: 356892110865912 | FCCID | ANDROID/APPLE VERSION 11 |

| | | |
|---|---|---|
| EVIDENCE COPY DRIVE (Extractions & Reports) ITEM # | TYPE: ☐ HDD ☐ Flash Drive | Size: |
| MAKE: | MODEL: | SERIAL #: |
| REVIEW COPY DRIVE (Reports) | TYPE: ☐ HDD ☐ Flash Drive | Size: |
| MAKE: | MODEL: | SERIAL #: |

# DFB MOBILE EXTRACTION FORM - Page 2

CASE NUMBER: 765010-20-0012 ITEM #:

**ACTION TAKEN & RESULTS**

| | YES | NO | NA |
|---|---|---|---|
| Network Isolation: | ☑ | ☐ | ☐ |
| SIM Card Acquisition: | ☐ | ☐ | ☐ |
| Micro SD Card Acquisition (Physical): | ☐ | ☐ | ☐ |
| Device Physical Extraction: | ☐ | ☐ | ☐ |
| Device File System Extraction: | ☐ | ☐ | ☐ |
| Device Logical Extraction | ☑ | ☐ | ☐ |

If Device needs to be submitted to DFB Advanced Mobile Services, obtain info:

| | YES | NO | NA |
|---|---|---|---|
| Android FRP Enabled? | ☐ | ☐ | ☐ |
| Android Secure Download Enabled? | ☐ | ☐ | ☐ |
| Android Secure Boot Enabled? | ☐ | ☐ | ☐ |
| Completed Reports (UFDR, PDF, XLSX, XML) | ☐ | ☐ | ☐ |

**VERIFICATION METHOD:** (Detail which artifact was selected in the extraction and the comparison result from the device.)

| DATE | NOTES & COMMENTS: (document actions performed and success or failure of extractions. If not supported/unable to extract, explain) |
|---|---|
| 10/24 | Advanced Logical |
| 10/24 | File System |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Exhibit G

DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



# Forensic Request for Devices Seized from Charles BRENNAN

## Overview

| | |
|---|---|
| **Title** | Forensic Request for Devices Seized from Charles BRENNAN |
| **Request Date** | 11/01/2022 |
| **Case Category** | 07 - GENERAL SMUGGLING |
| **Case Sub-Category** | 07Q - CHILD EXPLOITATION INVESTIGATIONS |
| **Search Authority** | SW - Search Warrant |
| **Search Authority Date** | 10/31/2022 |
| **Type of Premises** | |
| Type | OTH - Other |
| Other | Electronic Devices |
| **Special Timing Considerations** | Suspect is on pre trial release for federal firearms charges. Child Exploitation charges pending computer forensic results. |
| **Special Support Requests** | Request extraction of devices into Reader program for ATF/HSI case agents to review. Passwords for the devices are not available. |
| **Keyword List** | Standard CSAM, Firearm, Drug lists. |
| **Conducted For** | |
| Agency/Unit/Group | HSI - Homeland Security Investigations |
| **Border Response?** | No |

## Request Items

| | |
|---|---|
| **Priority** | 1 |
| **Serial Number** | 5CGO472N24 |
| **Description** | Silver HP laptop computer with 19 stickers on cover |



OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT



| | |
|---|---|
| **Quantity** | 1 |
| **Model** | Model 14-DK1025WM |
| **Line Item Type** | |
| Category | ADP - Computer |
| Type | LAP - Laptop |

| | |
|---|---|
| **Priority** | 2 |
| **Description** | Silver LG Cell Phone |
| **Quantity** | 1 |
| **Line Item Type** | |
| Category | OTH - General MDS/Other |
| Type | CEL - Mobile Comm Devices |
| **Comments** | One silver LG smartphone, with a white and tan marble back, that has one camera and a protruding black skull |

| | |
|---|---|
| **Priority** | 3 |
| **Description** | Samsung Cell Phone Missing Back Cover |
| **Quantity** | 1 |
| **Line Item Type** | |
| Category | OTH - General MDS/Other |
| Type | CEL - Mobile Comm Devices |
| **Comments** | One black Samsung smart phone, with an unknown IMEI number. One camera on the back, with a missing back cover. There is damage to the front screen as well as the uncovered, back of the phone. |

| | |
|---|---|
| **Priority** | 4 |
| **Description** | Silver Android Cell Phone with "t" shaped white hand grip |
| **Quantity** | 1 |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Line Item Type** | |
| Category | OTH - General MDS/Other |
| Type | CEL - Mobile Comm Devices |
| **Comments** | One silver Android smart phone. The back of the phone has two stickers, a dripping green mouth with rotten teeth. The back of the phone also has a white hand grip in the shape of a T. |

| | |
|---|---|
| **Priority** | 5 |
| **Description** | Black Android cell phone |
| **Quantity** | 1 |
| **Line Item Type** | |
| Category | OTH - General MDS/Other |
| Type | CEL - Mobile Comm Devices |
| **Comments** | One black Android smart phone, with an unknown IMEI number. Three cameras on the back, with three stickers, including: two stickers of exposed women, and a Wu-tang Clan sticker. |

| | |
|---|---|
| **Priority** | 6 |
| **Serial Number** | 5CB13961ZB |
| **Description** | Black and Silver HP Laptop Computer |
| **Quantity** | 1 |
| **Model** | 2000-363NR |
| **Line Item Type** | |
| Category | ADP - Computer |
| Type | LAP - Laptop |

| | |
|---|---|
| **Priority** | 7 |
| **Serial Number** | 1GWTN15611BK0B21I001180 |
| **Description** | Silver Gateway Laptop Computer |
| **Quantity** | 1 |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT



| | |
|---|---|
| **Model** | GWTN-156-11BK |
| **Line Item Type** | |
| Category | ADP - Computer |
| Type | LAP - Laptop |

| | |
|---|---|
| **Priority** | 8 |
| **Description** | Purple Kocaso Tablet |
| **Quantity** | 1 |
| **Model** | MX1037 |
| **Line Item Type** | |
| Category | ADP - Computer |
| Type | TAB - Tablet |
| **Comments** | One black and purple KOCASO tablet, model MX1037, with a cracked front screen, and one camera on the back. |

| | |
|---|---|
| **Priority** | 9 |
| **Description** | Samsung tablet |
| **Quantity** | 1 |
| **Line Item Type** | |
| Category | ADP - Computer |
| Type | TAB - Tablet |
| **Comments** | One black Samsung tablet, with multiple stickers on the back, and one camera. |

| | |
|---|---|
| **Priority** | 10 |
| **Description** | Black Tablet with RS*R sticker on back |
| **Quantity** | 1 |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Line Item Type** | |
| Category | ADP - Computer |
| Type | TAB - Tablet |
| **Comments** | One black tablet, with a cracked front screen. The back of the tablet has one camera and multiple stickers on it. One sticker reads RS*R. |

## Computer Devices

### Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 7: SILVER GATEWAY LAPTOP COMPUTER |

### Computer Device Details

| | |
|---|---|
| **Description** | Silver Gateway Laptop Computer |
| **Serial Number** | 1GWTN15611BK0B21I001180 |
| **Quantity** | 1 |
| **Model** | GWTN-156-11BK |
| **Computer Device Type** | |
| Category | ADP - Computer |
| Type | LAP - Laptop |
| **Storage** | |
| Quantity | 1 |
| Device Manufacturer | OTH - Other |
| Manufacturer Other | No Hard Drive found in Device |
| Operating System | UNK - Unknown |
| Encrypted? | No |
| Capacity | 1 |
| Unit | GB - Gigabytes |
| Repaired? | No |
| **Comments** | No Hard Drive was found within the Device. Extraction not possible. |

### Exam Details



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/05/2024 |

## Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 6: BLACK AND SILVER HP LAPTOP COMPUTER |

## Computer Device Details

| | |
|---|---|
| **Description** | Black and Silver HP Laptop Computer |
| **Serial Number** | 5CB13961ZB |
| **Quantity** | 1 |
| **Model** | 2000-363NR |
| **Computer Device Type** | |
| Category | ADP - Computer |
| Type | LAP - Laptop |
| **Storage** | |
| Quantity | 1 |
| Device Manufacturer | HP - Hewlett Packard |
| Serial Number | 5CB13961ZB |
| Operating System | WIN - Windows |
| Encrypted? | No |
| Capacity | 320 |
| Unit | GB - Gigabytes |
| Repaired? | No |
| **Analysis Software** | |
| Name | AXI - AXIOM |
| **Analysis Software** | |
| Name | FTK - FTK |
| **Analysis Software** | |
| Name | GRF - Griffeye |



OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Comments** | Imaged with FTK Imager and processed with Axiom and Griffeye. Axiom Portable case onto USB for Case Agent review. |

## Exam Details

| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 02/02/2024 |

## Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 1: SILVER HP LAPTOP COMPUTER WITH 19 STICKERS ON COVER |

## Computer Device Details

| | |
|---|---|
| **Description** | Silver HP laptop computer with 19 stickers on cover |
| **Serial Number** | 5CGO472N24 |
| **Quantity** | 1 |
| **Model** | Model 14-DK1025WM |
| **Computer Device Type** | |
| Category | ADP - Computer |
| Type | LAP - Laptop |
| **Storage** | |
| Quantity | 1 |
| Device Manufacturer | HP - Hewlett Packard |
| Operating System | WIN - Windows |
| Encrypted? | No |
| Capacity | 32 |
| Unit | GB - Gigabytes |
| Repaired? | No |

## Exam Details



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT



| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/19/2024 |

## Mobile Devices

### Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 8: PURPLE KOCASO TABLET |

### Mobile Device Details

| | |
|---|---|
| **Description** | Purple Kocaso Tablet |
| **Quantity** | 1 |
| **Model** | MX1037 |
| **Mobile Device Type** | |
| Category | ADP - Computer |
| Type | TAB - Tablet |
| **Operating Systems** | |
| Name | UNK - Unknown |
| **Capacity** | |
| Capacity | 1 |
| Unit | GB - Gigabytes |
| **Encryption?** | No |
| **Repaired?** | No |
| **Memory Card?** | Yes |
| **Memory Card Details** | |
| Capacity | 16 |
| Unit | GB - Gigabytes |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Analysis Software**<br>Name | <br>AXI - AXIOM |
| **Analysis Software**<br>Name | <br>FTK - FTK |
| **Comments** | Unable to Image or Process the Kocaso Tablet. SD Card was imaged with FTK and processed with AXIOM. Portable case created for SA review. |

## Exam Details

| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/06/2024 |

## Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 4: SILVER ANDROID CELL PHONE WITH "T" SHAPED WHITE HAND GRIP |

## Mobile Device Details

| | |
|---|---|
| **Description** | Silver Android Cell Phone with "t" shaped white hand grip |
| **Quantity** | 1 |
| **Model** | LM-X320 |
| **Mobile Device Type**<br>Category<br>Type | <br>OTH - General MDS/Other<br>CEL - Mobile Comm Devices |
| **Operating Systems**<br>Name | <br>AND - Android |
| **Capacity**<br>Capacity<br>Unit | <br>16<br>GB - Gigabytes |
| **Encryption?** | No |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Repaired?** | No |
| **Memory Card?** | Yes |
| **Memory Card Details** | |
| Capacity | 16 |
| Unit | GB - Gigabytes |
| **Manufacturer** | |
| Name | LG - LG |
| **Analysis Software** | |
| Name | AXI - AXIOM |
| **Analysis Software** | |
| Name | CEP - Cellebrite Premium |
| License Number | 360631189 |
| **Analysis Software** | |
| Name | FTK - FTK |
| **Comments** | Phone extracted with UFED. Portable case onto USB for Case Agent review. SD card imaged with FTK and processed with AXIOM. |

## Exam Details

| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/06/2024 |

## Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 10: BLACK TABLET WITH RS*R STICKER ON BACK |

## Mobile Device Details

| | |
|---|---|
| **Description** | Black Tablet with RS*R sticker on back |
| **Quantity** | 1 |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT



| | |
|---|---|
| **Mobile Device Type** | |
| Category | ADP - Computer |
| Type | TAB - Tablet |
| **Operating Systems** | |
| Name | AND - Android |
| **Capacity** | |
| Capacity | 1 |
| Unit | GB - Gigabytes |
| **Encryption?** | No |
| **Repaired?** | No |
| **Memory Card?** | No |
| **Comments** | Device was unable to power up or be charged for extraction. No extraction or analysis of device was made. |

## Exam Details

| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/05/2024 |

## Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 2: SILVER LG CELL PHONE |

## Mobile Device Details

| | |
|---|---|
| **Description** | Silver LG Cell Phone |
| **Serial Number** | 905VTKE0523893 |
| **Quantity** | 1 |
| **Model** | LM-X220PM |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

## FIELD EXAM REPORT



| | |
|---|---|
| **Mobile Device Type** | |
| Category | OTH - General MDS/Other |
| Type | CEL - Mobile Comm Devices |
| **Operating Systems** | |
| Name | AND - Android |
| **Capacity** | |
| Capacity | 16 |
| Unit | GB - Gigabytes |
| **Encryption?** | No |
| **Repaired?** | No |
| **Memory Card?** | Yes |
| **Memory Card Details** | |
| Capacity | 32 |
| Unit | GB - Gigabytes |
| **Manufacturer** | |
| Name | LG - LG |
| **Analysis Software** | |
| Name | AXI - AXIOM |
| **Analysis Software** | |
| Name | CEP - Cellebrite Premium |
| License Number | 360631189 |
| **Analysis Software** | |
| Name | FTK - FTK |
| **Comments** | Phone extracted with UFED. Portable case onto USB for Case Agent review. SD card was discovered and imaged with FTK and processed with AXIOM. |

## Exam Details

| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/05/2024 |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

## FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



### Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 5: BLACK ANDROID CELL PHONE |

### Mobile Device Details

| | |
|---|---|
| **Description** | Black Android cell phone |
| **Serial Number** | R9HRBOFXPKZ |
| **Quantity** | 1 |
| **Model** | SM-A025UI |
| **Mobile Device Type** | |
| Category | OTH - General MDS/Other |
| Type | CEL - Mobile Comm Devices |
| **Operating Systems** | |
| Name | AND - Android |
| **Capacity** | |
| Capacity | 32 |
| Unit | GB - Gigabytes |
| **Encryption?** | No |
| **Repaired?** | No |
| **Memory Card?** | No |
| **Manufacturer** | |
| Name | SAM - Samsung |
| **IMEI** | 355070813754987 |
| **Analysis Software** | |
| Name | CEP - Cellebrite Premium |
| License Number | 360631189 |
| **Comments** | Extracted with UFED. Portable case onto USB for Case Agent review. |

### Exam Details



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT



| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/06/2024 |

## Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 9: SAMSUNG TABLET |

## Mobile Device Details

| | |
|---|---|
| **Description** | Samsung tablet |
| **Serial Number** | R52M311X72L |
| **Quantity** | 1 |
| **Model** | SM-T387V |
| **Mobile Device Type** | |
| Category | ADP - Computer |
| Type | TAB - Tablet |
| **Operating Systems** | |
| Name | AND - Android |
| **Capacity** | |
| Capacity | 32 |
| Unit | GB - Gigabytes |
| **Encryption?** | No |
| **Repaired?** | No |
| **Memory Card?** | Yes |
| **Memory Card Details** | |
| Capacity | 16 |
| Unit | GB - Gigabytes |
| **Manufacturer** | |
| Name | SAM - Samsung |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT



| | |
|---|---|
| **IMEI** | 355420102505105 |
| **Analysis Software** | |
| Name | AXI - AXIOM |
| **Analysis Software** | |
| Name | CEP - Cellebrite Premium |
| License Number | 360631189 |
| **Analysis Software** | |
| Name | FTK - FTK |
| **Comments** | Phone extracted with UFED Premium. Analyzed and Portable case made in AXIOM for Case Agent review. SD Card imaged with FTK, processed and portable made with AXIOM. |

## Exam Details

| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/07/2024 |

## Request Item / Incident Report

| | |
|---|---|
| **Request Item** | PRIORITY 3: SAMSUNG CELL PHONE MISSING BACK COVER |

## Mobile Device Details

| | |
|---|---|
| **Description** | Samsung Cell Phone Missing Back Cover |
| **Quantity** | 1 |
| **Model** | SM-S5727VL |
| **Mobile Device Type** | |
| Category | OTH - General MDS/Other |
| Type | CEL - Mobile Comm Devices |
| **Operating Systems** | |
| Name | AND - Android |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Capacity** | |
| Capacity | 16 |
| Unit | GB - Gigabytes |
| **Encryption?** | No |
| **Repaired?** | No |
| **Memory Card?** | No |
| **Manufacturer** | |
| Name | SAM - Samsung |
| **Comments** | Phone arrived damaged with no back cover and wires sticking out of the back. Phone had no power and was powered off. Extraction was impossible to complete. |

## Exam Details

| | |
|---|---|
| **Contributor** | Nathan Spisak |
| **Office** | BU - Buffalo, NY |
| **Exam Date** | 03/05/2024 |

## Routing Information

| | |
|---|---|
| **Supervisor** | Iain Walker |
| **Receiving Office** | BU - Buffalo, NY |
| **Primary CFA** | Nathan Spisak |
| **Program Code** | 2EX - HSI Albany/NYSP ICAC |
| **Program Code** | 492 - NCMEC REFERRALS |
| **Program Code** | YT1 - Child Exploitation and Sex Tourism |
| **Document Notification Level** | 1 - TO RECORD OWNER |

## Restrict Visibility



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Groups Visible To** | HSI Only |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

HOMELAND SECURITY INVESTIGATIONS

FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



## Metadata

| | |
|---|---|
| **Document Number** | AY07QB23AY0001-FER001 |
| **Document Status** | Complete |
| **Opened** | 11/1/2022 |
| **Last Updated** | 3/21/2024 |
| **Author** | James Hamilton<br>1038 - SPECIAL AGENT<br>5183614198 |
| **Owner(s)** | James Hamilton<br>1038 - SPECIAL AGENT<br>5183614198 |
| **Supervisor** | Iain Walker<br>1043 - SUPERVISORY SPECIAL AGENT<br>7165834651 |
| **Approved** | James Donoghue<br>1038 - SPECIAL AGENT<br>CFA Acceptance<br>11/7/2022 |
| **Approved** | Nathan Spisak<br>1038 - SPECIAL AGENT<br>Completion<br>3/21/2024 |

## Case Metadata



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### FIELD EXAM REPORT

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE



| | |
|---|---|
| **Case Title** | Charles BRENNAN |
| **Case Number** | AY07QB23AY0001 |
| **Case Opened** | 10/27/2022 |
| **Case Last Updated** | 4/28/2024 |
| **Approved** | Iain Walker<br>1043 - SUPERVISORY SPECIAL AGENT<br>10/27/2022 |



This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*-against-*

CHARLES BRENNAN,

*Defendant.*

**MEMORANDUM OF LAW**

**1:24-cr-00012 (AMN)**

ISEMAN PLLC
*Scott W. Iseman, Esq.*
*Attorney for Defendant*
125 High Rock Ave.
Saratoga Springs, NY 12866
May 3, 2024

# Table of Contents

**SUMMARY OF ARGUMENT** .......... 1

**RELEVANT FACTUAL BACKGROUND** .......... 1

**LEGAL STANDARD FOR CONSTITUTIONAL CLAIMS** .......... 1

**ARGUMENT** .......... 3

- **I. 18 U.S.C. § 922(k) is facially unconstitutional and as applied to the Defendant** .......... 3
- **II. Count Three Must be Dismissed because it is unconstitutional as applied to the Defendant** .......... 9
- **III. The Court Must Suppress Evidence Obtained From Electronic Devices Searched After Expiration of Search Authority.** .......... 11

## SUMMARY OF ARGUMENT

The court should dismiss counts Three and Five of the Indictment which charge the Defendant with violating 18 U.S.C. §§ 924(c) and 922(k) respectively in light of *New York State Rifle & Pistol Assoc. Inc. v. Bruen*, 597 U.S. 1 (2002) since both statutes are facially unconstitutional and as applied to the Defendant. The court should also suppress any evidence obtained from certain electronic devices seized from the Defendant's home as the government failed to search those devices within the time authorized by warrant and FRCP §§ 41(e)(2)(A)(1) or 41(e)(2)(B).

## RELEVANT FACTUAL BACKGROUND

All relevant facts are provided in the accompanying Attorney Declaration and are incorporated by reference.

## LEGAL STANDARD FOR CONSITUTIONAL CLAIMS

Under Rule 12(b)(1) of the Federal Rules of Criminal Procedure, a defendant may raise pretrial motions alleging "a defect in the indictment or information[,] including ... failure to state an offense." Fed. R. Crim. Pro. 12(b)(3)(B)(v). A pretrial motion to dismiss the indictment under Rule 12(b)(3)(B)(v) is the proper vehicle to raise a constitutional challenge to the charging statute. *United States v. Rampersant*, 2023 WL 8430564, at *2 (E.D.N.Y. Dec. 5, 2023) (internal citations omitted). In evaluating a motion to dismiss under Rule 12(b), a court generally accepts the indictment's allegations as true. *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

The Second Amendment of the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme

Court held that "the Second Amendment confer[s] an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). More specifically, *Heller* held that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home. *Heller*, 554 U.S. at 635.

Following *Heller*, the Second Circuit and its sister-circuits adopted a means-ends analysis when evaluating firearms regulations against the level of infringement they caused on an individual's Second Amendment rights. *Bruen*, 597 U.S. at 17. For example, in *United States v. Decastro*, the Second Circuit held that "heightened scrutiny is appropriate only as to those regulations that substantially burden the Second Amendment." 682 F.3d 160, 164 (2d Cir. 2012). *Bruen* determined that this approach was wrong and held the correct approach was a two-step analysis that included a strict textualist analysis to determine if a law proscribed conduct protected by the Second Amendment and a traditional historical analysis of the proscription at issue. *Bruen*, 597 U.S. at 17.

Specifically, *Bruen* holds that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 597 U.S. at 24 (internal quotes omitted). It is within this framework that 18 U.S.C. § 922(k) and 18 U.S.C. § 924(c) are rendered unconstitutional.

ARGUMENT

**I. 18 U.S.C. § 922(k) is facially unconstitutional and as applied to the Defendant**

18 U.S.C. § 922(k) is facially unconstitutional and as applied to the Defendant because it violates an individual's right to bear arms that is guaranteed under the Second Amendment and the defendant's Second Amendment rights as applied to him based on the unique circumstances presented here. Regarding the facial challenge, issues about the constitutionality of various federal and state firearm statutes are being litigated around the country in *Bruen's* wake. While several district courts have held that § 922(k) is constitutional following *Bruen*, the district court for the Southern District of West Virgina held in *United States v. Price*, that § 922(k) is unconstitutional. 635 F. Supp. 3d455 (S.D. W. VA 2022). *Price's* reasoning, while addressing adheres to the simple, textualist and historical approach *Bruen* mandates. The court here should adopt *Price's* reasoning and central holding and not be swayed by the multiple other district courts' opinions to the contrary. Indeed, as described below, those decisions are illogical and misapply *Bruen*. Furthermore, this court should also see their decisions as a similarly wrong "coalesce[ing]" that occurred in *Heller's* wake that was overturned by the *Bruen*. *Bruen*, 597 U.S. at 17 (observing after *Heller* Courts of Appeals "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny and rejecting that approach).

In *Price*, the defendant was charged with violating 18 U.S.C. §§ 922(k) and 922(g). The district court correctly reasoned that the threshold question is whether § 922(k) "prohibits conduct that is protected by the plain text of the Second Amendment." *Id.* at 459. The district court found that it did just that since § 922(k) criminalizes the "mere possession of a firearm

after a serial number is removed, obliterated, or altered in any way, whether or not the firearm is then placed into commerce." *Id*. at 460. This finding is unassailable.

Having found that § 922(k) prohibits conduct protected by the Second Amendment, the district court then correctly determined that under *Bruen's* second step, there was no "historical tradition" at the time of the ratification of the Second Amendment in 1791 of a firearm regulation similar to § 922(k). The district court logically determined that "[a] firearm in 1791 was certainly not considered dangerous or unusual compared to other firearms because serial numbers were not required or even commonly used at that time." *Id*. at 464. This simple, textualist approach rendered § 922(k) unconstitutional. *Id*. Importantly, the district court observed that § 922(k) may very well be good policy – indeed, an effective tool for preventing and fighting violent crime (*see Id.*) – but correctly observed that *Bruen* prohibits that kind of "means-end reasoning". *Id*. This court should likewise not entertain policy considerations in its analysis and similarly find that under *Bruen*, 18 U.S.C § 922(k) is unconstitutional because it prohibits conduct protected by the Second Amendment and there was not distinctly similar law in place at the time the Second Amendment was ratified.

Granted, *Price* presently stands alone and against multiple other district court decisions that have found that § 922(k) constitutional after *Bruen*. These district court decisions, however, either wrongly determined that possession of a firearm with an obliterated serial number is not protected by the Second Amendment because such possession is inherently "unlawful", "dangerous or unusual", and/or that the historical regulations permitted similar firearm regulations, satisfying *Bruen's* historical analogue test. *See e.g. United States v. Sing-Ledezma*, 2023 WL 8587869 *3-4 (W.D. Texas, Dec. 11, 2023) (collecting cases); *United States v. Trujillo*,

670 F.Supp.3d 1235 (D. N.M. Apr. 26, 2023). The reasoning in each of these cases is illogical and misapplies *Bruen* in important respects.

To begin, the reasoning that possession of a weapon with an obliterated serial number is inherently unlawful and not protected by the Second Amendment is circular and wrong. What makes the possession "unlawful" is the unconstitutional statute (§ 922(k)) itself. It cannot be that an unconstitutional statute provides the basis for "unlawful" possession. This court should not follow the same logical error.

Next, the argument that a firearm with an obliterated serial number is "dangerous or unusual" is also off-base and subject to the same circular fallacy described above. Importantly, the dangerous or highly unusual analysis only applies to the capability of the firearm itself. Afterall "[a]rms" as used in the Second Amendment is limited to those "in common use at the time." *Heller*, 554 U.S. at 624. A handgun, like the 9mm Beretta at issue here, qualifies as an "arm" warranting Second Amendment protection. *Id*. at 629. A serial number does nothing to change that analysis. Moreover, the Government will not be able to point to any requirement at or near the Second Amendment's effective date in 1791 that firearms have serial numbers, that it was a crime to obliterate or alter said numbers, or how the existence or non-existence of serial numbers changes the firearm in a way to make it more dangerous or unusual that was not already known in 1791.

Nonetheless, the district courts upholding the constitutionality of § 922(k) lean on the argument that firearms with an obliterated serial number "[a]re not those typically possessed by law-abiding citizens for lawful purposes". *Trujillo*, 670 F.Supp.3d at 1241; *United States v. Walker*, 2023 WL 30203211, at *5 (D.V.I Apr. 20, 2023) (same); *United States v. Avila*, 672

F.Supp.3d 1137, 1143-44 (D. Col. May 8, 2023) (same). These courts' positions are not only invalid because they rely on the circular logic described above, but also because whether the firearm has a serial number or the serial number is altered or obliterated, has nothing to do with a firearm's lethality or unusual capability. Even assuming there is no lawful purpose for obliterating a serial number, an obliterated or altered serial number does not make the firearm any more dangerous or unusual. In short, these district courts have performed an impermissible end-run around the textualist, historical approach mandated by *Bruen*.

But there are myriad lawful purposes for removing serial numbers from a firearm, even if the government does not want to acknowledge it or other courts lacked the capacity to think of them. For example, a law-abiding citizen who lawfully purchases a firearm wants to "debadge" the firearm by removing the manufacturer's information and serial number because for creative, expressive, or aesthetic reasons. This is a common practice with vehicles – even luxury vehicles – where ostensibly the car's badge has value and sends a signal to others. *See e.g.* "Rebadging or debadging" available at https://www.benzworld.org/threads/rebadging-or-debadging.1243463/ (last visited May 3, 2024). Perhaps the serial number has been altered from excessive cleaning or the misuse of abrasive cleaning or maintenance tools or caused by other unintentional damage. Afterall what constitutes "alteration" is disputed and can be a relatively minor "alteration" in the serial number. *See United States v. St. Hilaire*, 960 F.3d 61, 66-67 (2d Cir. 2020). Alternatively, perhaps an owner wants to avoid the accumulation of debris on the serial numbers by removing the numbers, which are typically on the outside of the firearm. None of these are criminal purposes but they are made criminal by § 922(k). Nor should they be dismissed as trivial. People should be free to aesthetically alter their property or make a maintenance error and not be exposed to criminal liability – but § 922(k) do not separate out criminal from non-criminal intent

and mere knowing possession with an altered serial number is enough to trigger felony culpability.

Further, the historical tradition of having no serial number requirement until 1968 indicates that for the first 177 years of the Second Amendment there was nothing unusual or dangerous about possessing an un-serialized firearm. In fact, the Gun Control Act still permits the lawful possession of un-serialized firearms manufactured before 1968. *Price*, 635 F. Supp. 3d at 462. Moreover, it was not *until 1990* that mere possession of a firearm with an obliterated serial number became criminal. *Id.* at 462-63. As a result, for the first 199 years of the Second Amendment, it was not criminal or dangerous to merely possess a firearm with an altered or obliterated serial number. None of this is consistent with the district court's various findings that removing a serial number is so "highly unusual" or "dangerous" that the conduct falls outside Second Amendment protection.

Finally, these district courts misapply *Bruen's* historical traditions analysis when they determine directly or in the alternative that "there need not be a historical tradition of identical regulations—a sufficiently analogous historical tradition suffices" and then find such aa analogous tradition. *Sing-Ledezma*, 2023 WL 8587869 at *4 (collecting cases). Under *Bruen,* there are two separate approaches to the historical traditions analysis and which approach applies depends on the problem the law at issue addresses. *United States v. Lewis*, 2023 WL 187582, at *3 (W.D. Okla. 2023). In this respect, the Supreme Court held that where "a challenged regulation addresses a general societal problem that has persisted since the 18th century" then "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. *Bruen*, 597 U.S. at 26-27. As a result, "if the Founders could have adopted" a particular regulation "to confront [an

existing] problem" but did not, then the law is unconstitutional. *Id*. at 27. This can be referred to as the "distinctly similar" approach.

The second approach, the "proper analogue" or "relatively similar" approach, only applies when the challenged law "implicat[es] unprecedented societal concerns or dramatic technological changes." *Id*. at 27. The "central consideration" to this approach requires the court to analyze "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified". *Id*. This can be referred to as the "proper analogue" approach.

*Sing-Ledezma* and decisions it joins erroneously rely on the "proper analogue" approach since the problem addressed by § 922(k) – gun violence – was not an "unprecedented societal concern or dramatic technological change." *Id.* In fact, gun violence existed at the time of the founding. *Price*, 635 F. Supp. 3d at 463. As a result, since § 922(k) was not in response to a new societal concern or a dramatic technological change, the district courts should have applied the "distinctly similar" historical approach, which is stricter than the "proper analogue" approach. It follows then that the regulations cited in *Sing-Ledezma* and its collected cases about regulating gun powder, prohibiting firearm sales to Native Americans and the like (*see* 2023 WL 8587869 at *4), are not distinctly similar to § 922(k) since they have nothing to do with criminalizing or even regulating the serialization of firearms.

Indeed, the existence of these regulations proves the opposite point under the "distinctly similar" approach – that the Founders "could have adopted" a particular regulation "to confront [an existing] problem" distinctly similar to § 922(k) but did not at the time the Second Amendment was enacted. This renders § 922(k) law unconstitutional. *Bruen* 597 U.S. at 27. Put

simply, since gun violence existed at the time the Second Amendment became effective and the regulations cited by the district courts like *Sing-Ledezma* demonstrate that the Founders knew how to regulate issues related to firearms including using serial numbers but chose not to in a way that was distinctly similar to § 922(k), indicates that § 922(k) is unconstitutional. *Id.* at 26-27.

The as applied constitutional challenge is also of particular import here since the Defendant is being prosecuted solely on a theory of mere possession of a firearm in violation of § 922(k). There will be no evidence that the Defendant obliterated, defaced, or altered the serial number. There will be no evidence the Defendant placed the firearm into the stream of commerce. There will be no evidence the firearm was used in conjunction with any crime. Consequently, as charged, Count Five infringes on the Defendant's Second Amendment right to possess the subject firearm and should be dismissed on this as applied basis as well.

## II. Count Three Must be Dismissed because it is unconstitutional as applied to the defendant

Count Three alleges the defendant used a firearm during and in relation to a drug trafficking crime in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c)(1)(A). Count Three must likewise be dismissed because it is facially unconstitutional and unconstitutional as applied to the defendant. Specifically, the government cannot meet its burden to establish a historical tradition similar to § 924(c)(1)(A)'s prohibition on possessing firearms in furtherance of drug sales.

Post-*Heller,* but pre-*Bruen*, the Second Circuit upheld the constitutionality of § 924(c)(1)(A). *United States v. Bryant*, 711 F. 3d 364 (2d Cir. 2013). While the Second Circuit leaned on language from *Heller* that the Second Amendment protects a personal right to keep

and bear arms for *lawful* purposes, like home-self defense, it also leaned heavily on its means-ends scrutiny analysis that was rejected in *Bruen*. Specifically, *Bryant* held that the "Second Amendment does not protect the unlawful purpose of possessing a firearm in furtherance of a drug trafficking crime and that 18 U.S.C. § 924(c) as applied in this case does not violate the Second Amendment." *Bryant*, 711 F. 3d at 370. *Bryant*, however, is no longer good law following *Bruen* because the court did not apply the strict textualist approach *Bruen* requires to determine if the proscribed conduct infringes on a Second Amendment right or any of the necessary historical traditional analysis *Bruen* requires. But see *United States v. Mingues*, 2023 WL 9604697 (N.D.N.Y. Dec. 23, 2023) (holding *Braynt* remains good law after *Bruen*).

When *Bruen* is applied to § 924(c)(1)(A), its obvious the statute proscribes an individual's Second Amendment right to possess a firearm and that the government cannot meet its burden to establish a historical tradition similar to § 924(c)(1)(A)'s prohibition on possessing firearms in furtherance of drug sales. As in *Bruen*, the problem that § 924(c)(1)(A) addresses is not new and the government will be unable to establish a "distinctly similar" statute that existed at the time the Second Amendment was ratified. Like § 922(k), the statutory scheme criminalizing this kind of firearm possession is modern. § 924(c) was enacted in 1968, and it first prohibited using or carrying firearms for drug trafficking in 1970. *United States v. Melville*, 309 F. Supp. 774, 776 (S.D.N.Y. 1970). Like § 922(k), this is far too late to alter the Second Amendment's meaning.

Regarding the unique circumstances of this matter, and why it is unconstitutional as applied to Defendant, is that this alleged sale was the product of law enforcement enticement through a solicitous confidential information. Further, the government will not be able to establish that the firearm sale was accompanied by a contemporaneous drug transaction. There

will be no evidence the defendant carried a weapon during a drug sale, threatened anyone with a weapon as part of a drug sale or otherwise used the firearm directly as part of sale. Rather, the government will attempt to convince a jury that a later drug transaction is sufficient to establish the Defendant "used and carried" a firearm in relation to a drug trafficking crime. Under these circumstances, § 924(c)(1)(A)(i) violates the Defendant's Second Amendment right to possess the subject firearm and the government should not be permitted to manufacture the basis whether through confidential informants or creative pleading to create an "unlawful" situation that it can then rely on to avoid Second Amendment scrutiny. Therefore, Count Three must be dismissed.

**III. The Court Must Suppress Evidence Obtained From Electronic Devices Searched After Expiration of Search Authority.**

Searches pursuant to a warrant must be conducted (1) consistent with the terms of the warrant and (2) in a reasonable manner. *United States v. Ganias*, 824 F.3d 199, 209–10 (2d Cir. 2016) ("[B]oth the scope of a seizure permitted by warrant, and the reasonableness of government conduct in executing a valid warrant, can present Fourth Amendment issues."). The Fourth Amendment, however, does not require warrants have expiration dates. *United States v. Ahmad*, 2012 WL 1944615, at *8 (W.D.N.Y. May 29, 2012*), report and recommendation adopted*, 2012 WL 3028302 (W.D.N.Y. July 24, 2012) (internal citations omitted). FRCP 41(e)(2)(A)(i), however, requires that any federal search warrant be executed within 14 days. When electronically stored information is the subject of the search warrant, the search is considered the "copying" or the "extraction" of the electronically stored information, which can then be reviewed after expiration of the search authority. FRCP 41(e)(2)(B). Rule 41 violations result in suppression when "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is

evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Pangburn,* 983 F.2d 449, 455 (2d Cir.1993).

Here, the government did not copy or forensically extract (i.e. search) at least 15 if not 16 devices seized from the Defendant's home until 16 months after search authority expired. Since the Defendant is detained pretrial and trial is a mere six weeks away, the Government's decision not to timely search the devices within a reasonable period of time and then attempt use said evidence against the Defendant has manifest prejudice. Further delays which may be necessary to review the data – which could be extraordinarily voluminous – at this late stage would cause the defendant to be unjustifiably detained beyond the scheduled trial date. As a result, the court should dispense with the issue entirely and suppress the fruits of these stale searches.

DATED: May 3, 2024

ISEMAN PLLC

By: ________________________

Scott Iseman
*Attorney for Defendant*
125 High Rock Ave. Suite 215-H
Saratoga Springs, NY 12866
scott@scottisemanlaw.com
(518) 416-2158
Bar Roll Id #: 518859

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

CHARLES BRENNAN

Defendant.

**NOTICE OF MOTION**

Case No:
1:24-cr-00012-AMN

**PLEASE TAKE NOTICE**, that upon the annexed Memorandum of Law and the Declaration of **Scott W. Iseman, Esq.,** attorney for the Defendant, and upon the Indictment filed against the above-named defendant in this Court, and upon the arraignment and all of the proceedings heretofore had herein, the undersigned will move this Court on June 11, 2024 or at a date and time determined by the Court for:

(1) An order, pursuant to FRCP 12(b)(3)(B)(v) dismissing Counts Three and Five of the Indictment as they are unconstitutional and therefore the indictment fails to state an offense;

(2) An Order, pursuant to FRCP §§ 41(h) and 12(b)(3)(C) suppressing all evidence obtained from untimely searches of electronically stored data seized from the Defendant's home or for an evidentiary hearing to determine any facts in dispute necessary to decide the motion.

(3) For such other and further relief as to this Court may seem just and proper.

The Defendant respectfully requests **ORAL AGRUMENT** on the constitutional issues associated with this motion.

DATED: May 3, 2024

ISEMAN PLLC

By: [signature]

Scott Iseman
*Attorney for Defendant*
125 High Rock Ave. Suite 215-H
Saratoga Springs, NY 12866
scott@scottisemanlaw.com
(518) 416-2158
Bar Roll Id #: 518859

**CERTIFICATE OF SERVICE**

I certify that on May 3, 2024, I served a copy of the foregoing, the supporting Attorney Declaration and all attached exhibits and the accompanying Memorandum of Law on U.S. Attorney's Office for the Northern District of New York via ECF.

DATED: May 3, 2024

ISEMAN PLLC

By: ______________________

Scott Iseman
*Attorney for Defendant*
125 High Rock Ave. Suite 215-H
Saratoga Springs, NY 12866
scott@scottisemanlaw.com
(518) 416-2158
Bar Roll Id #: 518859

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No. 1:24-CR-012 (AMN) |
| **v.** | **Superseding Indictment** |
| **CHARLES BRENNAN,** | Violations: 21 U.S.C. § 841(a)(1) and (b)(1)(C) [Distribution of a Controlled Substance] |
| **Defendant.** | 18 U.S.C. § 924(c)(1)(A) [Use of a Firearm During and In Relation to and Possession of a Firearm in Furtherance of a Drug Trafficking Crime] |
| | 21 U.S.C. § 841(a)(1) and (b)(1)(B) [Possession with Intent to Distribute a Controlled Substance] |
| | 18 U.S.C. § 922(k) [Possession of a Firearm with an Obliterated Serial Number] |
| | 18 U.S.C. § 924(c)(1)(A) [Possession of Firearms in Furtherance of a Drug Trafficking Crime] |
| | 7 Counts and Forfeiture Allegation |
| | County of Offense: Saratoga |

U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
May 9 - 2024
John M. Domurad, Clerk

**THE GRAND JURY CHARGES:**

**COUNT 1**
[**Distribution of a Controlled Substance**]

On or about July 25, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally distributed a controlled

substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

**COUNT 2**
**[Distribution of a Controlled Substance]**

On or about August 2, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally distributed a controlled substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

**COUNT 3**
**[Use of Firearm During and In Relation to and Possession of a Firearm in Furtherance of a Drug Trafficking Crime]**

On or about August 2, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is Distribution of a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), knowingly used and carried a firearm, that is a 7.62 caliber Riley Defense RAK 47 rifle bearing serial number B27875, and in furtherance of such crime possessed such firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A).

**COUNT 4**
**[Distribution of a Controlled Substance]**

On or about September 7, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally distributed a controlled substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

**COUNT 5**
**[Possession with Intent to Distribute a Controlled Substance]**

On or about September 13, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly and intentionally possessed with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). That violation involved five grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(B).

**COUNT 6**
**[Possession of a Firearm with an Obliterated Serial Number]**

On or about September 13, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, knowingly possessed a firearm that had been shipped and transported in interstate commerce, that is a .40 caliber Beretta semiautomatic pistol, model 96D, which had the manufacturer's serial number removed, obliterated, and altered, knowing that the serial number had been removed, obliterated, and altered, in violation of 18 U.S.C. § 922(k).

**COUNT 7**

**[Possession of Firearms in Furtherance of a Drug Trafficking Crime]**

On or about September 13, 2022, in Saratoga County in the Northern District of New York, the defendant, **CHARLES BRENNAN**, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), knowingly possessed firearms, that is:

| MANUFACTURER | MODEL | TYPE | SERIAL | CALIBER/GAUGE |
|---|---|---|---|---|
| Beretta | 96D | Pistol | removed, obliterated, and altered | .40 |

| | | | | |
|---|---|---|---|---|
| Izhmash | Saiga | Rifle | H09125607 | 7.62x39 |
| Mosin-Nagant | M91-30 | Rifle | 016600 | 7.62x54R |
| Akkar Silha Sanayi TIC | 301 | Shotgun | 20CH-01057 | 12 |
| Winchester | 3T | Rifle | 12682 | 22LR |
| Savage | 311 | Shotgun | D058635 | 12 |
| Marlin | 336RC | Rifle | F36316 | 30-30 |
| Khan | Cobra | Shotgun | 21HP1201984 | 12 |

all in violation of Title 18, United States Code, Section 924(c)(1)(A).

**FORFEITURE ALLEGATION**

The allegations contained in Counts 6 and 7 of this indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense in violation of Title 18, United States Code, Section 922(k), set forth in Count 6 of this indictment, the defendant, **CHARLES BRENNAN**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), any firearm and ammunition involved in and used in any knowing violation of the offense of conviction. The property to be forfeited includes, but is not limited to, the following:

| MANUFACTURER | MODEL | TYPE | SERIAL | CALIBER/GAUGE |
|---|---|---|---|---|
| Riley Defense | RAK 47 | Rifle | B27875 | 7.62 |
| Beretta | 96D | Pistol | removed, obliterated, and altered | .40 |
| Izhmash | Saiga | Rifle | H09125607 | 7.62x39 |
| Mosin-Nagant | M91-30 | Rifle | 016600 | 7.62x54R |
| Akkar Silha Sanayi TIC | 301 | Shotgun | 20CH-01057 | 12 |
| Winchester | 3T | Rifle | 12682 | 22LR |
| Savage | 311 | Shotgun | D058635 | 12 |
| Marlin | 336RC | Rifle | F36316 | 30-30 |
| Khan | Cobra | Shotgun | 21HP1201984 | 12 |

Dated: May 9, 2024

A TRUE BILL,

[redacted]

Grand Jury Foreperson

***Redacted Name

CARLA B. FREEDMAN
United States Attorney

By: Ashlyn Miranda
Ashlyn Miranda
Assistant United States Attorney
Bar Roll No. 700759

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

*-against-*

CHARLES BRENNAN,

*Defendant.*

**SUPPLEMENTAL MEMORANDUM OF LAW**
**1:24-cr-00012 (AMN)**

ISEMAN PLLC
*Scott W. Iseman, Esq.*
*Attorney for Defendant*
125 High Rock Ave.
Saratoga Springs, NY 12866
May 23, 2024

The defense offers this supplemental memorandum of law to extend the constitutional arguments that Count Three is unconstitutional to Count Seven, which charges the same offense with different firearms.

Like Count Three, Count Seven alleges the defendant violated 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c)(1)(A). Where Count Three alleged "use" of a firearm in furtherance of a drug trafficking offense, County Seven alleged "possession" of eight different firearms during and in relation to a drug trafficking crime. Like Count Three, Count Seven must also be dismissed because it is facially unconstitutional and unconstitutional as applied to the defendant. Specifically, since 18 U.S.C. § 924(c)(1)(A) proscribes protected Second Amendment conduct, the government cannot meet its burden to establish a historical tradition similar to § 924(c)(1)(A)'s prohibition on possessing firearms in furtherance of drug sales. The defense incorporates by reference the legal arguments made in its initial omnibus motion regarding the facial unconstitutionality of 18 U.S.C. § 924(c)(1)(A).

Regarding the unique circumstances that apply to Count Seven and why it is unconstitutional as applied to Defendant, the Government alleges in Count Seven that the identified firearms were possessed, rather than used during a drug trafficking crime. Here, there will be no evidence that the Defendant ever possessed any of the identified firearms as part of any of the controlled buys at issue in this case. Rather, the Government will only be able to establish that the identified firearms were seized following the execution of the September 13, 2022 search warrant from the defendant's home. Prior to execution of that warrant, the Government had no indication that any of these firearms were possessed or used in furtherance of any drug crime or any other criminal activity. Iseman Dec. at ¶ 11.

Consistent with the same, the Government's own investigation into the history of the seized firearms demonstrated that three of the seized shotguns, the Khan Cobra, Serial # 21HP1201984; the Akkar Silha Sanayi TIC shot gun, Serial #20CH-01057; and the Savage 311 Shotgun, Serial #D058635, were owned by the defendant's neighbor, MN. The Government interviewed the defendant's neighbor who stated he brought the firearms to the defendant's home to go shooting and hunting. While the neighbor stated that he stopped speaking to the defendant because he believed the defendant was involved in dealing marijuana, he denied having any knowledge that the firearms were connected to any kind of drug crime, denied that the defendant ever solicited him to engage in any kind of drug transaction or that the firearms were linked to any kind of drug transactions. Instead, the defendant's neighbor repeatedly told law enforcement that firearms were at the defendant's home solely for shooting and hunting. Iseman Dec. at ¶¶ 10-12.

With no evidence that the firearms listed in Count Seven were affirmatively involved in a drug offense, it is expected the Government will rely on inference and inuendo to argue that the defendant possessed the firearms listed in Count Seven to protect his drugs. *See e.g. United States v. Lewter*, 402 F.3d 319, 323 (2d Cir. 2005) ("Possession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash"). But since firearms possession is protected by the Second Amendment and § 924(c)(1)(A)(i) violates the Defendant's Second Amendment right to possess the listed firearms, the government should not be permitted to rely on mere inference to create an "unlawful" situation that it can then try to rely on to avoid Second Amendment scrutiny, particularly when the Government's investigation demonstrates that some of the seized firearms were possessed for lawful purposes ie: shooting and hunting. Afterall, even before *Bruen* mere possession of firearms and drugs in

the same home is not enough to establish a crime and the government must establish a nexus between the two. *Lewter*, 402 F.3d at 321 ("Federal law criminalizes the mere possession of a firearm only if that possession is 'in furtherance' of a drug trafficking crime." As a result, Count Seven like Count Three must be dismissed.

DATED: May 23, 2024

ISEMAN PLLC

By: ______________________

Scott Iseman
*Attorney for Defendant*
125 High Rock Ave. Suite 215-H
Saratoga Springs, NY 12866
scott@scottisemanlaw.com
(518) 633-1528
Bar Roll Id: 518859

**CERTIFICATE OF SERVICE**

I certify that on May 23, 2024, I served a copy of the foregoing, the supporting Attorney Declaration and the accompanying Memorandum of Law on U.S. Attorney's Office for the Northern District of New York via ECF.

DATED: May 23, 2024

ISEMAN PLLC

By: ______________________

Scott Iseman
*Attorney for Defendant*
125 High Rock Ave. Suite 215-H
Saratoga Springs, NY 12866
scott@scottisemanlaw.com
(518) 416-2158
Bar Roll Id #: 518859

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

CHARLES BRENNAN

Defendant.

**ATTORNEY DECLARATION**

Case No:
1:24-cr-00012-AMN

**Scott W. Iseman**, pursuant to 28 U.S.C. § 1746, declares the following to be true and correct under penalties of perjury:

1. I am the attorney for the defendant, Charles Brennan, in the above captioned matter and make this Declaration in support of the Defendant's omnibus motion.
2. The facts described below are based on my review of the case file and the cited sources.
3. Consistent with the court's scheduling order (ECF Doc. No 53), the defendant filed his omnibus pretrial motions on May 7, 2024. *See* ECF Doc. No.54.
4. On May 9, 2024, two days after filing defendant's omnibus motions, the Government superseded the indictment. *See* ECF Doc. No. 56
5. The Superseding Indictment charges three counts of Distribution of a Controlled Substance in violation of 21 U.S.C. § 841(b)(1)(C), one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(B), one count of Use of a Firearm During and in Relation to a Drug Trafficking Crime in violation of 21 U.S.C 841(a) and 18 U.S.C. § 924(c)(1)(A) related to an RAK 47 style weapon, one count of Possession of a Firearm with an Obliterated Serial Number in violation of 18 U.S.C. § 922(k); and one count of Possession of a Firearm During and in Relation to a Drug Trafficking Crime in violation of 21 U.S.C 841(a) and 18 U.S.C. §

924(c)(1)(A) related to eight separate firearms described in the indictment. *See* ECF Doc. No. 56.

6. The defendant was arraigned on the Superseding Indictment on May 16, 2024 and pled not guilty. *See* ECF Text Notice dated 5/16/24.

7. Defendant's initial omnibus motion sought the dismissal of Counts Three and Six on constitutional grounds and the suppression of any evidence obtained from certain electronic devices seized from the defendant's home since the "search" or forensic extraction of those devices was done well after the timeframe permitted by the warrant or FRCP 41.

8. Defendant's Supplemental motion relates solely to Count 7 in the Superseding Indictment.

9. On May 21, 204 the Court granted defendant leave to file this supplemental motion. *See* ECF Doc. No. 63.

**Facts Relevant to Supplemental Motion**

10. On September 13, 2022 law enforcement executed a search warrant at the defendant's home and seized the firearms listed in Count Seven of the Superseding Indictment.

11. Upon information and belief, prior to September 13, 2022, the government had no evidence that any of firearms identified in Count Seven were used in any other drug trafficking offense or any other crime.

12. Following their seizure, the Government identified three shotguns that were owned by the defendant's neighbor, MN. Federal agents subsequently interviewed MN who advised law enforcement that the firearms were his, that he brought them to the defendant's home for shooting and hunting, that he recently stopped speaking with the defendant because he

believed the defendant was dealing marijuana, but that the defendant had not offered to sell MN drugs or otherwise ever involved MN or the firearms in any kind of criminal activity to the best of MN's knowledge.

**Conclusion:**

13. Since Count Seven criminalizes conduct protected by the Second Amendment, the same arguments made in defendant's initial omnibus motion, that 18 U.S.C. § 924(c) is unconstitutional, applies with equal force against each firearm listed in Count 7.

DATED: May 23, 2024

ISEMAN PLLC

By: ______________________

Scott Iseman
*Attorney for Defendant*
125 High Rock Ave. Suite 215-H
Saratoga Springs, NY 12866
scott@scottisemanlaw.com
(518) 633-1528
Bar Roll Id: 518859